Judge Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>ROMAN SELEZNEV,<br>    aka TRACK 2,<br>    aka ROMAN IVANOV,<br>    aka RUBEN SAMVELICH,<br>    aka nCuX<br>    aka Bulba<br>    aka bandysli64,<br>    aka smaus,<br>    aka Zagreb,<br>    aka shmak.<br><br>Defendant. | NO. CR11-0070RAJ<br><br>MOTION FOR INQUIRY REGARDING POTENTIAL CONFLICT OF INTEREST<br><br>NOTED: August 22, 2014 |

## I.   INTRODUCTION

The United States of America, by and through Jenny A. Durkan, United States Attorney for the Western District of Washington, and Norman M. Barbosa and Seth Wilkinson, Assistant United States Attorneys for said District, requests a hearing for the purpose of evaluating potential conflicts of interest between the defendant, ROMAN

Motion for Inquiry Regarding Potential
Conflict of Interest/Seleznev - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  SELEZNEV, and his retained attorneys Robert W. Ray and Ely Goldin of the law firm
2  Fox Rothschild LLP, and to evaluate any proposed waiver of conflict.  The conflict arises
3  from the fact that Fox Rothschild previously represented a business known as Z Pizza,
4  which is one of the victims of the charged scheme to defraud.  Under these
5  circumstances, a hearing is required pursuant to *Wood v. Georgia*, 450 U.S. 261, 269
6  (1981) and *Quintero v. United States*, 33 F.3d 1133 (9th Cir. 1994).

7        Mr. Ray and Mr. Goldin filed applications with this Court to appear pro hac vice
8  on August 13, 2014.  The government is bringing this issue to the Court's attention
9  immediately upon counsel's appearance because of the impact this issue may have on any
10 further proceedings.  A detention hearing is currently scheduled for August 15, 2014.  In
11 addition, until this matter is resolved, the parties will be unable to engage in substantive
12 discussions regarding the exchange of discovery, scheduling, or trial.

## II.   PROCEDURAL HISTORY

14       In March 2011, a grand jury in this District returned a sealed Superseding
15 Indictment charging defendant Roman Seleznev ("Seleznev") with numerous felonies
16 stemming from his involvement in a computer hacking scheme, the goal of which was to
17 steal credit card numbers which he then illegally resold on criminal internet forums that
18 he operated.  On July 5, 2014, while traveling in the Maldives, Seleznev was detained by
19 local authorities, turned over to U.S. Secret Service agents, and transported to Guam.
20 Seleznev made an initial appearance in the District of Guam on Monday July 7, 2014,
21 before Magistrate Judge Joaquin V.E. Manibusan, Jr.  At that appearance, Seleznev
22 refused to acknowledge his court-appointed attorney from the Federal Public Defender's
23 Office and requested private counsel.  The court re-scheduled his initial appearance and
24 Rule 5 identity hearing for July 22, 2014, to allow him time to retain private counsel.

25       Seleznev thereafter retained private counsel Robert W. Ray and Ely Goldin of the
26 law firm Fox Rothschild LLP, as well as local counsel in Guam, G. Patrick Civille, from
27 the firm of Civille & Tang.  On July 18, 2014, Seleznev filed a motion to continue the
28 Rule 5 hearing and requested a briefing schedule to address a motion to dismiss the

Motion for Inquiry Regarding Potential
Conflict of Interest/Seleznev - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  indictment based on lack of personal jurisdiction.  Defense counsel argued that the
2  circumstances of Seleznev's arrest constituted "outrageous government misconduct" and
3  that the Guam court should dismiss the charges against him and/or divest itself of
4  jurisdiction over the case.  The government opposed the continuance and argued that the
5  District of Guam had personal jurisdiction over Seleznev, but did not have jurisdiction to
6  hear the motion to dismiss.  The government argued that as a Rule 5 transferor court, the
7  Guam court's role was limited to determining identity pursuant to Rule 5.  The
8  government asserted that any motions to dismiss should be raised once Seleznev was
9  before this Court.

10  Over the following two weeks, the Guam court requested briefing from both
11  parties regarding the District of Guam's jurisdiction over Seleznev, its jurisdiction to hear
12  Seleznev's motion to dismiss, as well as the merits of that dismissal motion.  On July 31,
13  2014, following a hearing, Chief Judge Frances M. Tydingco-Gatewood found the
14  District of Guam had personal jurisdiction over Seleznev and was not required to divest
15  itself of jurisdiction, but lacked authority to rule on any motion to dismiss the indictment
16  or prosecution.  Accordingly, the court denied Seleznev's motion to dismiss.  Judge
17  Tydingco-Gatewood then proceeded to conduct a Rule 5 identity hearing that same day.
18  At the conclusion of the Rule 5 hearing, the Court ordered Seleznev removed to the
19  Western District of Washington.  On August 8, 2014, defendant made his initial
20  appearance in the Western District of Washington and was arraigned on the Superseding
21  Indictment.  Trial is currently scheduled for October 6, 2014.

### III. SUMMARY OF FACTS

The Superseding Indictment details a bank fraud scheme in which Seleznev is
charged with hacking into retail point of sale systems and installing malicious software
on the systems to steal credit card data. The charges in the indictment include five counts
of bank fraud, eight counts of intentionally causing damage to a protected computer,
eight counts of obtaining information from a protected computer, one count of possession
of fifteen or more unauthorized access devices (stolen credit card numbers), two counts

Motion for Inquiry Regarding Potential
Conflict of Interest/Seleznev - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  of trafficking in unauthorized access devices, and five counts of aggravated identity theft.
2  The illegal hacking outlined in the indictment occurred between October 2009 and
3  February 2011.
4  　　　The indictment alleges that Seleznev created and operated infrastructure to
5  facilitate the theft and sales of credit card data including servers located in the United
6  States, Russia and the Ukraine. This infrastructure included servers that Seleznev used to
7  host malware designed to hack into victim systems and steal credit card data, other
8  servers used to receive and compile the stolen credit card data, and additional servers he
9  used to host criminal internet forums, known as carding forums, where he would market
10 the stolen credit card data.  The indictment alleges that Seleznev utilized this
11 infrastructure and other hacking tools to identify and attack vulnerable credit card
12 processing systems throughout the world, including systems in the Western District of
13 Washington.  According to the allegations in the indictment, once Seleznev identified a
14 vulnerable system, he would install malware on the system that would automatically
15 collect credit card data and transmit that data to servers he controlled.  The systems
16 Seleznev attacked included point of sale systems at hundreds of small retail businesses
17 throughout the United States.  Many, if not most, of the victims are pizza restaurants.
18 　　　On August 4, 2014 while preparing for Seleznev's arrival in the Western District
19 of Washington, the undersigned was reviewing evidence collected in the case and
20 discovered that Fox Rothschild, the same law firm representing Seleznev, also
21 represented a restaurant chain known as "Z Pizza" in connection with Z Pizza's role as a
22 victim of the scheme to defraud charged in the Superseding Indictment.  During the
23 investigation of this case, agents identified at least fourteen Z Pizza locations that
24 Seleznev infected with his malware.  Seleznev thereafter used the malware to steal
25 thousands of credit card numbers used at the Z Pizza restaurants.  The case agent began
26 contacting Z Pizza locations in February 2011, to inform them that they were the subject
27 of a data breach.  Records indicate that in May 2011, attorney Amy Purcell of Fox
28 Rothschild LLP notified the agent that she was representing Z Pizza in connection with

Motion for Inquiry Regarding Potential
Conflict of Interest/Seleznev - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 the breach and that Z Pizza would be posting a notice at their restaurants to inform
2 customers that credit cards used between September 2010 and January 2011 may have
3 been compromised.

4       Upon discovering the potential conflict of interest, the undersigned contacted
5 defense counsel Robert W. Ray and alerted him to the potential conflict raised by Fox
6 Rothschild's representation of Z Pizza. Defense counsel investigated and notified the
7 undersigned that he did not believe a conflict exists because the matter involving Z Pizza
8 is closed. He further indicated that he would screen himself off from any contact with the
9 attorneys who worked on the Z Pizza matter. Nonetheless, defense counsel agreed that
10 this matter should be brought to the Court's attention for the purposes of evaluating the
11 potential conflict and examining any proposed waivers of the conflict.

12       Although Z Pizza is not specifically named in the indictment, they are a significant
13 victim of the charged scheme to defraud. It is likely that the government may need to
14 present evidence specifically related to the data breaches at Z Pizza locations as part of
15 the government's case in chief. The evidence the government intends to present at trial
16 will include evidence that Seleznev is responsible for the data breaches at Z Pizza and
17 sold credit card data from the Z Pizza data breaches on his carding forums Track2.name
18 and Bulba.cc. The government has not determined whether it may seek to call Z Pizza
19 representatives as witnesses in this case. Such testimony could include testimony from
20 employees of Z Pizza as well as testimony from computer forensics examiners who may
21 have reviewed the point of sale systems at Z Pizza locations on behalf of the business.

22       Companies that suffer a data breach such as the data breaches that victimized
23 Z Pizza and its customers are typically required by the major credit card companies to
24 undergo a computer forensics examination. In many instances, businesses will retain a
25 computer forensics firm directly to conduct such an examination. In other instances,
26 businesses may retain legal representation that subsequently retains the computer
27 forensics firm to examine the client's computer systems. The government will likely
28 need to consult with Z Pizza's counsel to determine what, if any, examinations may have

Motion for Inquiry Regarding Potential
Conflict of Interest/Seleznev - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

been conducted and determine whether any evidence from those examinations may be available or necessary for trial in this matter.  Should it become necessary to present testimony from any representatives of Z Pizza, government counsel will also likely need to coordinate such testimony through Z Pizza's counsel.

The government has no reason to believe that defense counsel has engaged in any misconduct and raises these issues now only to ensure the Court has an opportunity to fully evaluate the potential conflicts and assure that defendant and Z Pizza have been properly advised of the potential conflict.

## IV.   DISCUSSION

### A. The Sixth Amendment Requires the Prompt Investigation and Resolution of Potential Conflicts of Interest

The United States has an obligation to bring a defense counsel's potential conflict of interest to the Court's attention in order to preserve the integrity of the judicial process and to protect the prosecution from post-conviction claims, including the ineffective assistance of counsel.  *See Wheat v. United States*, 486 U.S. 153, 160 (1988) ("federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.")  The Sixth Amendment guarantees a criminal defendant the right to counsel, and with that guarantee comes the correlative right that such representation be free from conflicts of interest.  *Wood v. Georgia*, 450 U.S. 261, 271 (1981).

Whenever the Court is sufficiently apprised of even the possibility of a conflict of interest, the Court is obliged to initiate an inquiry into whether a conflict exists, and whether the defendant can and will waive such a conflict.  *United States v. Rogers*, 209 F.3d 139, 143 (2d Cir. 2000).  If the defendant cannot waive the conflict, or if the defendant chooses not to waive the conflict, the Court must disqualify counsel.  *Id*.  The Court's obligations arise whenever there is the possibility that a criminal defendant's attorney suffers any sort of conflict of interest.  *Id*.  The Court must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers

Motion for Inquiry Regarding Potential
Conflict of Interest/Seleznev - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

from an actual conflict, a potential conflict, or no genuine conflict at all. *Id*. When a possible conflict has been entirely ignored, reversal of a subsequent conviction is automatic. *Id*. at 144.

The Court may not entirely ignore a possible conflict of interest. *United States v. Levy*, 25 F.3d 146, 153 (2d Cir. 1994). The Court has a duty to inquire into problems with counsel when they are first raised. *Plumlee v. Masto*, 512 F.3d 1204 (9th Cir. 2008) (citing *Schell v. Witek*, 218 F.3d 1017, 1025-1026 (9th Cir. 2000)). An attorney's good faith in such a situation is not an issue, only whether or not a possible conflict of interest exists. *Rogers*, 209 F.3d at 145. Thus, the Court must initially inquire as to whether an actual conflict of interest or potential conflict of interest exists. Once the Court makes this initial determination, it must then analyze and evaluate any conflict to ensure that it is either eliminated or waived. *Id*. at 146.

In evaluating Sixth Amendment claims, the Supreme Court has held that "the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such." *United States v. Cronic*, 466 U.S. 648, 657, n.21 (1984). Thus, while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for the criminal defendant, rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers. *See Morris v. Slappy*, 461 U.S. 1, 13-14 (1983); *Jones v. Barnes*, 463 U.S. 745 (1983). The Court also held that a presumption in favor of petitioner's counsel of choice may be overcome by a demonstration of actual conflict or a serious potential for conflict. *Wheat v. U.S.*, 486 U.S. 153, 164 (1988).

To determine whether an attorney suffers from a disqualifying conflict of interest, "the Court first refers to the local rules regulating the conduct of members of its bar." *FMC Tech., Inc. v. Edwards*, 420 F. Supp.2d 1153, 1157 (W.D. Wash. 1957). All attorneys appearing before this Court, including attorneys admitted *pro hac vice*, must comply with "[t]he Washington Rules of Professional Conduct . . . , as promulgated, amended, and interpreted by the Washington State Supreme Court, unless such

amendments or additions are specifically disapproved by the court, and the decisions of any court applicable thereto." CR 83.3(a)(2); *see also* CR 83.1(d); CrR 1(a). Accordingly, the Washington Rules of Professional Conduct ("RPC") govern the Court's conflict analysis. *FM Tech.*, 420 F. Supp.2d at 1157.

**B.  Fox Rothschild's Representation of Z Pizza in the Same Matter Creates a Potential Conflict of Interest Requiring an Inquiry by the Court.**

In the present case, sufficient evidence exists such that the Court should engage in an inquiry of Seleznev and his counsel as to whether, and to what extent, a conflict of interest exists. The government is concerned about the possibility that defense counsel may have a conflict of interest in representing both Z Pizza and Seleznev. This concern arises regardless of whether Z Pizza is characterized as a current or former client of Fox Rothschild. In either scenario, under the relevant provisions of Washington's Rules of Professional Conduct, Fox Rothschild cannot represent Seleznev if his interests are "directly adverse" to Z Pizza unless both Seleznev and Z Pizza make an informed waiver of the conflict.

> A.  *Any Potential Conflict of Attorney Amy Purcell Is Imputed To Attorneys Robert W. Ray and Ely Goldin.*

As an initial matter, Fox Rothschild attorney Amy Purcell's potential conflict of interest as counsel for Z Pizza is imputed to all other attorneys in the firm, including Attorney's Robert W. Ray and Ely Goldin. Rule 1.10 of the Washington Rules of Professional Conduct – Imputation of Conflict of Interest: General Rule – provides that:

> Except as provided in paragraph (e), while lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless the prohibition is based on a personal interest of the disqualified lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

Therefore, Purcell's representation of Z Pizza and the potential conflict of interest that representation creates in representing Seleznev is imputed to attorneys Ray and Goldin, unless the exception outlined in RPC 1.10(e) applies. It does not.

Motion for Inquiry Regarding Potential
Conflict of Interest/Seleznev - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

RPC 1.10(e) provides that when a conflict arises under RPC 1.9, *i.e.*, involves a potential conflict with a former client, "and arises out of the disqualified lawyer's association with a prior firm," that conflict will not be imputed to other lawyers in the disqualified lawyer's current firm, thereby obviating any need to obtain conflict waivers, if certain measures are taken to screen out the disqualified lawyer from the current matter. However, by its terms, the "Chinese Wall" envisioned by RPC 1.10(e) may only be utilized where the conflict arises from a firm member's representation of a former client while associated "with a prior firm." Even assuming Purcell's representation of Z Pizza involved a former client, that representation occurred while Purcell was associated with Fox Rothschild — the same firm currently representing Seleznev — so RPC 1.10(e) has no present application. Accordingly, Purcell's potential conflict must be imputed to all attorney's associated with Fox Rothschild, including Ray and Goldin, and the impact of that potential conflict must be measured by RPC 1.7 or RPC 1.9, depending on whether Z Pizza is a current or former client of Fox Rothschild. *See Avocent Redmond Corp. v. Rose Elec.*, 491 F. Supp.2d 1000, 1008-09 (W.D. Wash. 2007).

    B.    *Regardless Of Whether Z Pizza Is A Current Or Former Client Of Fox Rothschild, The Potential Conflict Presented By This Case Must Be Waived By Both Z Pizza and Seleznev.*

Washington's conflict of interest provisions are set out in RPC 1.7, which applies to conflicts where both clients are current clients, and RPC 1.9, which applies where one client is a former client. While it is unclear whether Z Pizza is a current client or former client of Fox Rothschild, the pertinent analysis is the same under both rules. Both rules provided that, if the two clients are adverse, representation is permissible only if both clients waive the conflict. RPC 1.7(a) states as follows:

    (a)    Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

    (1)    the representation of one client will be directly adverse to another client; or

Motion for Inquiry Regarding Potential
Conflict of Interest/Seleznev - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

     (2)    there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

This rule is based on a lawyer's fundamental duty of loyalty, "which prohibits undertaking representation directly adverse to [a] client without that client's informed consent." Comment 6 to RPC 1.7

     Similarly, RPC 1.9(a), which governs conflicts involving a former client, states as follows:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."

Thus, the relevant inquiry under RPC 1.7(a)(1) and RPC 1.9(a) is whether the interests of Seleznev and Z Pizza are directly (RPC 1.7) or materially (RPC 1.9) adverse.

     Here, the parties' interests appear to be adverse under either standard because Z Pizza was a victim of Seleznev's criminal scheme.[1] The adversity of their positions is illustrated by two examples. The first is the fact that any restitution flowing from a conviction of Seleznev would benefit Z Pizza. If Seleznev is convicted, he may be ordered to pay restitution to all victims of the scheme to defraud, which would include Z Pizza. Under those circumstances, Fox Rothschild would represent clients on both sides of the restitution order: the Court would likely order a restitution payment from one of Fox Rothschild's clients (Seleznev) to another Fox Rothschild client (Z Pizza). Fox Rothschild would, in its role as Seleznev's counsel, find itself in the position of advocating against a restitution order that would benefit its other client, Z Pizza.

     As another example, Fox Rothschild may be required to cross-examine its own client. In the event the case goes to trial and Z Pizza is called as a government witness,

---

[1] This also shows that, assuming Z Pizza is a former client, Fox Rothschild's representation of Seleznev and Z Pizza involves "the same or a substantially related matter" within the meaning of RPC 1.9(a).

Motion for Inquiry Regarding Potential
Conflict of Interest/Seleznev - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

Z Pizza may testify regarding the computer hacking and credit card fraud at issue in this case, their knowledge of how that malware operated and impacted their business, and how it was brought to their attention. Z Pizza would then be subject to cross examination by Fox Rothschild about matters on which Fox Rothschild represented Z Pizza. This would make Fox Rothschild's representation of Seleznev directly adverse to Z Pizza and result in an actual conflict under RPC 1.7(a)(1) and RPC 1.9(a). *See* Comment 6 to RPC 1.7 ("a directly adverse conflict may arise when a lawyer is required to cross-examine a witness who appears as a witness in a lawsuit involving another client").

In addition to the concerns raised above—which involve Fox Rothschild's duties of loyalty to its clients—the representation also raises issues about the firm's duty of confidentiality. Fox Rothschild attorneys may have learned confidential information in representing Z Pizza that the firm would be prohibited from using or disclosing in cross examining a Z Pizza witness (or in any other context) because the firm and its lawyers owe a duty of confidentiality to Z Pizza. *See* RPC 1.6(a) ("A lawyer shall not reveal information relating to representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b)"). "The confidentiality rule . . . applies not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source." Comment 3 to RPC 1.6. Therefore, Fox Rothschild would be prohibited from using any computer forensics examinations commissioned by the firm on behalf of their client Z Pizza.

**C.   If Seleznev and Z Pizza Both Waive The Conflict of Interest, The Court Must Determine Whether The Conflict is Waivable.**

Although RPC 1.7 and RPC 1.9 permit Fox Rothschild and its attorneys to continue to represent both clients pursuant to informed, written consent, the Court should review any proposed consent from Seleznev and Z Pizza and confirm that each has been sufficiently informed of the potential conflict. The Court may wish to assign conflicts counsel to discuss the potential conflict with Seleznev.

Motion for Inquiry Regarding Potential
Conflict of Interest/Seleznev - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

While consent and waiver from both clients appears necessary at a minimum, *see* RPC 1.7(b)(4), 1.9(a). and 1.10(c), consent and waiver may not be sufficient to remedy a concurrent conflict of interest. Pursuant to RPC 1.7(b), "notwithstanding the existence of a concurrent conflict of interest under paragraph (a)," a lawyer may represent a client if, in addition to informed consent from both clients:

> The representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal."

RPC 1.7(b)(3). In the instant case, Z Pizza as a victim of Seleznev's hacking scheme is entitled to present a claim for restitution if Seleznev is convicted of the charges in the Superseding Indictment. Therefore, even with consent from both clients, Fox Rothschild may not be permitted to continue representing both clients if Z Pizza is currently a client of the firm.

The Court should inquire into whether Fox Rothschild has complied with RPC 1.7(b) or 1.9(a) (as applicable), and whether Seleznev can waive the conflict. Under Rule 1.7(b), some conflicts may not be resolved by consent. *See* Comment 14 to RPC 1.7 ("some conflicts are nonconsentable"). Moreover, even if a conflict is properly consented to under RPC 1.7 or RPC 1.9, representation of a client may nevertheless violate the Sixth Amendment. *See United States. v. Schwartz*, 283 F.3d 76, 94 (2d Cir. 2002) (waiver by defendant at hearing does not defeat defendant's ineffective assistance of counsel claim; "the actual conflict that Schwartz's attorney faced was unwaivable.")

The Court should also consider whether defense counsel's potential conflicts constitute unwaivable, per se violations of the Sixth Amendment. In order to establish a per se conflict of interest, the Court must find a conflict so severe that it is deemed a per se violation of the Sixth Amendment. *See United States v. Williams*, 372 F.3d 96, 102 (2d Cir. 2004). Per se conflicts of interest are unwaivable and do not require a showing that the defendant was prejudiced by the representation. *Id*.

Motion for Inquiry Regarding Potential
Conflict of Interest/Seleznev - 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

Trial courts presented with a conflict of interest have an affirmative duty to protect the defendant's rights. *Glasser v. United States*, 315 U.S. 60 (1942). The Courts "indulge every reasonable presumption against the waiver of fundamental rights." *Id*. at 70. Waivers relating to counsel "must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege." *Edwards v. Arizona*, 451 U.S. 477, 482 (1981). The Supreme Court held that such a relinquishment or abandonment is a matter which depends in each case "upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).

Even when a defendant is willing to waive a conflict of interest, a court has an independent duty to balance the right to counsel of choice with the broader interests of judicial integrity. *United States v. Vasquez*, 966 F.2d 254, 261 (7th Cir. 1992). The court is required to take action to protect the defendant's Sixth Amendment right to effective assistance of counsel unless, after inquiry, the court believes that a conflict of interest is unlikely to arise. *Id*. Further, a trial court should enforce the ethical rules governing the legal profession with respect to conflict-free representation, regardless of any purported waiver by the defendant, when necessary to protect the important candor that must exist between a client and his attorney and to engender respect for the court in general. *United States v. Moscony*, 927 F.2d 742, 749 (3d Cir. 1991).

A district court has discretion to limit the exercise of the right to counsel of choice when insistence upon it would disproportionately disadvantage the Government or interfere with the ethical and orderly administration of justice. *United States v. Cortellesso*, 663 F.2d 361, 363 (1st Cir. 1981). Even if Seleznev is willing to waive the potential conflict, this Court, in the interests of justice and judicial integrity, should consider whether disqualification constitutes the only way to protect Seleznev's Sixth Amendment right to the effective, conflict-free, assistance of counsel.

Motion for Inquiry Regarding Potential
Conflict of Interest/Seleznev - 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

## V. Conclusion

The Court should inquire as to whether a conflict of interest exists. The Court should timely inquire so that the parties can either move forward with trial preparation and plea negotiations, or move for withdrawal of counsel.

DATED this 13th day of August, 2014.

    Respectfully submitted,

    JENNY A. DURKAN
    United States Attorney

    */s/ Norman M. Barbosa*
    NORMAN M. BARBOSA
    Assistant United States Attorney
    United States Attorney's Office
    700 Stewart Street, Suite 5220
    Seattle, WA 98101
    Telephone: (206) 553-7970
    E-Mail: Norman.Barbosa@usdoj.gov

Motion for Inquiry Regarding Potential
Conflict of Interest/Seleznev - 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 13, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorney of record for the defendant.

<u>s/Janet K. Vos</u>
JANET K. VOS
Paralegal Specialist
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: (206) 553-5041
Fax:    (206) 553-0755
E-mail:  Janet.Vos@usdoj.gov

Motion for Inquiry Regarding Potential
Conflict of Interest/Seleznev - 15

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970