THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

                    Plaintiff,

         vs.

ROMAN SELEZNEV,

                 Defendant.

No. CR11-070-RAJ

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS INDICTMENT PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 12**

Note Date: April 17, 2015

***Evidentiary Hearing and Oral Argument Requested***

DEFENDANT'S REPLY IN SUPPORT OF  MOTION
TO DISMISS PURSUANT TO FED. R. CRIM. P. 12
(*Roman Selevnez*, No. CR11-070-RAJ)

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

1

## I.    Disputed Facts Remain Regarding the Government's Alleged Legal Authority to Arrest Mr. Seleznev, and the Circumstances of that Arrest in the Maldives.

2

3      The United States goes to great lengths to contend that Mr. Seleznev's detention "was the

4  result of a lawful Maldivian government operation conducted at the request of the United States

   and in cooperation with the U.S. Secret Service and Diplomatic Security Service." Response, Dkt.

5  No. 136 at 2.  It brands Mr. Seleznev's claim that he was kidnapped without cooperation from

6  Maldivian authorities as "plainly false." *Id.* Yet the Government has never produced independent

7  evidence demonstrating that Maldivian officials legally authorized or approved Mr. Seleznev's

8  arrest. To the contrary, in emails attached to both parties' filings, *see e.g.* Dkt. No. 132-2, Defense

9  Exhibits, Exh. 8, we know a Maldivian warrant was being sought, was expected but that it never

10 materialized. A warrant from a Maldivian court would be the type of evidence that would support

11 the United States' contention that Mr. Seleznev was not kidnapped or abducted. The Government

12 included no such document or other explanation with its Response. Although the Government

13 stridently asserts that no kidnapping or abduction took place, forcibly taking control of another

14 person without lawful authority is categorically kidnapping.  Disputed facts exist on this critical

15 point.

16      While Mr. Seleznev anticipated that the Government would eventually produce an

17 authorizing communique between U.S. agents and Maldivian authorities, no such evidence has

18 been disclosed to the defense or to the Court. Instead, the prosecutor responded as follows to Mr.

19 Seleznev's Motion to Compel Discovery, Dkt. No. 130:  "the government has also provided

20 defendant with copies of all communications between U.S. officials and Maldivian officials." Dkt.

21 138, at 5. The U.S. has now essentially admitted that it never had any documentation of the

22 permission it supposedly received to seize Mr. Seleznev. If the United States had authority to

23 conduct this operation, particularly authority coming from "the highest levels" of Maldivian

24 Government – whether from the President or the Attorney General or the Commissioner of Police

25

DEFENDANT'S REPLY IN SUPPORT
OF MOTION TO DISMISS PURSUANT
TO FED. R. CRIM. P. 12 – page 1
(*Roman Seleznev*, No. CR11-070-RAJ)

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

1  – it is simply incredible to believe that the only documentation of this would be self-serving

2  hearsay:  the agents' post-arrest, write-ups of being told this information (by someone whose

3  names they do not know or cannot recall, and the details of which they chose not to jot down), or

4  from subsequent newspaper articles quoting the Maldivian President's reaction to press questions

5  regarding the political fallout to his administration and country.

6       In terms of the circumstances of the defendant's arrest, the Government contends that

7  "Maldivian officials remained in control of the operation throughout the entire time the agents and

8  Seleznev were in the airport."  Response at 11.  Disputed facts exist on this point as well.  In

9  support of its position, the Government offers a photograph of two Maldivian police officers

10  standing in the background as Secret Service Special Agent Daniel Schwander interrogates Mr.

11  Seleznev (seated on a couch) in the foreground. Response at 18 (and its Attachment 10).

12  Interestingly, all photographs produced show U.S. agents (not Maldivian ones) effectuating the

13  formalities of an arrest and prisoner transport. The Government's photographs do nothing to show

14  that the United States agents were acting at the direction of Maldivian police officials. In fact,

15  they are more in line with the defense's view that U.S. agents controlled the operation while

16  Maldivian police stood idly by.

17       The essential facts establish that Mr. Selevnez's was arrested by U.S. agents, not

18  Maldivian police, and the Government has said nothing to contradict these essential facts. First,

19  the Government does not dispute that Agent Schwander took Mr. Seleznev into custody before he

20  reached the immigration desk at the airport. Second, the Government admits that it was Agent

21  Schwander's idea to handcuff Mr. Seleznev, which the agent himself did using his own handcuffs.

22  And third, the Government has not disputed the fact that Mr. Seleznev's passport received a

23  normal exit stamp, not the stamp indicating that the bearer has been legally expelled from the

24  country. These facts show unequivocally that the arrest was carried out by U.S. agents, and that it

25  was done before Mr. Seleznev left the Maldives. The fact that Special Agent Schwander denied a

DEFENDANT'S REPLY IN SUPPORT
OF MOTION TO DISMISS PURSUANT
TO FED. R. CRIM. P. 12 – page 2
(*Roman Seleznev*, No. CR11-070-RAJ)

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

1   formal "arrest" when testifying in Guam, and that the Government persists in denying this in its

2   Response, only shows that each is conscious of the fact that the agents' actions in the Maldives

3   were not pursuant to lawful authority under U.S. or Maldivian law.  These blanket denials are at

4   odds with the objective facts.

5        Finally, the Government contends that the declaration of Sharafulla Shihab (at Dkt. No.

6   132-2, Defense Exhibits, Exh. 11), the one statement from a completely disinterested witness that

7   has been submitted by either party, "totally fails to support" Mr. Seleznev's contention that

8   Maldivian police "did not participate in his abduction in any way." Response at 18. To the

9   contrary, that is precisely what Mr. Shihab said in his declaration:  "I did not see these officers

10   speak with Mr. Seleznev or participate in his arrest in any way." Dkt. No. 132-2, Exh. 11 at ¶ 9.

11   The Government's factual admissions also support Mr. Shihab's description in that Mr. Seleznev

12   was handcuffed by U.S. agents, not Maldivian authorities, and it was U.S. agents who handled the

13   defendant throughout the airport. Alongside Mr. Selevnez's own sworn declaration, Dkt. No. 132-

14   2, Exh. 4, the defense has presented sufficient admissible evidence of disputed facts to warrant an

15   evidentiary hearing.

16

17   **II.**    **The Court Should Reject the Government's Quasi-Summary Judgment Approach, and Proceed with an Evidentiary Hearing On the Motion.**

18        The Government asks the Court to employ a quasi-summary judgment standard in

19   determining whether an evidentiary hearing need be held on the defendant's motion to dismiss,

20   and ultimately, as a way to dispose of the defendant's dismissal claims in their entireties. In

21   essence, they posit that even if the Court were to take all of the defendant's allegations as true,

22   there is still no basis for relief. Whether the prosecutor's suggestion adopts other procedural

23   notions like resolving all disputed facts in favor of the defendant or drawing all adverse inferences

24

25

DEFENDANT'S REPLY IN SUPPORT
OF MOTION TO DISMISS PURSUANT
TO FED. R. CRIM. P. 12 – page 3
(*Roman Seleznev*, No. CR11-070-RAJ)

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

1    against the Government, is somewhat unclear. In any event, this procedural approach conflates

2    several issues and should be rejected by the Court.

3         Preliminarily, the Government's move to block a hearing in this district runs contrary to

4    its various positions and statements in Guam regarding where the defendant should raise these

5    issues and his opportunity to do so in the future. More importantly, however, it was the clear

6    ruling of Judge Tydingco-Gatewood that her decision in Guam was without prejudice to the

7    defendant presenting this issue anew in Western Washington "based on full discovery." Dkt. No.

8    132-2, Guam Decision and Order, Exh. 13 at 7. The Government's efforts to avoid a full hearing

9    ignores this.

10        It is noteworthy that only two witnesses testified in Guam – Secret Service Special Agent

11   Schwander and his colleague Special Agent Michael Fischlin.  Since the defendant's transfer from

12   Guam to this district, additional discovery has been provided regarding these agents' own actions

13   and the critical roles of other agents, including Special Agent Mark Smith of the Department of

14   State Diplomatic Security Service (who presented the initial plan to arrest the defendant to the

15   Maldivian Police Commissioner, and participated in the arrest) and Secret Service Special Agent

16   David Iacovetti (who also participated in the arrest). The defense has not had an opportunity to

17   cross-examine Agents Schwander and Fischlin about any newly-disclosed reports. And the

18   defense has *never* been able to confront Agents Smith and Iacovetti about their roles in planning

19   and effectuating this arrest. In no way did Mr. Seleznev's prior counsel have sufficient

20   information or a sufficient opportunity to question the witnesses who were called in Guam (or the

21   ones who have not yet taken the stand).

22        Of course, motions for summary judgment are weighed based on admissible evidence –

23   sworn declarations, non-hearsay admissible documents, witness testimony under oath at a

24   deposition or other hearing. If we accept this as the standard, then a hearing is absolutely

25   necessary. Aside from witness testimony as contained in the Guam Transcript, most of the

DEFENDANT'S REPLY IN SUPPORT
OF MOTION TO DISMISS PURSUANT
TO FED. R. CRIM. P. 12 – page 4
(*Roman Seleznev*, No. CR11-070-RAJ)

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

1   Government's points come from inadmissible sources:  unsworn hearsay police reports, emails,

2   media reports, documents simply attached to a brief. For the defense's part, we also presented the

3   Guam Transcript (Dkt. No. 132-2, Exh. 6), but have contradicted much of that testimony with the

4   sworn declarations of the defendant and Sharafulla Shibab (Dkt. No. 132-2, Exhs. 4 and 11,

5   respectively).

6            Finally, any suggestion that the Court can resolve the merits of the defendant's dismissal

7   motion without taking evidence on the disputed facts and allowing the defense to fully confront

8   witnesses based on full discovery, simply gets the cart before the horse. None of us are in a

9   position to know in advance what the evidence will be at a hearing, how the testimony will

10  unfold, what will be deemed credible and what will lack credibility. That's why we hold hearings.

11  That is the essence of our adversary system, and its search for the truth. Once the facts are heard,

12  then the parties are in a position to argue the law to the Court, and the Court is in the best position

13  apply the law to the facts in reaching a fair and just determination of the issues.

14

     DATED this 17th day of April, 2015.

15

16                                              s/ Russell Leonard
                                                s/ Dennis Carroll
17                                              Assistant Federal Public Defenders
                                                Attorneys for Defendant Roman Seleznev
18

19

20

21

22

23

24

25

DEFENDANT'S REPLY IN SUPPORT                          **FEDERAL PUBLIC DEFENDER**
OF MOTION TO DISMISS PURSUANT                         **1601 Fifth Avenue, Suite 700**
TO FED. R. CRIM. P. 12 – page 5                       **Seattle, Washington 98101**
(*Roman Seleznev*, No. CR11-070-RAJ)                  **(206) 553-1100**

## CERTIFICATE OF SERVICE

I certify that on April 17, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of filing to all registered parties.

/s/  Barbara Hughes
Barbara Hughes, Paralegal
Office of the Federal Public Defender

DEFENDANT'S REPLY IN SUPPORT
OF MOTION TO DISMISS PURSUANT
TO FED. R. CRIM. P. 12 – page 6
(*Roman Seleznev*, No. CR11-070-RAJ)

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**