The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERNDISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>ROMAN VALERYEVICH SELEZNEV<br><br>Defendant. | NO. CR11-0070RAJ<br><br>**RESPONSE TO DEFENDANT'S MOTION TO PROHIBIT REVIEW OF MONITORED PHONE CALLS**<br><br>Noting Date: October 16, 2015 |

## I.  INTRODUCTION

Like every other detainee at FDC SeaTac, defendant Roman Seleznev's non-legal telephone calls are subject to monitoring. All inmates in pretrial detention are subject to the same level of monitoring, and the U.S. Attorney's office routinely obtains and reviews these communications.

Defendant is acutely aware of this fact. All of defendant's calls are placed from telephones labeled with signs indicating that "all conversations on this telephone are subject to monitoring.[1]" The sign further instructs the inmates that if they wish to place unmonitored calls to their attorney, they may contact their unit supervisor. When placing a call on these monitored telephones, a recording frequently reminds the caller that the

---

[1] Although defendant is a native Russian speaker, he has demonstrated an ability to read and write English.

RESPONSE TO MOTION TO PROHIBIT CALL MONITORING
Seleznev-CR11-0070RAJ – Page 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

call is being monitored. Further, as discussed herein, it is obvious from the calls themselves that defendant knows the calls are being monitored and reviewed. On numerous occasions, defendant and his father have specifically discussed the fact that their calls are monitored. Further, the recorded conversations include frequent attempts to obfuscate the meaning of their communications by speaking in code, by whispering to avoid the recording of their statements, and by speaking in quick, clipped sentences to further evade the monitoring of their communications. It is also evident from the calls that defendant has a clear understanding of the attorney-client privilege.

FDC's monitoring of these calls, and the prosecution team's review of them, serve important safety and law enforcement purpose. As discussed below, despite knowing that the calls are being monitored, defendant and his father have discussed plans to tamper with, or possibly harm, witnesses, to manipulate defendant's conditions of confinement, and to delay the trial. Indeed, the content of defendant's communications with his father prompted the FDC staff to alert the U.S. Attorney's Office and the U.S. Marshals of its concerns about the safety and security of the institution and the community.

There is no legal basis for defendant's motion. The Ninth Circuit has upheld as proper the review by prosecution teams of monitored calls. The law is clear that defendant has no reasonable expectation of privacy in his monitored communications, and no recognized privilege applies to his communications with his friends and family members. The Court should deny defendant's request that he be treated differently from every other detainee at SeaTac.

## II. BACKGROUND

A. **FDC's Monitoring of Defendant's Calls**

Since defendant was provided with telephone privileges at the FDC in approximately September 2014, the BOP has been conducting routine monitoring of defendant's telephone calls with friends and family. Because defendant primarily speaks

RESPONSE TO MOTION TO PROHIBIT CALL MONITORING
Seleznev-CR11-0070RAJ – Page 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Russian during his telephone conversations, recordings of the conversations have been
2  translated by BOP contractors.  Each call is reviewed by BOP staff.  Translations of
3  defendant's telephone calls with his father have revealed numerous attempts to obfuscate
4  the meaning of their conversations to evade BOP monitoring.

5  Despite defendant and his father's attempts to speak in code, the calls suggest
6  defendant and his father are attempting to identify undisclosed witnesses and may be
7  planning to tamper with prospective witnesses.  Other conversations between defendant
8  and his father include references to attempts to exaggerate defendant's medical
9  impairments to force the BOP to transport defendant outside of the FDC for a medical
10 appointment.  Finally, as shown in the government's response to defendant's Motion to
11 Bifurcate Representation, monitoring of defendant's phone calls have also revealed
12 efforts to fabricate break downs in communications with counsel to justify delaying these
13 proceedings.

14 **B.     Defendant and His Father Are Aware of the FDC Phone Monitoring.**

15 Defendant and his father have repeatedly expressed a clear understanding of the
16 fact that their communications are being monitored and that attorney-client privilege does
17 not protect the conversations.  For example, as early as October 3, 2014, a little over two
18 weeks after defendant began using the FDC phones, defendant's father told him "I know
19 that they are listening in and that people who are listening in do not wish you well."

20 Throughout the time defendant has been in custody and talking to his father on the
21 monitored telephones at the FDC, defendant and his father have repeatedly warned each
22 other about the monitoring of their communications with comments such as:  "let's don't
23 talk about it over the phone;" "I don't want to talk about it on the phone considering that .
24 . . ;" "I would not want to talk more about it;" "we'd better not talk about it on the
25 phone;" and "I don't want to tell you on the phone about our tactics and strategy;"  These
26 repeated references to the dangers of discussing defendant's case on the monitored
27 phones demonstrates defendant and his father are fully aware of the fact that their
28

RESPONSE TO MOTION  TO PROHIBIT CALL MONITORING
Seleznev-CR11-0070RAJ – Page 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

communications are not covered by any privilege. In fact, in one call on November 9, 2014, defendant's father specifically instructed defendant that "your conversations with lawyers are confidential but the phone calls are not."

Defendant and his father's use of code words and other methods to obfuscate the meaning of their conversations further demonstrate their awareness of the BOP telephone monitoring. Defendant and his father frequently use coded language to disguise the meaning of their conversations. As outlined in the government's initial response to defendant's motion for bifurcated representation, defendant and his father use code words such as "doctors" or "magicians" to refer to non-lawyers helping them in their efforts to get defendant released and also refer to their plans using a variety of medical terms. Occasionally, defendant's father's attempts to explain things using coded phrases are so vague, even defendant cannot understand:

| | |
|---|---|
| UM1: | Did you understand what I told you… Did you think about it?// |
| Roman: | No, I did not understand it. |
| UM1: | [Sighing]. Well… Oh…. Well, like, you are saying that you are taking books from the library. Books in Russian language come from the library… |
| Roman: | And? |
| UM1: | Right… So… Well… Those are deceitful books there... You understand it? |
| Roman: | [Silence]. I don't understand. |
| UM1: | Huh? |
| Roman: | I don't understand. |
| UM1: | Well, you have me, you have a girl that you love, your new wife, so to say.// |
| Operator: | <u>This call is from a Federal prison</u>.// |
| UM1: | Ok? |
| Roman: | And? |
| UM1: | And there are books. |

RESPONSE TO MOTION TO PROHIBIT CALL MONITORING
Seleznev-CR11-0070RAJ – Page 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| | Roman: | Ok, there are [books]. Umm… |
|---|---|---|
| 1 | UM1: | And they are deceitful! |
| 2 | Roman: | Well, ok. |
| 3 | UM1: | Yes. One should not be trusting any books. |
| 4 | Roman: | Um-hum. |
| 5 | UM1: | You got it? |
| 6 | Roman: | No. |
| 7 | UM1: | Well, good! It's ok. [Laughing]. |
| 8 | Roman: | [Laughing]. |
| 9 | UM1: | Just sit there and think about it. |
| 10 | Roman: | [Laughing]. |
| 11 | UM1: | Just sit there and think about it. It's good that you have not understood it… |

In other instances, including the conversation below from June 21, 2015, defendant has warned his father that using code language on the monitored calls is a violation of BOP policy – again demonstrating defendant's awareness of the rules governing his telephone use:

| UM1: | Romochka [Roman]… Did you get that I will have to… Do you have any friendly tongue twisters? Like some language… |
|---|---|
| Roman: | Listen, it is not allowed here. I have already told you! |
| UM1: | Yes, but in the childhood… Let's say in the childhood// |
| Roman: | It is not allowed. Don't! Don't! |
| UM1: | Um-hum. So, you think that they are so gifted there [i.e., that they would understand]?// |
| Roman: | I have [UI-overlapping; been through?] all this. |
| UM1: | Oh, yeah? |
| Roman: | I have seen instances… Yes. |
| UM1: | So, when they would start using a code [language], then// |
| Roman: | Yes! |

RESPONSE TO MOTION TO PROHIBIT CALL MONITORING
Seleznev-CR11-0070RAJ – Page 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| | | |
|---|---|---|
| 1 | UM1: | Um-hum. Ok. We will think about it. |
| 2 | Roman: | I don't want to lose the phone calls! They do it really fast in here. |
| 3 | UM1: | So, whatever they don't understand// |
| 4 | Roman: | Yes!// |
| 5 | UM1: | …they do not think of it as of some foreign language, but rather right away they… Right? |
| 6 | Roman: | Yes. |
| 7 | UM1: | I got it. So, even any children's game won't work? |
| 8 | Roman: | They won't. |
| 9 | UM1: | Um-hum. It's ok. Then// |
| 10 | Roman: | It is written here clearly. |
| 11 | UM1: | In the rules? |
| 12 | Roman: | Um-hum. |
| 13 | UM1: | Ok. I just… I'll find [the way]… |

## C.  Defendant and His Father Have Discussed Potential Witness Tampering

As early as November 2014, defendant and his father began discussing who might appear as witnesses against defendant at trial with defendant commenting "Did you understand who said bad things about me?  All those lies."  After defendant named a particular witness and discussed ways to discredit the witness, defendant's father stated he would "have a serious talk about it" and they agreed to talk later.  Since that time, defendant and his father have discussed this same individual on several occasions and defendant's father has made several comments that suggest he may be planning to tamper with this witness.  For example, on November 9, 2014, defendant's father stated that he had "been asking [defendant's attorneys] for a week to send me the document. . . You understand what document I'm talking about.  Regarding [name redacted].  I don't want to talk about it on the phone."

RESPONSE TO MOTION TO PROHIBIT CALL MONITORING
Seleznev-CR11-0070RAJ – Page 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

In February 2015, defendant's father again asked defendant about this witness and what defendant knew about the witness. Upon confirming with defendant the identity of the witness, defendant's father stated "Well . . . Nice. . . Ok, I got you. Something has to be done about it . . . Well, I have some ideas about it. Ok . . ." Recently, on September 2, 2015, defendant's father brought up the same potential witness again:

| Valery: | Yes, look, is my understanding correct that on [name redacted] . . . ahh, she is a witness in the case? |
|---------|---|
| Roman:  | As far as I understand, yes. |
| Valery: | Uh-huh. I got you. I'm just trying to find out, because I was asked to find out. |
| Roman:  | Uh-huh. |
| Valery: | I think I will have a meeting with some people in a week. Hello? |
| Roman:  | Yes. |
| Valery: | Yes, and I will talk. |

Defendant's father has also discussed collecting information related to the witness on behalf of other unknown individuals. The government has carefully reviewed these communications and coordinated with law enforcement closely to ensure the safety of all witnesses in this case.

**D.  Defendant and His Father Have Discussed Plans to Pursue Unknown Alternatives to Litigation.**

Defendant's father has repeatedly discussed plans to pursue options other than litigation to secure defendant's release from prison. During a series of conversations spanning almost the entire time defendant has been in custody, defendant's father has outlined a strategy of pursuing three options roughly described as: 1) the legal battle in court; 2) political negotiations, and; 3) what defendant's father has called "Uncle Andrey's option." "Uncle Andrey's option" has caused the government some concern as defendant and his father have been careful to avoid clearly indicating exactly what this means. When discussing Uncle Andrey's option, defendant's father speaks in coded

RESPONSE TO MOTION TO PROHIBIT CALL MONITORING
Seleznev-CR11-0070RAJ – Page 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 phrases and short clipped sentences in an effort to obfuscate the meaning of his
2 statements.
3    The BOP is concerned that defendant and his father may be discussing a potential
4 escape attempt involving the exaggeration of defendant's medical impairments to secure
5 an outside medical appointment. In several calls, defendant and his father have discussed
6 the use of "unconventional treatment" in order to secure defendant's release and
7 defendant's father has mentioned the use of "empty pills" or "full pills" during these
8 conversations. For example, the following conversation took place on May 21, 2015:

| | |
|---|---|
| Valery: | Yes, but… Yes, but the point is that, you know… I flew over to the "doctors" to whom I showed the "history of your health" [i.e., your "health records"]… Umm… I had a very strange conversation regarding the methods of the treatment… Umm… They say that… Well, you remember that I have been insisting that those guys had to be fired? Hello? Can you hear me? |
| Roman: | I can. |
| Valery: | So… Well, there was a reason why I've been insisting on it. After that, a very weird type of a "medical treatment" was suggested. Today, I met with the person who recommended those "doctors" to me and I said that this type of a "medical treatment" was suggested. And he was like, "No, this type of a "medical treatment…" I agree with you. This "medical treatment" itself is good, but the ways of the "treatment" are bad." So… I… To you… How should I put it for you? [Sighing]. I am flying over to those "doctors" again tomorrow. Hello? |
| Roman: | I hear you. |
| Valery: | So, they are insisting that you should be doing "yoga." Yourself. |
| Valery: | So, they are insisting that you should be doing "yoga." Yourself. Right…But there are more questions there than answers. So far, I have not been able to find answers to those questions. I am telling you what it looks like. |
| Roman: | I understand what you are saying. |
| Valery: | Hello? I am saying that this is a very bad way// |
| Roman: | I understand! I understand! I understand! It is a very bad way and looks like it is not working. |

. . . .

RESPONSE TO MOTION TO PROHIBIT CALL MONITORING
Seleznev-CR11-0070RAJ – Page 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| | | |
|---|---|---|
| 1 | Roman: | I need to know the process itself. |
| 2 | Operator: | <u>This call is from a Federal prison</u>. |
| 3 | Valery: | Exactly! They will come to you and tell you about the process itself. |
| 4 | Roman: | That's good.// |
| 5 | Valery: | However, I do not agree with it. You have to listen to it. |
| 6 | Roman: | Ok. So, you don't agree with them?// |
| 7 | Valery: | And then you have to tell me your opinion, because… I agree with them about the "treatment" itself, but I disagree about the methods of the "treatment." |
| 9 | Roman: | I see. |
| 10 | Valery: | **These methods of the "treatment" include "empty pills." Remember that one - "empty pills." So, I do not agree with the "empty pills."** |
| 11 | Roman: | Ok. |
| 12 | Valery: | **You got it. Those "empty pills" are important.** |
| 13 | Roman: | I'll keep it in mind.// |
| 14 | Valery: | **Because I think that the pills should be "full." Look. There are two options there - "empty pills" and "full pills."** So in this we had a lot of… |

In apparent recognition of the fact that this type of plan is either illegal or highly questionable at best, defendant immediately interrupted his father and commented "This should not be talked about at all. It is forbidden to be talking like this in here." Shortly after this call took place, defendant also began demanding an outside medical appointment with a specialist. The government understands that defendant is continuing to pursue this request, which was originally denied, through an administrative appeal process.

As a result, the FDC is justifiably concerned that defendant may attempt to fabricate a medical emergency through the use of unapproved drugs or other substances. Based on these concerns, the FDC implemented additional security measures including limitations on defendant's visits with guests. Defendant and his father's reaction to these increased security measures have resulted in further concern. On August 20, 2015, when

RESPONSE TO MOTION TO PROHIBIT CALL MONITORING
Seleznev-CR11-0070RAJ – Page 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

defendant told his father that the suspicious nature of their conversations had resulted in added security measures, defendant's father remarked "What can we discuss?  Your escape plan or what?"

### III.   ARGUMENT

Defendant has no reasonable expectation of privacy in his monitored jail communications and attorney-client privilege does not apply to communications with his father or anyone else other than his assigned counsel.  Because the Court has found there are no conditions or combination of conditions other than detention that will reasonably assure defendant's appearance or the safety of the community, defendant is detained pending trial.  Defendants in pre-trial detention are subject to monitoring of their communications to ensure the security and good order of the institution and to protect the public.  *See* BOP Program Statement § 540.100(a).  As shown above, monitoring of defendant's communications have demonstrated that he is both a risk to the security of the institution and to the safety of the community, including potential trial witnesses.  There is nothing improper about the government's monitoring of his communications to assist in protecting against these risks.

The Ninth Circuit has held that defendants have no reasonable expectation of privacy in monitored telephone calls made from a prison. *See, e.g. United States v. Van Poyck*, 77 F.3d 285, 290-291 (9th Cir. 1996).  In *Van Poyck*, the prosecution team obtained recorded calls from the Los Angeles Metropolitan Detention Center in which defendant made incriminating statements that the prosecution team later successfully offered as evidence at trial.  *Id*.  In rejecting defendant's argument that the calls should have been suppressed, the court noted that "no prisoner should reasonably expect privacy in his outbound telephone calls." *Id*. at 290.  The Ninth Circuit additionally stated: "We hold that *any* expectation of privacy in outbound calls from prison is not objectively reasonable and that the Fourth Amendment is therefore not triggered. . . ." *Id*. at 291 (emphasis added).  Likewise, in *United States v. Sababu*, 891 F.2d 1308, 1329 (7th Cir.

RESPONSE TO MOTION  TO PROHIBIT CALL MONITORING
Seleznev-CR11-0070RAJ – Page 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1989) the Seventh Circuit held that defendant had no reasonable expectation of privacy in her phone calls with a federal inmate because defendant had been a frequent visitor to the prison and was well aware of the security measures in place. *Id*. The court went on to note that the defendant's frequent use of coded language "demonstrated her awareness that there was no privacy to the conversations." *Id*. As shown above, defendant's frequent use of coded language in this case also demonstrates his awareness that his communications are not private. Defendant's claim that his calls should be unavailable to the prosecution team as opposed to the FDC security staff, does not distinguish his claim from those made in *Van Poyck* in any material respect.

The government, including the prosecution team, must have the ability to continue monitoring defendant's jail communications to be in a position to protect against any efforts by defendant or others to harm the integrity of these proceedings or jeopardize the safety of witnesses. In addition to the need to protect the security of the detention center, the government must be in a position to ensure the safety of witnesses and the integrity of the prosecution as a whole. As demonstrated by the subject of these current proceedings, defendant's communications have revealed information that the government was obliged to bring to the Court's attention to ensure the integrity of these proceedings and, notably, to protect defendant's right to effective representation of counsel. Defendant's calls have also revealed information that has assisted the government in protecting potential witnesses. Without the ability to monitor defendant's calls, the government would have had no means of detecting defendant and his father's interest in a potential witness.

//
//
//

RESPONSE TO MOTION TO PROHIBIT CALL MONITORING
Seleznev-CR11-0070RAJ – Page 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## IV.  CONCLUSION

For the foregoing reasons, defendant's request to prohibit the government from continuing to review defendant's monitored jail calls should be denied.

DATED this 5th day of October, 2015.

Respectfully submitted,


*/s/ Norman M. Barbosa*
NORMAN M. BARBOSA
Assistant United States Attorney




*/s/ Seth Wilkinson*
SETH WILKINSON
Assistant United States Attorney

RESPONSE TO MOTION TO PROHIBIT CALL MONITORING
Seleznev-CR11-0070RAJ – Page 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**CERTIFICATE OF SERVICE**

I hereby certify that on October 5th, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorney of record for Defendant.

         *s/ Jennifer J. Witt*
JENNIFER J. WITT
Legal Assistant
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-2520
Fax: 206-553-2502
E-mail: Jennifer.Witt@usdoj.gov

RESPONSE TO MOTION TO PROHIBIT CALL MONITORING
Seleznev-CR11-0070RAJ – Page 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970