UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE
_____

UNITED STATES OF AMERICA,        )
                                 )
                Plaintiff,        ) CASE NO. CR11-70RAJ
                                 )
v.                               ) SEATTLE, WASHINGTON
                                 ) October 16, 2015
ROMAN SELEZNEV,                  )
                                 ) MOTION TO POSTPONE
                Defendant.        ) *FARETTA* HEARING
                                 )
_____

VERBATIM REPORT OF PROCEEDINGS
BEFORE THE HONORABLE RICHARD A. JONES
UNITED STATES DISTRICT JUDGE
_____

APPEARANCES:

 For the Plaintiff:    NORMAN BARBOSA
                       SETH WILKINSON
                       ASSISTANT UNITED STATES ATTORNEYS



 For the Defendant:    ANDREA OSTROVSKY
                       ANGELO CALFO
                       CALFO HARRIGAN EAKES



 Reported by:          NANCY L. BAUER, CCR, RPR
                       Federal Court Reporter
                       700 Stewart Street, Suite 17205
                       Seattle, WA 98101
                       (206) 370-8506
                       nancy_bauer@wawd.uscourts.gov

```
 1   October 16, 2015                               11:00 a.m.
                            PROCEEDINGS
 2   _____

 3        THE CLERK:  We are here in the matter of the United

 4   States v. Roman Seleznev, Cause No. CR11-70, assigned to this

 5   court.

 6      Counsel, please make your appearances for the record.

 7        MR. BARBOSA:  Good morning, Your Honor.  Norman

 8   Barbosa and Seth Wilkinson on behalf of the United States.

 9        THE COURT:  Good morning.

10        MS. OSTROVSKY:  Good morning, Your Honor.  Andrea

11   Ostrovsky and Angelo Calfo here for Roman Seleznev.  Linda

12   Noble is interpreting.

13        THE COURT:  All right.  Good morning, all of you.

14   Thank you for being here.

15      Do we have just one interpreter?

16        MS. OSTROVSKY:  Yes.

17        THE COURT:  Okay.  I'll let the interpreter know that

18   sometimes in expanded hearings, we have two interpreters.  If

19   at any point in time you need a break or just an opportunity

20   for people to slow down, or request anyone to slow down, or

21   maybe just to have a breather, just let the court know.  Just

22   raise your hand.  You won't interrupt the proceedings, but I

23   want to make sure that you have the capacity to fully

24   interpret what it is that's taking place.  Is that agreed?

25        THE INTERPRETER:  Thank you, Your Honor.  And just
```

1   for the record, the interpreter wanted to note that the

2   headphones don't seem to work in this particular instance.

3   There is a hearing issue, and so it requires that the

4   interpreter speak directly into the right ear, which means

5   turning away from the court.  So I just ask all the parties

6   to be aware that I can't necessarily look, and I will ask

7   people to speak reasonably slowly and clearly so that I can

8   adequately interpret everything.

9              THE COURT:  Yes, of course.  Thank you.

10      We're here to address the motion of the defendant on the

11   request for a *Faretta* hearing.  But since the parties are all

12   here, I want to get one matter out of the way.  I've already

13   indicated to counsel that I'm not going to permit oral

14   argument on the defendant's motion for order prohibiting the

15   prosecution team from obtaining and using BOP telephone

16   records for use in prosecution.  The court is denying that

17   motion.  The court believes that there is no legal basis to

18   support the motion.  I'm satisfied that the Ninth Circuit has

19   upheld as proper that review by prosecution teams to monitor

20   phone calls.

21      The law is also clear that the defendant had no reasonable

22   expectation of privacy in his monitored communications, and

23   no recognized privilege applies to his communication with his

24   family and friends.

25      The court is also satisfied that there's no indication

1    that's been presented by the defense to suggest the

2    defendant's ability to communicate with counsel has been

3    compromised or that his ability to communicate with counsel

4    in preparation for his case has been infringed in any way.

5         Absent such a showing, the court finds that there is no

6    basis to support the motion, and the motion is denied without

7    further argument.

8         Now, the defendant has filed a request for the opportunity

9    to represent himself for pretrial motions.

10        Mr. Seleznev, I want to make sure you understand that what

11   you presented to the court is labeled a *Faretta* hearing.  A

12   *Faretta* hearing is essentially the United States Supreme

13   Court decision that requires the court to conduct a hearing

14   to assess whether the defendant's desire to waive counsel and

15   represent himself is knowing and voluntary.

16        Now, I'm going to ask you several questions, because

17   that's the way the hearing works.  It's primarily

18   communication between the court and the defendant, to make

19   sure that you understand what you're doing, that you're

20   making an intelligent decision, and that you actually wish to

21   represent yourself for pretrial matters.

22        So to begin, I'm going to have you placed under oath.

23   Please raise your right hand to be placed under oath.

24             MS. OSTROVSKY:  Your Honor, if I could, I'd actually

25   like to say something to the court before the court starts.

 1          THE COURT:  Absolutely, counsel.

 2          MS. OSTROVSKY:  Thank you, Your Honor.

 3     Good morning, Your Honor.

 4          THE COURT:  Good morning.

 5          MS. OSTROVSKY:  An issue has arisen over the last

 6     week or so that we need to bring to the court's attention and

 7     which requires us to ask this morning for a continuance of

 8     the *Faretta* hearing.

 9          Most acutely, Mr. Calfo and I have been at the courthouse

10     for the last hour and 15 minutes to meet with Mr. Seleznev

11     before this hearing.  We alerted the marshals three times to

12     the fact that we were here and ready to meet with him.  We

13     were given five minutes to meet with him.  He's not prepared

14     for the hearing today, and he's asked us to ask for a

15     continuance.

16          But, Your Honor, this is not the first impediment that's

17     been put in our way to communicate with our client.  About a

18     week ago, without giving us any warning, the BOP moved

19     Mr. Seleznev down to Sheridan, and we didn't find out that he

20     was moved until he was able to make one attorney phone call

21     from Oregon.

22          Sheridan is about five hours away from here.  This makes

23     it incredibly difficult for us to meet with Mr. Seleznev.

24     Even speaking on the phone with him, our conversations are

25     very limited and can't be substantive because his ability to

1    speak in English -- he's not a native English speaker.  We

2    need a translator to be able to interpret substantive

3    conversations with him.

4        I brought this to the prosecutors' attention, Your Honor.

5    A few days later, the next thing we knew, he was back at

6    SeaTac.  He's been held in the solitary housing unit since

7    he's been returned to SeaTac, which means he cannot email me

8    to let me know what's going on, he has to ask for permission

9    to be able to call an attorney, and then it's at the

10   discretion of the guard when he can make that phone call.  He

11   cannot make any personal phone calls.

12       And I understand that Your Honor denied our motion, but I

13   think Your Honor understands that Mr. Seleznev has a very

14   close relationship with his father.  He speaks with his

15   father about his strategy in this case, and he hasn't been

16   able to have contact with his father whatsoever.

17       My understanding from the government is that they do not

18   know where Mr. Seleznev will go after today's hearing.  They

19   do not know -- at least the last time I spoke with the

20   prosecutors, they did not know if he would remain at SeaTac,

21   or if he'll go somewhere else.

22       Your Honor, if he is moved away from SeaTac, we have very

23   limited ability to be able to communicate with him

24   effectively and prepare for the upcoming hearings, go through

25   discovery, prepare for trial.

1          In addition, just the erratic shifting and moving him

2     around, in and out of solitary confinement, from one place of

3     incarceration to another, those transition periods make it

4     very difficult for an inmate to communicate with counsel.

5     He's, you know, in vans for long periods of time.  He can't

6     talk with us.  It is making it very difficult for us to be

7     able to consistently and effectively communicate with

8     Mr. Seleznev.

9          And because he's been moved around, because he hasn't had

10    good access to us, because we weren't able to speak with him

11    this morning, we'd ask that Your Honor continue today's

12    hearing.

13         We'd also ask that Your Honor continue the upcoming

14    Pretrial Motions I deadline.  The reason for that is that

15    Mr. Seleznev's motion in paper is that he be able to file

16    pretrial motions on his own, and the first pretrial motions

17    deadline is October 26th.  So I think the court needs to be

18    able to rule, make a *Faretta* ruling before that first

19    deadline so as not to prejudice the defendant's Sixth

20    Amendment right to be able to represent himself at that stage

21    of the proceedings, if that is what he decides he wants to

22    do.

23         One more thing, Your Honor:  The court has been alerted to

24    the fact that the government believes it has information

25    that's discoverable that is classified.  They've notified the

1    court that they'd like the court to appoint a classified

2    information security officer.  We have already been in

3    contact with Mr. Slade and understand from him that this

4    process of getting security clearances could take a number of

5    months.

6        So there is just a few things that are coming up that we

7    think may require additional time to be able to prepare for

8    trial, not the least of which is the access to counsel

9    issues.

10       So we would ask the court to continue today's hearing,

11   continue the Pretrial Motions I deadline, suspend the current

12   case schedule, and set a status conference fairly soon, Your

13   Honor, so that we can evaluate what's going on with

14   Mr. Seleznev's housing situation, and we may, at that point,

15   ask the court for a new scheduling order.

16           THE COURT:  Let me ask you a question, counsel.  Is

17   there some reason why, as soon as you started to experience

18   difficulty in terms of your client's housing, that you didn't

19   let the court know right away?  The court scheduled this

20   hearing for an hour, and to be honest with you, I have a very

21   congested calendar, and I certainly could have added another

22   proceeding to take place and take some of the pressure off

23   the back end of the court's calendar.  When you do it as

24   you're doing it, that means the court is going to waste the

25   next hour-plus because of your inability to bring this to the

1   court's attention earlier.

2        MS. OSTROVSKY:  I apologize, Your Honor, and I will

3   absolutely, in the future, next time alert the court right

4   away.  I did alert the prosecutors and -- but next time I

5   will alert the court.  And I sincerely apologize for the

6   inconvenience to the court.

7        THE COURT:  And, counsel, part of what you're

8   bringing to the court's attention deals with FDC activities,

9   as opposed to the government's controls.  Now, my

10  understanding is the government doesn't have any control

11  whatsoever as to where the defendant is housed or his

12  transfer or relocation, or where he's actually positioned at

13  the detention center.  I don't think you have any reason to

14  disagree with that, correct?

15       MS. OSTROVSKY:  Well, I don't think that the

16  prosecutors control the BOP, Your Honor.  I do think that if

17  the prosecutors communicate to the BOP that they are

18  concerned that the BOP's actions are infringing on

19  Mr. Seleznev's Sixth Amendment rights, I think that the BOP

20  listens.

21       THE COURT:  Well, the concern I have, counsel, is

22  that if you're going to raise these types of issues about

23  what's taking place at the Federal Detention Center, the

24  Federal Detention Center has their own set of lawyers.

25  They're not here today.  I don't see anyone in the audience,

1   and certainly nobody is standing up now.

2        MR. BARBOSA:  We actually do have an attorney, just

3   for the court's knowledge, from BOP, because we wanted to be

4   prepared to address the phone calls issue.  We had not

5   discussed this current issue.  But there is somebody

6   available if you have questions, Your Honor.

7        THE COURT:  Okay.  Thank you.

8     Counsel, please continue.

9        MS. OSTROVSKY:  That's the end of my argument, Your

10  Honor.

11       THE COURT:  All right.  I'll hear from counsel for

12  the government.

13       MR. BARBOSA:  Your Honor, as you've seen, the BOP

14  does have some serious security concerns in this case, and

15  they have been handling Mr. Seleznev very carefully.

16     He was moved last week.  As soon as we learned about that,

17  we began communicating with the BOP about the reasons for it.

18  They did have some new security concerns last week that

19  turned out to be unsubstantiated.  They moved him back to the

20  FDC, I believe as early as Monday or, at the latest, Tuesday.

21     We have been coordinating closely with the marshals and

22  the BOP to make sure that Mr. Seleznev does have access to

23  counsel, despite the added security precautions that the BOP

24  has implemented, which have, at times, included him being in

25  the SHU.  He has not been permanently in the SHU.  He's been

1  in a variety of different units.  But, for example, when

2  placed in the SHU, at one point he did not have contact

3  visits with counsel.  We've worked on that with the marshals.

4  Mr. Wilkinson and I met personally with the warden to address

5  the concern that he needed to have contact visits, and

6  they've worked with us and have been very responsive to make

7  sure that Mr. Seleznev had adequate access to counsel.  Even

8  last weekend, when he was briefly moved to Sheridan, when

9  they did contact us and informed us of this, they let us know

10  that he did have access to an attorney phone, an unmonitored

11  attorney phone so he could communicate with counsel.

12      There's no question that an inmate in custody has more

13  difficulty communicating with his counsel than somebody who

14  is not in custody, but the BOP is responsive and they are

15  working with us, and they are doing everything they can.

16      As far as this morning's situation, I just learned about

17  that as we walked in for this hearing.  We are available

18  later.  It sounds like the court may not be.  But we're happy

19  to allow counsel to have that hour to talk to their client,

20  if there is a way to fit it into the court's schedule.  So

21  we'll make ourselves available.  If it can't be done today,

22  we already have -- we have some time available next Friday

23  morning, also.

24          THE COURT:  The court is not available, counsel, from

25  Wednesday through Friday.

1      Counsel, if you could address one of the other concerns

2  that counsel had, and she represented that when they had made

3  attempts to contact their client when he was at Sheridan,

4  that they had one call, is what counsel represented, or very

5  limited opportunity to talk to their client, and it was also

6  up to the discretion of the on-duty officer to decide if the

7  defendant could even have access to counsel in the first

8  place to make the call.

9          MR. BARBOSA:  Yes.  I understand the procedures in

10  the BOP, and I believe this is the same as the FDC, are that

11  when a defendant wants to make a call to their attorney, they

12  have to request permission from their unit manager to make

13  the call, and then the unit manager goes about arranging the

14  call.  It may take an hour or two.  It may take some time to

15  arrange it.  But it's not an immediate -- they don't have a

16  phone, for example, in their cell, where they can make a

17  call.  But that is the standard procedure.  All the other

18  inmates at the FDC are subject to the same circumstances.

19      When he's in the SHU, he also has the ability to

20  request -- set up a phone call.  BOP informed me that he had

21  two phone calls the day he arrived at Sheridan, with counsel.

22  I don't know if they have their information right.  But they

23  do have procedures in place, and they're acting under the

24  same procedures as every other inmate.

25          THE COURT:  Is there any reason why the defendant, if

1   the circumstances presented themselves, that would warrant

2   his relocation or transfer to a different facility, that

3   there can't be some communication with defense counsel so

4   that they're not surprised or shocked or amazed by the fact

5   that their client is not in the location where they thought

6   they could contact him?

7           MR. BARBOSA:  That -- first, my understanding as of

8   today is that the BOP and the marshals have no current plans

9   to move Mr. Seleznev from the FDC.  Circumstances can,

10  obviously, change, but that was a highly unusual

11  circumstance.

12      In terms of informing counsel in advance of a move, that

13  is something that the BOP and marshals would be extremely

14  adverse to.  That's a serious security concern in terms of

15  allowing others to know when he may be transported.  So they

16  would be opposed to that.

17          THE COURT:  Is there any reason why they can't call

18  immediately upon transfer?

19          MR. BARBOSA:  No.  And they did call us, and we began

20  contacting counsel as soon as we learned of it last Friday.

21  We had some email communication issues.  We didn't get that

22  notice to them for several hours, maybe five to six hours

23  after we learned.  But once he was there, we learned, and we

24  began communicating it to counsel.  And once he was back, as

25  soon as we learned, we communicated that to counsel.

1          THE COURT:  All right.  Thank you, counsel.  Anything

2     further?

3          MR. BARBOSA:  No, Your Honor.

4          THE COURT:  All right.  Counsel?

5          MS. OSTROVSKY:  Just two quick points, Your Honor.

6     And, again, I apologize for the inconvenience to the court,

7     but it's been my experience that I'm able to meet with my

8     client before a hearing, such as this one, for at least 20 to

9     30 minutes.  We were not planning on not being able to meet

10    with our client this morning, so...

11         The other -- just -- I just want to reiterate that our

12    client doesn't speak great English, so having access to the

13    phone while he's in the SHU, yes, my understanding is he can

14    make a request, and when the BOP finds it appropriate, he can

15    make a call, but I'm not allowed to get an interpreter on the

16    line, and so it's very difficult to have a substantive

17    conversation with him.

18         And, you know, what I heard is that there is no current

19    plans to move Mr. Seleznev from SeaTac, but that isn't -- I'm

20    not feeling very reassured, Your Honor, given what's happened

21    over the last week, and just emphasizing again, it's just

22    making it very difficult.  This erratic moving around into

23    different units, in the SHU, down to Sheridan, it's making it

24    very difficult for us to communicate effectively with

25    Mr. Seleznev.

1    THE COURT:  Counsel, I don't have a crystal ball to

2  be able to tell you what's taking place or what's going to

3  take place down the road as to why that transport was

4  necessitated.  I don't have any information at this point in

5  time.

6    The other concern I have is, when you say you wanted to

7  meet with your client this morning to prepare him for his

8  *Faretta* hearing, counsel, he filed his motion on August 26th,

9  so there's been a considerable amount of time from the time

10  he filed this motion, that you clearly had to be on notice

11  that he filed the motion, and you clearly had to be on notice

12  that the hearing was going to take place today, and yet you

13  say today that you waited until ten o'clock today to talk to

14  your client in preparation for the hearing.  Is there some

15  reason for that extended delay in preparing for the hearing

16  today?

17    MS. OSTROVSKY:  Your Honor, I did not say that I

18  waited until this morning to talk to my client about the

19  *Faretta* process or the *Faretta* hearing.

20    I met with my client earlier this week at the FDC.  I've

21  met with him numerous times between the time that he filed

22  that motion and today.  But when I met with him earlier this

23  week, he and I discussed the fact that we would be able to

24  talk again this morning, and we weren't able to do that.

25    THE COURT:  All right.  Thank you, counsel.

1      Let me get my calendar.  I'll be right back.

2                    (COURT IN RECESS.)

3           THE COURT:  Counsel for the defense, the court has

4    made its decision.  I'm going to grant a continuance only

5    because the court can't accommodate any changes in today's

6    schedule.  We have a full sentencing calendar this afternoon,

7    and I'm not going to alter someone's expectation that they

8    had reason to believe they were going to be sentenced today,

9    to have to postpone them because of the circumstances that

10   you presented to this court.  It's not fair to them, and it's

11   certainly not fair to this court.

12       The other concern I have, counsel, about postponing this

13   proceeding is -- and I'm not saying it's accurate,

14   inaccurate, I'm not putting any weight as to the

15   communications that the government has provided to this court

16   by way of the recorded conversations, but it's a clear

17   suggestion to this court from what's reflected in those

18   communications that delay as a strategy is being considered

19   or discussed quite frequently during the course of those

20   communications.

21       This court expects that when we set deadlines, those

22   deadlines are adhered to.  This court expects this case to

23   proceed just like any other case would proceed, in a fair and

24   expeditious manner, giving the parties the opportunity to

25   properly prepare their case without unnecessary delay.

1       So, again, I'm not confirming the accuracy or inaccuracy

2   of those recordings or putting any weight one way or the

3   other, but I want to send a clear statement to you and to

4   your client that unwarranted delays or artificial or

5   fictional reasons for delays will not be tolerated by this

6   court.

7       As an officer of this court, you've represented that you

8   didn't have the opportunity to have this last meeting with

9   your client.  I'm not exactly sure what else needed to be

10  done.  If you actually met with your client, and I have no

11  reason to not believe that, as you've indicated, but it seems

12  that when you walked into this court today, even if it was

13  five minutes to 11:00, you should have been prepared to go

14  forward with the *Faretta* hearing, and so should your client.

15      But under the record that you've made and under the

16  circumstances that you've provided to this court,

17  particularly with the moving and transfers of the defendant

18  several times, it is for that reason the court gives greatest

19  consideration for postponing.

20      So the date that I have available, counsel, will be

21  October 27th at 9:00 a.m.  Let me hear from the government if

22  there is any reason why the government can't be here on

23  October 27th at 9:00 a.m.

24          MR. BARBOSA:  We can make that, Your Honor.

25          THE COURT:  Counsel for the defense?

1          MS. OSTROVSKY:  If I can just check my calendar.

2          THE COURT:  Yes.

3          MR. CALFO:  Your Honor, October 27th will work.  And

4    if I may have just a moment, Your Honor?

5       Your Honor, I just wanted you to know that we heard what

6    you just said loud and clear.  I hope the court knows that

7    Ms. Ostrovsky and I have no interest -- never had in our

8    entire law careers to ask the court to delay a proceeding for

9    some inappropriate reason that our client may have concocted.

10   We're not going to do that.

11      Those conversations that took place were before we got

12   involved.  Our conversations with Mr. Seleznev, I think, have

13   been aimed at making sure that we can do a good job

14   representing him and he understands the options that are

15   available to him.

16      This *Faretta* issue has been a difficult issue for both the

17   client and for us.  And one of the reasons we wanted to meet

18   with him this morning is that he still hasn't decided exactly

19   how he's going to approach it.  It's been an evolving issue.

20      So I want the court to know we have been diligent.

21   Ms. Ostrovsky and I have both been very diligent in working

22   with Mr. Seleznev on this *Faretta* issue.  It's in flux.  This

23   is a man who is very vulnerable.  He's away from his family.

24   He's facing a lot of time here.  He has no one to talk to,

25   other than us and his father, and so it's a very difficult

situation.  It's not quite as static as you might normally

see, Your Honor.  So I just wanted you to take those things

into consideration.

Thank you.

THE COURT:  I just want to make sure you're clear,

counsel, and co-counsel is clear.

Both of you have excellent reputations in this court.

Both of you have appeared before this court on numerous

occasions and have always provided the highest caliber of

service and representation to your clients.  I don't expect

that that's going to change, and the court's opinion of

either of you certainly hasn't changed.

But under the circumstances of how this was put before

this court today, I want to make sure that you and your

client have a clear understanding of the court's expectations

and what the court will and will not tolerate for the further

proceedings.

MR. CALFO:  And that's understood, Your Honor.  We

understand.  I hope you understand why this happened today.

THE COURT:  I understand that, counsel.

MR. CALFO:  Thank you.

THE COURT:  And, counsel, when you do have

communication with your client, I trust -- I don't expect a

response -- but I hope that you're emphasizing for him that

oftentimes other individuals other than the lawyers -- I'm

1  talking about family, friends, other people housed and

2  incarcerated with him -- will give him advice.  Oftentimes

3  that advice -- as a matter of fact, most of the time that

4  advice is false, premised upon false expectations, or lack of

5  an understanding of the process and procedures, but believe

6  that what they're doing would trump the advice provided by

7  counsel.  So I hope that your client takes that into

8  consideration, and that you take that under advisement when

9  you communicate with your client of the importance of the

10  communication with you, and not be influenced by other

11  individuals who won't bear the consequences or suffer the

12  consequences of bad decisions being made.

13         MR. CALFO:  Thank you, Your Honor.

14         THE COURT:  All right.  So I set the date and time.

15     Counsel has requested a postponement of the case schedule.

16  I'm not going to do that, counsel, right now.  I want to have

17  the *Faretta* hearing.  The current case schedule deadline is

18  the 26th of October.  I'll put that in abeyance, counsel.

19  I'll put it on hold, and I'll make a final determination of

20  what that may look like as far as a continuation.  You can

21  expect a continuation of the case schedule deadline for that

22  particular date, but I don't want to give you a firm or a

23  fixed date until I've made a ruling on the *Faretta* hearing;

24  otherwise, we can be postponing and rescheduling to a

25  different date that doesn't make any sense.  We don't have to

1  do that at this point in time.  So I'll schedule it later,

2  but just not right now.

3      Anything further from counsel for the defendant?

4          MS. OSTROVSKY:  No, Your Honor.

5          THE COURT:  Anything further, counsel for the

6  government?

7          MR. BARBOSA:  No, Your Honor.

8          THE COURT:  All right.  We're in recess.

9

10              (THE PROCEEDINGS CONCLUDED.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

I, Nancy L. Bauer, CCR, RPR, Court Reporter for the United States District Court in the Western District of Washington at Seattle, do hereby certify that I was present in court during the foregoing matter and reported said proceedings stenographically.

I further certify that thereafter, I have caused said stenographic notes to be transcribed under my direction and that the foregoing pages are a true and accurate transcription to the best of my ability.

Dated this 6th day of November 2015.

/S/  Nancy L. Bauer

Nancy L. Bauer, CCR, RPR
Official Court Reporter