UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )No.CR11-70RAJ |
| | ) |
| ROMAN SELEZNEV, | )October 27, 2015 |
| | ) |
| Defendant. | )Seattle, WA |

---

TRANSCRIPT OF FARETTA HEARING PROCEEDINGS
BEFORE THE HONORABLE RICHARD A. JONES
UNITED STATES DISTRICT COURT JUDGE

---

For the Plaintiff:          United States Attorneys Office
                            NORMAN BARBOSA
                            SETH WILKINSON
                            700 Stewart Street
                            Suite 5220
                            Seattle, WA  98101


For the Defendant:          Calfo Harrigan Lehy & Eakes
                            ANDREA OSTROVSKY
                            ANGELO CALFO
                            999 Third Avenue
                            Suite 4400
                            Seattle, WA  98104


Interpreters:               LINDA NOBLE

                            KRISTINA TERRA


REPORTED BY:  Yvonne A. Southworth, CCR No. 2129.

```
 1                (Defendant present, in custody.)

 2           THE COURT:  Good morning.  Please be seated.

 3           THE CLERK:  We're here in the matter of

 4   United States versus Roman Seleznev, cause number

 5   CR11-70, assigned to this Court.  If counsel and the

 6   interpreter could please rise and make your appearances

 7   for the record.

 8           MR. BARBOSA:  Good morning, Your Honor.  Norm

 9   Barbosa, Seth Wilkinson, and Harold Chun for the United

10   States.  Mr. Chun is from the Department of Justice,

11   Computer Crimes and Intellectual Property Section.  He

12   is filing a notice of appearance of counsel for the

13   Government.

14           THE COURT:  Thank you for being here.

15           MS. OSTROVSKY:  Good morning, Your Honor.

16   Andrea Ostrovsky and Angelo Calfo on behalf of

17   defendant, Roman Seleznev.  We have two interpreters

18   today, Linda Noble and also Christina Terra.

19           THE COURT:  Thank you.

20           Thank you, interpreters, for being here.

21           I must advise the interpreters first.  If at

22   any point in time you do not understand myself or the

23   lawyers or Mr. Seleznev, please advise the Court.  If

24   you need to switch interpreters, and you need to be

25   able to transition so there's no break in translation,
```

1   just let the Court know, and I'll be more than happy to

2   accommodate that request.  The only thing I expect of

3   you is just to raise your hand to get my attention so I

4   can stop the questioning or examination of any

5   witnesses.  Do both interpreters understand?

6           INTERPRETER:  Yes, Your Honor.

7           THE COURT:  Thank you.  The purpose of this

8   hearing this morning is a Faretta hearing.  And this is

9   a result of the defense request for a hearing.  Now,

10  whether the defendant wrote the brief or not, I want to

11  make sure he understands that the purpose of a Faretta

12  hearing is for the Court to conduct a hearing to assess

13  whether or not the defendant's desire to waive counsel

14  is knowing, intelligent, and voluntarily made.

15          So my first question is of the defendant's

16  lawyers.  Is there a need for the Court to go forward

17  with the Faretta hearing?  The last time you were

18  before the Court, there was some expression by counsel

19  that may or may not be the case.  So before I start

20  going down that road, I want to hear from counsel

21  exactly what your understanding of why we're here this

22  morning and what's going to take place.

23          I'm not sure which one wants to speak.

24          MR. CALFO:  Yes, Your Honor.

25          MS. OSTROVSKY:  Thank you, Your Honor.  Would

1    you like me to take the podium?

2            THE COURT:  Yes.

3            MS. OSTROVSKY:  Your Honor, Mr. Seleznev does

4    want to go forward with the Faretta hearing this

5    morning.  And we just would like to make clear to the

6    Court that our recommendation to Mr. Seleznev is that

7    he allow us to represent him for all phases of this

8    pretrial and trial proceedings, but he's resolute in

9    his desire to be able to file his own pretrial motions.

10           We have talked with him about what is going

11   to happen at today's hearing.  And we believe that he

12   is prepared to go forward with the colloquy with the

13   Court that's required by the Supreme Court case.

14           THE COURT:  Okay.  Thank you.  All right.

15   Mr. Seleznev, I want to explain to you how the

16   proceedings is going to take place.  First, I'm going

17   to place you under oath, and I'm going to ask you a

18   series of questions.  Once I conduct my examination of

19   you, asking you questions, then I'm going to ask your

20   lawyers questions to make sure they have expressed

21   their positions.

22           I only have a limited amount of information

23   from your lawyers right now, and I'll ask them more

24   detailed questions.  The Court perceives the Government

25   as mere observers for the most part.  I'll ask them a

1  few questions, but the focus of my concern this morning

2  is to be certain, if you do wish to represent yourself

3  for pretrial motions, that you're doing so knowingly

4  and voluntarily.

5           Sir, first I'll have you placed under oath.

6  So please rise and raise your right hand so you can be

7  placed under oath.

8           (The Defendant is sworn under oath by the

9  Clerk.)

10           THE DEFENDANT:  I swear.

11           THE COURT:  You may be seated.

12           Mr. Seleznev, you have now been placed under

13  oath.  It's very important that you provide truthful

14  answers to all the questions that are asked of you by

15  myself.  If you make a false statement to the Court or

16  if you lie or you commit perjury, that can result in a

17  separate criminal charge against you.  Do you

18  understand that, sir?

19           THE DEFENDANT:  I understand.

20           THE COURT:  And I want to make sure that if

21  you don't understand the question, you'll ask me to

22  clarify by way of repeating or asking you the question

23  in a different way.  Can we have that understanding?

24           THE DEFENDANT:  I understand.

25           THE COURT:  If you don't understand any of my

1    questions, or if you need to consult with your lawyers

2    before you answer any question, I want you to know that

3    you do have the right to interrupt the proceeding, and

4    you can consult with your lawyers.  And please advise

5    the Court if you need to talk with your lawyers.  I

6    don't want you to answer any questions that you don't

7    feel comfortable answering without the benefit of your

8    lawyers.  Do you understand that, sir?

9              THE DEFENDANT:  I understand.

10             THE COURT:  And I want counsel to know, if I

11   ask any question that you believe is inappropriate or

12   that may infringe upon your defendant -- or your

13   client's constitutional rights or any privileged

14   communications between you and your client, that you

15   are certainly free to consult with your client and

16   direct him whichever way you believe appropriate in

17   responding to questions posed by the Court.  I don't

18   want there to be any question that there's a waiver of

19   attorney-client communications or any infringement of

20   the constitutional rights that the defendant has

21   because the Court is conducting the Faretta hearing.

22             MS. OSTROVSKY:  Thank you, Your Honor.

23             THE COURT:  It's my understanding that the

24   Government does not oppose the defendant's request, but

25   the only concern the Government has is for the Court to

1    conduct a Faretta-type hearing.  Is that the

2    Government's position?

3              MR. BARBOSA:  That's correct, Your Honor.

4    This is in the Court's discretion.  While there may be

5    some reasons that you would be able to deny the

6    request, we believe the Court has discretion to grant

7    it if he complies in the Faretta hearing.

8              THE COURT:  Mr. Seleznev, I want to make sure

9    also that you understand we're not here to discuss the

10   facts of the case.  I don't want you to make any

11   admissions about the facts of this case or any

12   admissions about what your strategy of defense is or

13   any positions about your defense or any issues about

14   what you believe are the facts in this case.  That's

15   not why we're here.  We're only here to decide whether

16   or not you will be able to represent yourself in

17   pretrial proceedings.  Do you understand that, sir?

18             THE DEFENDANT:  I understand.

19             THE COURT:  Now, it's my understanding that

20   you wish to represent yourself for pretrial proceedings

21   only, but that your lawyers would conduct the trial.

22   Is that correct?

23             THE DEFENDANT:  It's not exactly.

24             THE COURT:  You explain to me exactly what

25   you're asking that you be permitted to do for purposes

1    of pretrial proceedings.

2            THE DEFENDANT:  What I'm asking for is

3    permission to file pretrial motions myself, but that my

4    attorneys also be allowed to file pretrial motions, and

5    that I will go to hearings with them as well.

6            THE COURT:  Now, when you say you file

7    pretrial motions, and they file pretrial motions, can

8    you define exactly the motions that you believe that

9    you would be filing separate from the motions that you

10   think that your lawyers might be filing?

11           MS. OSTROVSKY:  Your Honor, can we consult

12   with our client for a moment?

13           THE COURT:  Certainly, absolutely.

14           THE DEFENDANT:  Your Honor, I can't say

15   precisely which motions I would be bringing, but I

16   believe that there are some motions that my attorneys

17   wouldn't bring and that I would like to be able to

18   bring those motions myself.

19           THE COURT:  Now, you understand, sir, that

20   the Court is not going to permit you to file a set of

21   motions on the same topic that your lawyers had filed a

22   motion.  Do you understand that, sir?

23           THE DEFENDANT:  Yes, I understand.

24           THE COURT:  Now, sir, let me get a little bit

25   more understanding from you about you as an individual.

1   How old are you, sir?

2            THE DEFENDANT:  Thirty-one.

3            THE COURT:  And how much -- how far did you

4   go in school?

5            THE DEFENDANT:  Eleven grades.

6            THE COURT:  And have you ever taken any type

7   of law courses or studied law in any set of

8   circumstances?

9            THE DEFENDANT:  No, but I've had a sufficient

10  amount of time here to study it in jail.

11           THE COURT:  And when you say study it in

12  jail, what have you used to help you have a better

13  understanding of what the United States laws are?

14           THE DEFENDANT:  There are computers in the

15  law library, and they have everything there.

16           THE COURT:  So give me examples of what types

17  of things you have read to help prepare you to be able

18  to cover filing motions.

19           THE DEFENDANT:  Well, for example, I want to

20  file a motion to strike some of the counts in my

21  charges, because I think that some of them are

22  repetitive.

23           THE COURT:  And you learned that as a result

24  of what you read on the computers?

25           THE DEFENDANT:  Yes.

1          THE COURT:  And have you ever represented

2    yourself in any type of legal proceeding?

3          THE DEFENDANT:  No.

4          THE COURT:  And, sir, have you ever had any

5    employment in the past where you were required to write

6    things or prepare writings or file documents?

7          THE DEFENDANT:  No, Your Honor.

8          THE COURT:  And have you taken any types of

9    drugs, medicine, pills, or drunk any alcoholic

10   beverages in the past 24 hours?

11         THE DEFENDANT:  I take medication for

12   epilepsy.

13         THE COURT:  Is there anything about that

14   medication that's affecting you now in terms of your

15   ability to understand anything that's taken place so

16   far this morning?

17         THE DEFENDANT:  I don't think so.

18         THE COURT:  In the last ten years, have you

19   been treated by any person medically or professionally

20   trained to address questions of mental competence,

21   mental illness, or mental infirmity of any type?

22         THE DEFENDANT:  No.

23         THE COURT:  And, sir, page 3 of your motion

24   that you filed before this Court -- do you have a copy

25   of that document, sir?

```
 1              THE DEFENDANT:  Yes, I see it.
 2              THE COURT:  Now, if you look at page 3,
 3    beginning on line 15, that reads that, "Defendant,
 4    Roman Seleznev, had been informed and believes hereon
 5    that public defenders in American courts regularly do
 6    the following."  Then it goes on to list five different
 7    things.  Are you telling the Court that you believe
 8    your current lawyers are engaged in that type of
 9    activity?
10              THE DEFENDANT:  The first and second.
11              THE COURT:  Is there some concern that
12    counsel had?
13              MS. OSTROVSKY:  I was just hoping to speak
14    with my client before he --
15              THE COURT:  You want to consult with him now,
16    counsel?  Is there something further, counsel?  Can I
17    continue with the examination?
18              MS. OSTROVSKY:  No.  I apologize, Your Honor.
19              THE COURT:  Counsel, there's no need to
20    apologize.  You're doing what you're supposed to do,
21    which is to represent your client, and if at any point
22    in time, you need to consult with your client, you can
23    put your hand on his arm to let him know not to answer
24    the question.  So if that's a measure of communication
25    you wish to utilize, feel free to do that.  I don't
```

1    want him to feel he's pressured or under duress.  I

2    want to make sure he's fully represented by his two

3    lawyers to help him get through this part of the

4    process.

5              MS. OSTROVSKY:  Thank you.

6              THE COURT:  So, Mr. Seleznev, that same page

7    says that you have been informed and you believe that

8    public defenders regularly do the following.  By whom

9    have you been informed and upon what is the basis for

10   your belief that those things take place with public

11   defenders?

12             THE DEFENDANT:  Well, the first two points I

13   had asked my attorneys to adopt my pretrial motions.

14   And they refused, because they told me that my motions

15   were pointless.

16             THE COURT:  Now, sir, you understand that

17   your lawyers are highly experienced, and both your

18   lawyers are well respected, and both of them are very

19   capable lawyers with years of experience representing

20   criminal defendants.  You understand that by your

21   desire to bring certain types of motions, you're

22   putting that experience at risk, because you're

23   counting on your skill set and your ability to

24   represent yourself.  Do you understand that, sir?

25             THE DEFENDANT:  Yes, I understand.

1          THE COURT:  You also understand that in our

2   system of justice, you do have a right as a defendant,

3   constitutional right to counsel, even if you can't

4   afford an attorney.  So, in other words, the right to

5   have counsel means full representation for the pretrial

6   motions, all pretrial hearings, and for purposes of

7   trial and sentencing.  Do you understand that, sir?

8          THE DEFENDANT:  Yes, I understand.

9          THE COURT:  You also understand that your

10  current attorneys are being provided to you at no

11  expense?  In other words, you don't have to pay for

12  these lawyers.  Do you understand that, sir?

13         THE DEFENDANT:  Yes.  Thank you.

14         THE COURT:  And my understanding is your

15  position is that you want them only to represent you on

16  matters other than the things that you specifically

17  want to represent yourself, and that's just pretrial,

18  is that correct?

19         THE DEFENDANT:  I didn't understand that.

20         THE COURT:  I just want to make sure that you

21  understand that your lawyers represent you for all

22  aspects of your prosecution and all aspects of your

23  defense.  Let me make sure you understand it this way,

24  sir.  Your lawyers represent you.  You understand that,

25  correct?

1          THE DEFENDANT:  Yes.

2          THE COURT:  And I want to make sure you

3  understand that when I tell you that your lawyers

4  represent you at no expense, that covers everything,

5  not just bits and pieces of your defense.  Do you

6  understand that?

7          THE DEFENDANT:  Yes, I understand.

8          THE COURT:  And you also understand, sir,

9  that if at some point in time you get to the point

10  where you say, Judge, I don't want to do this anymore,

11  I want to have my lawyers represent me for all pretrial

12  motions, that you can change your mind.  Do you

13  understand that?

14          THE DEFENDANT:  I understand.

15          THE COURT:  Is there any desire at this point

16  right now to say, no, Judge, I change my mind, I do

17  want them to represent me in all phases of the pretrial

18  process?

19          THE DEFENDANT:  I just want to clarify that I

20  would like to be able to file additional pretrial

21  motions, but that my attorneys also be able to file

22  their own pretrial motions as well.

23          THE COURT:  Now, when you say additional

24  motions, I want to make sure I understand exactly what

25  role that you will play.  So can you tell me what you

1   have in mind by way of how that process would work with

2   you filing additional motions?  So in other words, are

3   you going to write those motions?

4           THE DEFENDANT:  Yes, I will write them

5   myself.

6           THE COURT:  You're going to write them

7   yourself, is that correct?

8           THE DEFENDANT:  I'm going to be getting

9   assistance from a person or an assistant on the side,

10  but I will be filing them myself.

11          THE COURT:  Now, is the person that's

12  providing advice, is that person an additional lawyer?

13          THE DEFENDANT:  I don't think so.

14          THE COURT:  Now, I want to just make sure you

15  understand, sir, and I want to put your lawyers on

16  notice too, Mr. Seleznev, that in getting the

17  assistance of other persons, you filed an affidavit, a

18  declaration with this Court where you represented to

19  the Court that you have certain funds or no funds to

20  assist in your defense and also the amount of money

21  that you currently have access to.  And I don't want

22  you to make any misrepresentations to this Court if

23  you're hiring other lawyers to assist you in preparing

24  these motions.  So you may want to talk to your lawyers

25  about that, but I want to make sure I bring this to

1  your attention before you start answering questions

2  down that road.

3            You may -- you want to talk to your lawyers?

4            THE DEFENDANT:  No.

5            THE COURT:  Okay.

6            THE DEFENDANT:  It's not attorneys, and I'm

7  not going to pay him.  It's just assistance.

8            THE COURT:  Now, when you say assistance, are

9  they going to write the motions for you?

10            THE DEFENDANT:  They're going to help, and

11  they would be writing some parts themselves, and then

12  other parts, I would be writing.

13            THE COURT:  Let me ask you this, sir.  In the

14  document that was filed with this Court, specifically

15  the motion requesting bifurcated representation, who

16  prepared that document?

17            THE DEFENDANT:  That in fact was prepared by

18  the -- that assistant, but at my -- it was my idea.

19            THE COURT:  Now, one of the things that's

20  been presented to this Court are a series of

21  transcripts regarding communications that you have had

22  with other individuals, and that includes Henry Fisher.

23  It also includes Valerie Seleznev, your father, and

24  also includes statements and communications about or

25  with a person by the name of Kyle Green.

1            One of the things I want to make sure is, are

2     any of these people forcing you to move this Court for

3     the opportunity to represent yourself?

4            THE DEFENDANT:  No.

5            THE COURT:  Have these individuals made any

6     promises that have led you to make the decision that

7     hybrid representation is the wiser course of action?

8            THE DEFENDANT:  No.  There were no promises,

9     only advice.

10           THE COURT:  Are they forcing you to make this

11    decision?

12           THE DEFENDANT:  No.

13           THE COURT:  You understand, sir, that

14    oftentimes individuals will give you advice that aren't

15    your lawyers and suggest that you take certain

16    approaches with the Court, and because those

17    individuals are not trained in the law, particularly in

18    the laws of the United States, that they could be

19    giving you bad advice, and that bad advice could

20    increase the likelihood or the probability of your

21    being found guilty?

22           THE DEFENDANT:  I'm not going to be going to

23    trial with them.

24           THE COURT:  I understand that, but I want you

25    to understand that the pretrial motions that you might

1   be making before this Court could possibly put you in a

2   position where you are either providing information or

3   volunteering information or compromising the defenses

4   that your lawyers wish to make in advance at trial.

5           THE DEFENDANT:  I understand.

6           THE COURT:  Now, you also understand that

7   those communications -- and I've listed three

8   individuals, but the communications you have had with

9   them and other people who are not your lawyers are not

10  private or privileged communications.  You understand

11  that, sir?

12          THE DEFENDANT:  I understand, yes.

13          THE COURT:  And you also understand that your

14  communications on the telephone from the detention

15  center are not private communications or privileged

16  communications unless those communications are

17  specifically with your lawyers?  Do you understand

18  that, sir?

19          THE DEFENDANT:  Yes, I understand.

20          THE COURT:  So if you're discussing strategy,

21  if you're discussing what you're going to file, if

22  you're discussing how you wish to approach your

23  motions, that information may be recorded, and the

24  government would have access to that information.  Do

25  you understand that, sir?

1           THE DEFENDANT:  I do understand that now.

2           THE COURT:  And you understand that if your

3    lawyers were to represent you on those same motions,

4    all of those communications on the telephone from the

5    detention center would be privileged and protected, and

6    the Government would be precluded from having any

7    access to those conversations, and they would not be

8    permitted to listen to those conversations?  Do you

9    understand that, sir?

10          THE DEFENDANT:  Yes, I understand.

11          THE COURT:  Now, it's my understanding that

12   the individuals, at least the ones I've listed so far,

13   are not lawyers.  They don't necessarily have training

14   in law, and you would be relying upon them to assist

15   you in preparing your motions.  Is that what you're

16   telling the Court?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Have they made any threats or

19   promises or said anything or done to you or threatened

20   action against you in the future if you don't ask this

21   Court to be able to represent yourself on certain

22   motions?

23          THE DEFENDANT:  No, Your Honor.

24          INTERPRETER:  Your Honor, may the interpreter

25   switch?

1           THE COURT:  Certainly.

2           Mr. Seleznev, you understand that there's a

3   document on file called a protective order regarding

4   discovery.  Is that your understanding, sir?

5           THE DEFENDANT:  Yes, I understand.

6           THE COURT:  And have you read the specifics

7   of that order?

8           THE DEFENDANT:  Yes.

9           THE COURT:  And you understand that there's

10  certain restrictions in that order?

11          THE DEFENDANT:  Yes, I understand.

12          THE COURT:  And you understand that that

13  protective order as it currently reads would prohibit

14  you from consulting with other people.  In other words,

15  you can't share the discovery that would be or has been

16  provided to you from the Government.  Do you understand

17  that?

18          THE DEFENDANT:  Yes, I understand.

19          THE COURT:  And you also understand that in

20  preparing any motion, you couldn't provide copies, you

21  couldn't read, and you couldn't divulge any information

22  that you learned to these other individuals.  I'm

23  specifically talking about Mr. Henry Fisher, your

24  father, Kyle Green, or any other person who is not your

25  lawyer.  Do you understand that, sir?

1           THE DEFENDANT:  Yes, I understand.

2           THE COURT:  So I want to make sure you

3    understand that if you're writing your own motions or

4    drafting your own motions, you can't consult with this

5    other person that you've represented would be assisting

6    you in preparing the motions as far as referring to any

7    discovery that's been provided by the Government.  Do

8    you understand that, sir?

9           THE DEFENDANT:  Yes, I understand.

10          THE COURT:  And I want to make sure you

11   understand what discovery means.  Discovery means that

12   during the course of preparation for the trial, the

13   Government has certain obligations to provide to you

14   and your lawyers, and certainly your lawyers, access to

15   police reports, investigative reports, certain

16   statements by witnesses, and other type of information

17   as required by the Criminal Rules of Procedure.  You

18   understand that that type of discovery and the other

19   things within the rules you can't disclose to anyone

20   else other than your lawyers.  Do you understand that,

21   sir?

22          THE DEFENDANT:  Yes, I understand.

23          THE COURT:  And, sir, if you file a motion

24   before this Court, do you understand that if you are

25   going to take responsibility for that motion, then you

1    would have to be making the oral argument to the Court

2    on that motion?  Do you understand that?

3              THE DEFENDANT:  Yes, but I would like to ask

4    the Court to make sure that my attorneys also -- also

5    defend my position.

6              THE COURT:  I want to make sure you

7    understand, sir, if you're saying, I want to represent

8    myself on certain motions --

9              THE DEFENDANT:  No.  I said -- I said that I

10   wanted to file motions.

11             THE COURT:  I understand that, but if you

12   want to file motions -- I want to make sure I

13   understand.  You want to file a motion, but you want

14   your lawyers to argue the motion?

15             THE DEFENDANT:  Yes, that is my request.

16             THE COURT:  You understand, sir, the

17   difficulty -- the difficult position you put your

18   lawyer in is that if you draft a motion, if you prepare

19   the writing for that motion, and it's your belief in

20   that motion, if your lawyers don't believe that that

21   motion has merit, and they haven't drafted the motion,

22   and they haven't done any research about the particular

23   motion you filed, you put them in a very awkward

24   position of being unprepared to argue that type of

25   motion.  Do you understand that, sir?

1              THE DEFENDANT:  Yes, I understand.  And I

2      already talked about that.  I talked with my attorney.

3              THE COURT:  Let me ask counsel.  Counsel, are

4      you prepared to accept this approach where your client

5      would write a motion or draft a motion that you had no

6      hand in crafting, and that you would come to court and

7      argue that motion?  Is that your understanding of what

8      you're prepared to do?

9              MR. CALFO:  No.  No, we won't.

10             THE COURT:  Okay.  And, Mr. Seleznev, if

11     there are witnesses that need to be called, if there

12     are witnesses that need to be called because of the

13     motion that you filed, you would be expected to ask

14     those witnesses questions and conduct the direct and

15     cross-examination of those witnesses.  Do you

16     understand that, sir?  Is there an answer you wish to

17     provide, sir?

18             MR. CALFO:  I'm not sure what the question

19     was.

20             THE COURT:  The question -- it goes back to

21     whether or not he understands if there's a motion that

22     he files that requires argument or the presentation of

23     evidence by way of witnesses, that he would be expected

24     to examine those witnesses and make the argument to the

25     Court.  I just want to make sure he understands that's

1    what he's asking the Court to do.  I want to make sure

2    that's his understanding.

3                 THE DEFENDANT:  Yes, I understand.

4                 THE COURT:  Now, one of the motions that you

5    filed with the Court, which was stricken, was a motion

6    to dismiss.  Now, if that motion is advanced by you,

7    the Court's not going to let your lawyers file the same

8    motion separately from you.  Do you understand that,

9    sir?

10                THE DEFENDANT:  Yes, I understand.

11                THE COURT:  So you understand that if the

12   Court denies that motion, your lawyers don't get a

13   second chance to ask the Court based upon their

14   briefing and their materials that they would provide to

15   the Court for that same motion to be granted.  I'm

16   talking about a motion to dismiss.

17                THE DEFENDANT:  Yes, I understand.

18                THE COURT:  And, counsel for the defendant,

19   you understand that as well?

20                MR. CALFO:  Yes, Your Honor.

21                THE COURT:  Okay.  I just wanted to make sure

22   if he files a motion to dismiss the indictment that

23   we're not going to be doing this twice and repeating

24   the efforts of the defendant twice.  If he files a

25   motion, that's the opportunity to bring that type of

1    motion before the Court.  So we're not going to give

2    two separate hearings, two separate opportunities.

3              MR. CALFO:  I'm assuming that means on the

4    subject matter basically.

5              THE COURT:  On that subject matter.

6              MR. CALFO:  Yes.

7              MR. BARBOSA:  Your Honor, we're beginning to

8    have some concerns about how we're going to distinguish

9    which subject matter.  I mean, how different do these

10   motions have to be?  This is -- seems to be going

11   astray from a motion to represent himself pretrial to a

12   motion to act as co-counsel and possibly submit

13   inconsistent positions or just vaguely different

14   positions.  And how can we distinguish between what

15   motions Mr. Seleznev is allowed to file versus what

16   motions counsel is allowed to file?  If it's all

17   motions to dismiss will be Mr. Seleznev, and all

18   motions to suppress will be counsel, that could be

19   understandable.  But if a slight variation in the

20   argument regarding the motion to dismiss allows counsel

21   to file the same thing, how are we going to distinguish

22   between these things?  And that's causing us some

23   heartburn.

24             THE COURT:  Counsel, heartburn will be

25   eliminated because the Court plans on getting to the

1   subject matter.  Not right now.  And I'm going to

2   require the defense identify by way of a case schedule,

3   or added to the case schedule, all the motions that

4   defense counsel will be responsible for and all the

5   motions that the defendant specifically will be

6   responsible for.

7           As you recall early in the proceeding, I

8   asked the defendant, and he said he didn't know right

9   now.  That's not a sufficient answer for this Court to

10  make a final determination.  When we finish this

11  proceeding, if the Court grants the defendant's

12  request, the clear directive will be -- is for the

13  defendant, his lawyers, and government counsel to get

14  together and to identify between today's date and the

15  beginning of trial any and all motions that the parties

16  plan on filing with this Court.  I will also expect a

17  submission to this Court of deadlines for each of those

18  motions.

19          So that will be clear for the defendant, if I

20  grant his request, what he's expected to do, what his

21  lawyers are expected to do, and the deadlines for each

22  of those motions.  There will be no equivocation or

23  question about who's doing what by the time we finish

24  this process.  Does that answer your question, counsel?

25          MR. BARBOSA:  I think for now, yes, Your

1    Honor.

2              THE COURT:  Okay.  All right.  Mr. Seleznev,

3    let's get back to you.  So you do understand that if

4    you make a motion that you would be arguing the motion

5    that you filed.  Do you understand that, sir?  In other

6    words, you have to stand at the lectern or sit at

7    counsel table and make the argument to the Court to

8    convince the Court that I should grant your motion.

9    That would be your responsibility on the things that

10   you filed.  Do you understand that, sir?

11             THE DEFENDANT:  I understand.  I understand.

12   But one more time, I would like to request that my

13   attorneys help me.

14             THE COURT:  Sir, if you're going to represent

15   yourself -- that's the whole purpose of a Faretta

16   hearing, to make sure you understand this is knowing

17   and voluntarily.  If I'm going to let you waive your

18   right to have counsel, if you're going to represent

19   yourself on certain issues, that's your responsibility.

20   Your lawyers just told the Court that they're not going

21   to argue in court a motion that you drafted, that you

22   prepared, that they didn't have any hand in assisting.

23   So I want to make sure that that's your understanding

24   as you go into this hybrid approach to representing

25   yourself.

1          THE DEFENDANT:  I understand.  Thank you.

2          THE COURT:  All right.  Now, you also

3   understand, sir, that we have what are called motions

4   practice.  We also have local rules.  We also have

5   Federal Rules of Criminal Procedure.  And many of the

6   types of motions that you may wish to file will have

7   certain deadlines.  You'll be expected to be fully

8   responsible for meeting all those deadlines.  Do you

9   understand, sir?

10          THE DEFENDANT:  Yes, I understand.  And I

11   would like to request to extend the deadline for motion

12   number one if the Court will allow it.

13          THE COURT:  We'll get to that, an extension

14   of the motion deadline, a little bit later.  Right now,

15   I want to make sure you understand what the process is

16   going to be.

17          THE DEFENDANT:  Okay.

18          THE COURT:  So, again, you understand that

19   you'll be required to proceed under the Federal Rules

20   of Criminal Procedure and any local rules of this

21   district court.  Do you understand that, sir?

22          THE DEFENDANT:  Yes, I understand.

23          THE COURT:  And you also understand your

24   lawyers are trained in the law, and they possess

25   expertise in criminal law and criminal procedure.  As

1  lawyers, they will have much easier access to

2  investigators, expert witnesses, law books, and other

3  resources.  Because you are in custody, your access

4  will not be the same as theirs.

5          Are you prepared to represent yourself on the

6  motions that you wish to bring, recognizing that you

7  would be foregoing the opportunity to have that quality

8  of representation covering you on those motions?

9          THE DEFENDANT:  Yes, I understand.

10          THE COURT:  Make sure you also understand,

11  sir, in the American system, if a defendant is found

12  guilty, they frequently appeal their convictions.  Now,

13  a common claim by defendants is ineffective assistance

14  of counsel.  In other words, they're challenging the

15  type of representation they received from their

16  lawyers.  If you're representing yourself on the

17  motions that you filed, you're seriously compromising

18  that option.  In other words, you can't claim your

19  lawyers were ineffective on the motions you raised,

20  because you chose to represent yourself and not have

21  your lawyers represent you.  Do you understand that,

22  sir?

23          THE DEFENDANT:  Yes, I understand.

24          THE COURT:  Now, sir, I want you to

25  understand that this is a serious decision on your part

1    to decide to represent yourself, and I want to make

2    sure that you've thought long and hard about this

3    decision, and I want to make sure that you not be

4    influenced by other people's wishes and desires.  You

5    tell me that you're not.  My job as a trial judge is to

6    make sure you understand the rights that you have and

7    make sure you get a fair trial.  I can't emphasize

8    enough the importance of having quality representation

9    during all phases of the trial, which includes pretrial

10   motions practice.

11           Now, the law in this country indicates that

12   you do have the right to represent yourself, if that's

13   your choice.  But it's my responsibility to make sure

14   that you understand the enormity of the decision that

15   you're making by giving up the right to have counsel

16   represent you on every one of your motions.  I also

17   want you to understand that, in my opinion, you would

18   be much better served to be defended by individuals who

19   are trained in law, particularly with the quality of

20   lawyers that you currently have.

21           I think it's unwise for you to try to

22   represent yourself on any motion.  You're not familiar

23   with the law.  You're not familiar with court

24   procedures.  You're not familiar with the Rules of

25   Evidence.  And the most that you could tell me, since

1  you have been in the detention center, you have been

2  able to go on the computer and look things up.  Sir,

3  that's far short, far short of what's expected of an

4  individual to have an understanding of the criminal

5  process.

6          Your lawyers have gone through at least three

7  years of law school.  They have been involved in

8  different types of employment to learn the tools of the

9  trade, to learn the process of criminal prosecutions

10  and criminal defense.  And by representing yourself,

11  even on some of these motions, you're giving up all

12  that expertise and that quality of representation.  Do

13  you understand that, sir?

14          THE DEFENDANT:  I'm not refusing my defense.

15  I'm just -- I would like to have the ability to file

16  additional motions on my own, the motions that they may

17  not want to file themselves.

18          THE COURT:  Is there something specific that

19  caused you to have this idea in your mind that you want

20  to file your own motions separate and apart from your

21  lawyers?

22          THE DEFENDANT:  Yes.  I have three motions

23  that my attorneys did not want to file, even though

24  they themselves admitted that one of those motions

25  could have been filed or could not have been filed.

1          THE COURT:  So is your request for you to

2    represent yourself on certain motions limited to just

3    three motions?

4          THE DEFENDANT:  No.  There will be additional

5    motions.

6          THE COURT:  Now, you understand, sir, that if

7    you file a motion on a particular subject matter -- and

8    Mr. Calfo was trying to narrow this down too.  If you

9    file a motion on a specific subject matter, that you're

10   waiving the right to have your lawyers represent or

11   file a motion on that same topic or subject matter?  Do

12   you understand that, sir?

13         THE DEFENDANT:  Yes, I understand.

14         THE COURT:  Now, you understand that if that

15   subject matter is -- one that you've argued is

16   unsuccessful, that could affect your lawyers' ability

17   when they represent you in the actual trial.  Do you

18   understand that, sir?

19         THE DEFENDANT:  Yes.

20         THE COURT:  So I want to make sure that you

21   understand, sir, if you file a motion to exclude

22   certain types of evidence, for example, and you argue

23   that motion, and your lawyers don't have any hand in

24   drafting or arguing that motion, and if you lose that

25   argument, that evidence is admissible.  That could

1  compromise your lawyers' ability to represent you in

2  the way that they may have desired to represent you at

3  trial.  Do you understand that, sir?

4            THE DEFENDANT:  Yes, I understand.

5            THE COURT:  Now, have you discussed with your

6  lawyers the advantages and disadvantages of your hybrid

7  approach to representing yourself during the pretrial

8  motions or pretrial proceedings?

9            THE DEFENDANT:  Yes, we discussed it.

10            THE COURT:  Do you feel like you need any

11  additional time to talk to your lawyers about the

12  position you have taken at this time?

13            THE DEFENDANT:  No, we decided it all.

14            THE COURT:  Sir, do you wish to waive your

15  right to have your lawyers represent you on the motions

16  you wish to file with this Court?

17            THE DEFENDANT:  Yes.

18            THE COURT:  Do you have any reservations

19  about that decision?

20            THE DEFENDANT:  No, I don't.

21            THE COURT:  Now, sir, you heard me explain to

22  the Government, at some point in time, I'm going to

23  require you, your lawyers, and the Government to

24  identify for the Court every motion, the specifics of

25  the motions that you plan on filing that you're going

1  to represent yourself, that your lawyers are going to

2  represent you, and any motions that the Government

3  contemplates on asking.  I'm going to require that you

4  provide that to the Court, so I have a clear

5  understanding of who's going to be doing what for

6  pretrial motions.  Are you prepared to do that, sir?

7             THE DEFENDANT:  Yes, I'll try.

8             THE COURT:  Well, sir, it's got to be more

9  than try, because the Court is going to require that

10  you commit to identifying the motions that you're going

11  to file pleadings on, file with this Court, and argue

12  with this Court and separate those from the ones your

13  lawyers are going to cover, because I don't want to

14  have to revisit this topic weeks or months down the

15  road where there's some finger pointing with you

16  saying, my lawyers are going to argue that, and your

17  lawyers are saying, no, Mr. Seleznev is covering that.

18  We're going to have a clear line of distinction, if I

19  grant your motion, of what you're doing and what your

20  lawyers are going to be doing.  I'm asking, can you

21  commit to that process?

22             THE DEFENDANT:  Yes, I understand.  I am

23  ready.

24             THE COURT:  All right.  I want to ask the

25  questions of counsel.  I think you've made

1    representations to this effect, but I want to make sure

2    I'm clear in determining whether the accused has made a

3    knowing, voluntary, and intelligent waiver and is

4    competent to waive.  So my questions to you are as

5    follows:  First, have you discussed with Mr. Seleznev

6    the advantages and disadvantages of representing

7    himself on the motions he wishes to file with this

8    Court?

9            MS. OSTROVSKY:  Your Honor, I have discussed

10   with Mr. Seleznev the advantages and disadvantages of

11   his pursuing pretrial motions in general and the

12   advantages and disadvantages of the hybrid approach

13   that he's asked for.  I have not discussed with him the

14   advantages and disadvantages of the specific motions

15   that he intends to file.

16           THE COURT:  You know the motions he filed

17   with the Court, the Court struck?

18           MS. OSTROVSKY:  Yes, Your Honor.

19           THE COURT:  I don't need to go back and

20   revisit those, which include the motion to dismiss the

21   indictment, the motion to dismiss for prosecutorial

22   misconduct, and I believe there's one -- the motion to

23   dismiss Counts 21, 29, and 30 through 38.  You're aware

24   of those motions, correct, counsel?

25           MS. OSTROVSKY:  I am, Your Honor, and I have

1    discussed those motions with my client.

2            THE COURT:  All right.  Do you have any doubt

3    that your client is making a knowing, intelligent, and

4    voluntary waiver of his right to have counsel represent

5    him on the motions that he wishes to file with this

6    Court?

7            MS. OSTROVSKY:  I don't have a doubt that

8    he's making a knowing and voluntary and unequivocal

9    right of his right to counsel on those specific motions

10   only.

11           THE COURT:  When you say those specific

12   motions, we're talking about the ones I just

13   identified?

14           MS. OSTROVSKY:  Those three and additional

15   motions that he wishes to file.

16           THE COURT:  And you have had conversations

17   with your client about those?

18           MS. OSTROVSKY:  Only generally, Your Honor,

19   not about them in any sort of specificity.

20           THE COURT:  And, again, you have no

21   reservation that that's a knowing, intelligent,

22   unequivocal, and voluntary waiver, correct.

23           MS. OSTROVSKY:  I believe that Mr. Seleznev

24   understands what he's asking for, and I believe his

25   request is knowing and voluntary.

1          THE COURT:  Has anything come to your

2    attention suggesting that Mr. Seleznev may not be

3    competent to waive his right to counsel for those

4    specific motions or any other motions that he plans on

5    filing?

6          MS. OSTROVSKY:  No.

7          THE COURT:  You understand that if your

8    client represents himself, the Court will not allow him

9    to file a motion and pleading and then allow counsel to

10   double down and file separate pleadings, thereby

11   duplicating arguments and wasting court resources.

12         MS. OSTROVSKY:  I understand.

13         THE COURT:  Can you explain exactly how you

14   envision your understanding of what the defendant is

15   seeking or has in mind by way of hybrid representation

16   on pro se motions?  In other words, what will you be

17   doing, and what will he be doing?  I'm not talking

18   about the specific motions, because he may not have

19   identified the specifics, but I wanted to make sure

20   that you can share with the Court what you believe he

21   is communicating and your understanding of how that

22   process would work.

23         MS. OSTROVSKY:  I'm not sure I understand

24   your question, Your Honor.

25         THE COURT:  In other words, I'm trying to get

1    to the essence of what it is that this side of the

2    bench is going to be doing with this hybrid approach.

3    In other words, what are the clear lines of authority

4    and distinction between what you will be doing, what

5    you will be covering, and what Mr. Seleznev will be

6    covering and how he will be representing himself?

7    Again, I'm not trying to invade your communications,

8    but I want to have a clear understanding from the mouth

9    of his lawyer as to what you're going to be doing, what

10   he's doing to be doing, and how you're going to

11   approach it.

12          MS. OSTROVSKY:  My understanding, Your Honor,

13   after today, we will need to consult with our client

14   and identify the motions that we intend to bring, and

15   he will identify the motions that he intends to bring.

16   And we will make sure that there is no duplication in

17   our efforts.  And then I will negotiate with the

18   Government for a schedule for each of those specific

19   motions.

20          THE COURT:  And you understand, based upon

21   communications we have had already, that the case

22   scheduling order is going to be modified.  Do you

23   understand that?

24          MS. OSTROVSKY:  I understand that.

25          THE COURT:  All right.  And the Court's going

1   to review and require the parties to identify all the

2   motions that you're going to file.  And unless there's

3   something significantly different that changes in terms

4   as we're going forward, that's going to be the

5   guidepost that we're going to use for the balance of

6   trial preparation.  Is that your understanding?

7              MS. OSTROVSKY:  It is.

8              THE COURT:  I want to make sure you

9   understand, if your client files a motion, that he

10  argues that motion; that if there's a witness required

11  for that motion, he's going to examine those witnesses.

12  You will not be conducting the examination, and you

13  will not be arguing on behalf of your client.  Is that

14  your understanding as well?

15             MS. OSTROVSKY:  It is.

16             THE COURT:  Any further representation?  Just

17  one second.

18             INTERPRETER:  Your Honor, may I request a

19  change of interpreters?

20             THE COURT:  Certainly.  Thank you.

21             I want the interpreters to know you're doing

22  a good job of getting the Court's attention.

23             All right.  Counsel for the defense, do you

24  believe there's any additional questions or areas of

25  examination that the Court has not conducted that would

1    be necessary for the Court to accomplish the objectives

2    of what's expected for a Faretta-type hearing?

3             MS. OSTROVSKY:  I don't believe so, Your

4    Honor.

5             THE COURT:  Counsel for the Government, same

6    question to you.

7             MR. BARBOSA:  I don't have any further

8    questions.

9             THE COURT:  All right then.  Based upon the

10   totality of what's been provided to this Court, the

11   Court had tried to explain numerous ways for the

12   defendant what the expectations would be, his

13   responsibilities, and the risk that he takes by filing

14   motions that he believes should be filed with this

15   Court.  Based upon the answers he's provided, based

16   upon the representations of counsel, the Court is

17   satisfied that his waiver is knowing and intelligently

18   and voluntarily made.  There's been no provocation from

19   the defendant.  The Court has not been presented with

20   anything that would suggest to the Court that the

21   defendant is not competent.  The Court is satisfied

22   that if he wishes to file separate motions from those

23   filed by his lawyers, that he will be permitted to do

24   so.  I believe the Court has satisfied all the

25   requirements and expectations of the Faretta hearing,

1   and the defendant will be permitted to file these

2   motions with the understandings that have been provided

3   and communicated specifically to the defendant.

4           Now, what I'm going to require is that two

5   things need to take place.  One is the case schedule we

6   currently have needs to be modified.  We're not going

7   to modify it right now.  What we will do, I'm going to

8   set a date certain.  I will expect counsel for the

9   Government and counsel for the defendant to get

10  together and identify the motions that will be filed

11  between today's date and whatever date that we schedule

12  or suggest to this Court for motions to be heard,

13  deadlines for motions, and argument to take place, and

14  if any witnesses have to appear to testify.  I want to

15  make sure that if we need to have witnesses come that

16  are from outside this jurisdiction, that we have more

17  than ample time for those witnesses to appear and for

18  them to make travel arrangements.

19          Again, I'm not going to put my hand in at

20  this time in crafting what that's going to look like,

21  but it will be the Court's expectation that the parties

22  meet and confer and come back with that recommendation.

23          I want to make sure that Mr. Seleznev

24  understands that the motions that he identifies in that

25  order must be clear and specific that it's the

1   defendant himself who will be filing, meeting

2   deadlines, and preparing whatever's necessary for that

3   motion to be advanced for the Court's consideration.

4   The Court will not give advice to the defendant during

5   the course of that process.  That's improper.  The

6   defendant does have lawyers to assist him throughout

7   the balance of these proceedings, but the Court does

8   have an expectation in that regard.

9            Also if the Court needs to modify the

10  protective order -- because at this point in time,

11  again, I don't know that that issue needs to be

12  revisited.  There's very specific and precise language

13  in terms of whether disclosures are permitted in that

14  protective order.  I don't see any reason to vary or

15  veer from the specifics of that order restricting

16  access to discovery to the defendant or his lawyers.

17  But I want to emphasize for the defendant while he's in

18  court that the defendant is not permitted to disclose,

19  share, or provide any information about what's

20  contained in that discovery to individuals that would

21  be in breach of that protective order, because if the

22  defendant does, there are consequences that can be

23  imposed by this Court.  I want to make sure that the

24  defendant clearly understands that.  I'm not suggesting

25  that you have to change the protective order.  If that

1    topic needs to be revisited, we're going to set the

2    same deadline for that modification as we would for the

3    case scheduling order.

4           Let me hear from the parties in terms of how

5    much time you're going need to address the question of

6    getting back to this Court a reasonable case schedule

7    with deadlines.  We'll set a formal hearing for you to

8    come to court if there's any issue of dispute with

9    regard to what needs to be set or scheduled, but I want

10   you to be able to provide something to this Court.  If

11   I don't have any questions about that, you don't need

12   to have the hearing.  If I do have questions, you will

13   be expected to be here.

14          Counsel, if you want to get together, we can

15   take a short recess now and give the Court a heads up

16   in 15 minutes what you believe will be reasonable and

17   necessary.  So we'll take an early recess, give you 15

18   minutes or so, and I'll come back into court, and we'll

19   resolve our differences at that point.

20          We'll be in recess.

21          (Recess taken.)

22          THE COURT:  Good morning again.  Please be

23   seated.

24          Counsel, the ball is in your court.

25          MR. CALFO:  Okay.  Your Honor, I think what

1   we -- this is a complicated situation, as you might

2   imagine.  It's not the usual thing.  We don't have a

3   lot of experience doing this.  In fact, this is the

4   first time this precise situation has come up in my

5   time as a defense lawyer.  But I think what we can do

6   to push the ball forward for the Court, what we were

7   thinking, by November 9th, which is two weeks from now,

8   that Mr. Seleznev could identify the motions that he is

9   going to take responsibility for as to the pretrial

10  motions 1 deadline.

11          And I think that accomplishes what the Court

12  wants, because our representation is going to be that

13  we represent the defendant on everything except the

14  things he's going to file motions on.  So, I mean, that

15  makes it really clear for everybody.  We know what

16  we're going to do.  He knows what his responsibility

17  is.  And I think it's best -- and that's not only good

18  for the defense, but I think it's good for the Court's

19  interest and the prosecutor's interest, because it's

20  clear, because -- so if he could do that by

21  November 9th.

22          I don't think it's probably practical for us

23  to have Mr. Seleznev identify every motion he's going

24  to bring in the case in two weeks, because there are

25  two separate motions deadlines set.  The first one is

1    for objections to the indictment and the like, and then

2    there's the motions deadline that's going to be after

3    consideration of discovery and the like.  That motions

4    deadline, I believe, is in next January.

5           So what we're thinking, perhaps by the time

6    we submit a new proposed case schedule for the Court

7    with respect to these new motions and any other thing

8    we believe needs to be moved, we can come up with a

9    second date on which Mr. Seleznev will identify that

10   second round of motions that he will bring.  And we

11   will take care of everything else as his defense

12   lawyers.  So that's the sort of structure we were

13   thinking.

14          One thing I wanted the Court to know is that

15   Mr. Seleznev is -- we are taking responsibility for the

16   hearing on December 10th and 11th.  And when I say me,

17   I mean Ms. Ostrovsky and I.  That's not in

18   Mr. Seleznev's motion.  We're handling that motion.

19   We're handing the hearing.  We will take responsibility

20   for the witnesses and so forth.

21          THE COURT:  Just be clear, your client's not

22   filing any motion that's collateral or connected to the

23   motions that we're going to hear on December 10 and 11,

24   is that correct?

25          MR. CALFO:  That's my understanding, Your

1    Honor, yes.

2            THE COURT:  That's going to be the Court's

3    expectation.

4            MR. CALFO:  And, well, we're doing two

5    things.  He has until November 9th to decide, but my

6    understanding talking to him and understanding the lay

7    of the land is that he does not want anybody other than

8    us to handle the hearing on the 10th and the 11th and

9    the issues surrounding his kidnapping, or the

10   Government likes to call it a rendition.  Those issues

11   are going to be handled by Ms. Ostrovsky and I.

12           THE COURT:  Okay.  All right.  Sorry,

13   counsel.  Please continue.

14           MR. CALFO:  The only other thing I would say,

15   Your Honor, practically speaking, just some

16   considerations, Your Honor, I do think we need to go

17   back and look at the protective order and make sure --

18   there are proposals that we would recommend to

19   Mr. Seleznev to ask the Court to consider.  He is in

20   the SHU and has been for a long time and is going to be

21   for the foreseeable future.  To the extent this is

22   premised on his ability to talk to Mr. Green or anybody

23   else, that isn't happening right now, and it won't be

24   for the foreseeable future.

25           The only thing other thing I'll mention, Your

1   Honor -- I'm not going to reargue the motion.  It's

2   just a practical problem that I think we all need to

3   understand.  And that is, because all of these

4   conversations that Mr. Seleznev is having with his

5   father and others, you know, they're being recorded.

6   We know that in the past, Mr. Seleznev has talked about

7   strategy that we have spoken to him about.  And

8   there's -- we have a concern about how this is going to

9   play out over time.  If we're talking to Mr. Seleznev,

10  and then he is going to others and explaining what

11  we're telling him, that ends up in the prosecutor's

12  office.  And, I mean, to me, it just is an unfair

13  situation that is the result of the fact this fellow is

14  unfamiliar with our system.  He's a Russian national.

15  He has nobody here that he trusts.  This whole

16  proceeding arises out of a lack of trust and a lack of

17  familiarity with our system.  And his discussions with

18  his father arise out of the same thing.

19          He doesn't understand how prejudicial it will

20  be for those conversations to continue to happen with

21  his father and end up in the hands of the prosecutors.

22  They have already been prejudicial, because I think

23  some of the things that have been presented to Your

24  Honor probably have affected the Court's outlook in

25  some fashion, or at least are put in the mix.

1        So I'm not going to re-ask for it now, Your

2   Honor, but I can see a situation down the road where we

3   have to come to the Court and say, this is simply

4   untenable.  We can't talk to Mr. Seleznev privately,

5   because he's got this hybrid representation situation.

6   He's going to talk to his father, Mr. Green, to others,

7   and everything we say ends up in the prosecutor's

8   earshot.  And so, you know, our representation can't be

9   effective.  And that's an issue I'm concerned about

10  that is, I think, heightened by the fact we're going

11  down the road of hybrid representation where he's going

12  to be looking to those folks for assistance.

13       I know, Your Honor, I'm not asking you for

14  anything specific other than what you have already

15  denied.  So we have got the protective order issue.  We

16  have got the tapes going to the prosecutor issue that I

17  see as problematic.  We have got him in the SHU where

18  he can't talk to the people that this whole thing is

19  premised on.  And then you have got us sort of in a

20  situation where we could -- might as well call

21  Mr. Wilkinson and tell him what we're telling

22  Mr. Seleznev as to some things, because they're ending

23  up in that situation anyway.

24       Your Honor, the only thing I would ask

25  practically on that latter point, if the prosecutors

1   are getting transcripts of those conversations, that

2   there be no delay between the time they get them and

3   the time they send them to me.  I'm not suggesting

4   there has been, but to me, I mean, it's got to be done

5   within 24 hours.  We need to know what they're learning

6   about our defense strategy immediately so that we can

7   act accordingly.  That's the one thing I would ask the

8   Court to consider.

9             THE COURT:  Counsel, just the Court's

10  response to a couple of things.  I tried to advise your

11  client of the risks of talking about his case on those

12  telephones.  I understand that there's a language

13  barrier that your client has.  But at the same time, he

14  is proceeding at his own risk and his own peril if he

15  wishes to discuss his case and the strategy with the

16  people that are not his lawyers.  I tried my best to

17  make sure that he understood that he loses that

18  umbrella of protection when he chooses not to have

19  counsel be the source of his communications for legal

20  advice.  I believe that you've probably and hopefully,

21  and I trust that you have explained the risks that he

22  poses and runs by sharing that type of information.

23  And he puts himself at the same peril as if a United

24  States citizen were to take the information his lawyer

25  shared with him and shared it with his family in an

1   open communication, and that family member came back

2   and told the Government what was discussed.  That's a

3   risk that's taken when you divulge the communications

4   that are protected by the attorney-client privilege.

5   And that's exactly the predicament that your client

6   puts himself in by wanting to discuss strategy.  Is he

7   in a difficult situation?  Absolutely, yes.  I don't

8   disagree with you, counsel.  But at the same time, if

9   he chooses to have other people other than his lawyers

10  providing him legal advice, that's a risk and peril

11  that he runs.

12          Now, let's talk about the question counsel

13  asked the Court regarding the absence of any delay in

14  providing copies.  And, again, I don't see Mr. Calfo

15  casting any negative aspersions or allegations against

16  the government by not having done that already, but I

17  just want to have affirmation from the Government in

18  terms of what your compliance with that request would

19  be in the future or your opposition to the request.

20          MR. BARBOSA:  I definitely would oppose a

21  24-hour turn around.  We need some processing time to

22  put them in the database and send them out.  Typically

23  it takes us anywhere from five to six days to get it

24  into our discovery database.  We receive them via

25  email, sometimes via email, sometimes via disk from the

1    BOP.

2              THE COURT:  The directive from the Court will

3    be that you exercise all due speed to get the

4    information to the defense.  I don't want any

5    unnecessary delays.  As soon as the Government has it

6    in a packageable form, it can be communicated to

7    defense and provided.  Again, there's been no

8    allegation that you haven't been doing that, but I

9    think it's one of precaution counsel is asking the

10   Court to do.  And I think it's also to protect his

11   client, make sure his client understands that that

12   information will be shared with his lawyers as soon as

13   possible.

14             With that understanding, I don't think I need

15   to take any further action.  Would you agree,

16   Mr. Calfo?

17             MR. CALFO:  Yes, Your Honor.  I appreciate

18   that.  Thank you.

19             THE COURT:  Is there anything further that we

20   need to address at this time?

21             MR. CALFO:  No, Your Honor.

22             THE COURT:  Counsel for the Government?

23             MR. BARBOSA:  Just in terms of the schedules.

24   November 9th, for coming back to the Court, I assume

25   you had indicated that we would have a hearing on that

1   date.  We'll come back to court with a proposal on the

2   motions that Mr. Seleznev will be handling, and we will

3   try to work out schedules at least of pretrial motions

4   1.  Is that correct?

5           THE COURT:  That's my understanding, counsel.

6           MR. BARBOSA:  In terms of all other

7   non-motion deadlines, those are still in place, and the

8   trial date is still firm.  Is that correct?

9           THE COURT:  The trial date is definitely

10  still firm.  I don't see any reason to modify any of

11  the other deadlines.  Do you, Mr. Calfo?

12          MR. CALFO:  Your Honor, I don't want to move

13  the trial date, but things are getting pushed back.  As

14  you know, we're in a private practice where there are a

15  lot of other deadlines that we're trying to meet, and

16  we make those deadlines around the ones that were set

17  forth in the case scheduling order.  If I have to ask

18  for more time on something, I wanted to reserve the

19  ability to do that.  But it's not my intention to delay

20  for any other reason than to make sure I can represent

21  Mr. Seleznev appropriately.

22          THE COURT:  Counsel, I can't tell you that

23  you can't file a motion if you believe there's a valid,

24  legitimate basis to request a continuance.  I will give

25  you a heads up that the likelihood that a postponement

1    or a delay of this case is going to be granted from

2    this Court -- unless there's something significantly

3    different from where we are right now, that's the date

4    you should expect to go to trial.

5              MR. CALFO:  That's understood, Your Honor.

6              THE COURT:  Anything further from the

7    parties?

8              MR. BARBOSA:  No, Your Honor.

9              THE COURT:  What date do we have the parties

10   back in the Court?  The reason I'm going to have you

11   come back into the court is I don't want to have any

12   reason for there to be any confusion or

13   misunderstanding about what's been proposed to this

14   Court.  That may be a five-minute hearing, but I want

15   to make sure that Mr. Seleznev is committed and

16   understands the specifics of what's being communicated

17   to the Court and what schedule the Court's operating

18   under.  So it may require you to come back to this

19   Court more than you normally would, but I want to make

20   sure there's no question about what's expected,

21   particularly since there's hybrid representation on

22   those motions.  This isn't counsel advancing the

23   motion.  This is the defendant advancing what he

24   believes are the motions he wants to bring to the

25   Court's attention.  And I also want to ensure these are

1   the defendant's specific areas of responsibility, as

2   compared to those of counsels' responsibility.  So

3   that's a conversation we're going to have on the 9th.

4           MR. BARBOSA:  One other matter I forgot to

5   address in terms of if we're not laying out what

6   motions Mr. Seleznev will address for pretrial motions

7   2 at this point, I assume that deadline will remain the

8   same.  The Court is expecting us to work that out well

9   in advance of the next pretrial --

10          THE COURT:  All the other deadlines will

11  remain the same.

12          MR. CALFO:  Which deadline was being raised?

13          THE COURT:  The second.  The second round.

14          MR. CALFO:  Yes, Your Honor.  Same response.

15          THE COURT:  Yes.  All right.  Anything

16  further from the Government?

17          MR. BARBOSA:  No, thank you, Your Honor.

18          THE COURT:  Anything further from the

19  defense?

20          MR. CALFO:  No, Your Honor.

21          THE COURT:  We'll be in recess.

22          MR. BARBOSA:  The one thing we have still

23  left unaddressed is counsel's pretrial motions deadline

24  1.  We did file a motion to reset that.  It was

25  stricken in light of this hearing.  Counsel is clearly

1   intending to file a set of pretrial motions.  So we

2   will need to schedule the deadline to file their

3   motions that are independent of what Mr. Seleznev is

4   addressing.  Is that something that the Court intended

5   to handle at the November 9th hearing?

6             THE COURT:  Is that something the parties can

7   meet and confer about?

8             MR. CALFO:  Yes, Your Honor.

9             THE COURT:  Any reason you can't do that?

10            MR. BARBOSA:  No, Your Honor.

11            THE COURT:  I want to give you a chance to

12  propose what you think are reasonable dates so we don't

13  have any conflict.  I can set dates right now, but

14  don't think you want to go with the dates I'm going to

15  give you right now.  So I'm going to give you a chance

16  to have your own hand crafting the resolution to the

17  deadlines proposed to the Court and build in enough

18  time for the Court to address the motions as well.

19            Is there anything further?  All right.  We'll

20  be in recess.  Thank you.

21            (Proceedings adjourned.)

22

23

24

25

```
 1                     C E R T I F I C A T E

 2     State of Washington    )

 3                            )  Ss.

 4     County of King         )

 5

 6           I, the undersigned Certified Court Reporter and

 7     an Officer of the Court for the State of Washington hereby

 8     certify that the foregoing Proceedings before the Honorable

 9     Richard A. Jones was transcribed under my direction;

10           That the transcript of the Proceedings is a full,

11     true, and correct transcript to the best of my ability; that

12     I am neither attorney for, nor a relative or employee of,

13     any of the parties to the action or any attorney or counsel

14     employed by the parties hereto, nor financially interested

15     in its outcome.

16           IN WITNESS WHEREOF, I have hereunto set my hand

17     this date, November 2, 2015:

18

19

20                              /S/Yvonne A. Southworth

21                              _____

22                              Yvonne A. Southworth

23

24

25
```