HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

               Plaintiff,

    v.

ROMAN V. SELEZNEV,

               Defendant.

CASE NO. CR 11-70 RAJ

ORDER

This matter comes before the court on defendant's motion to dismiss counts 31-37 of the Second Superseding Indictment.  Dkt. # 243.  As set forth in the chart below, the government charged defendant with nine counts of violating 18 U.S.C. § 1029(a)(3):

| Count | Begin Date | End Date | Victim |
|-------|------------|----------|--------|
| 30 | 8/6/10 | 2/15/11 | Mad Pizza Madison Park (Seattle) |
| 31 | 8/7/10 | 2/15/11 | Mad Pizza First Hill (Seattle) |
| 32 | 8/9/10 | 2/23/11 | Casa Mia Italian Pizzeria restaurant (Yelm) |
| 33 | 8/28/10 | 2/1/11 | Mad Pizza South Lake Union (Seattle) |
| 34 | 9/13/10 | 3/26/11 | Village Pizza (Anacortes) |
| 35 | 10/4/10 | 12/1/10 | Grand Central Baking Company (Seattle) |
| 36 | 10/22/10 | 10/27/10 | Broadway Grill (Seattle) |
| 37 | 11/2/10 | 2/1/11 | Mad Pizza Starfire (Tukwila) |
| 38 | 10/26/13 | 5/1/14 | Red Pepper Pizzeria (Duvall) |

*See* (Indictment) Dkt. # 90, p. 14.

Subsection (a)(3) of 18 U.S.C. § 1029 criminalizes the possession of "*fifteen or more* devices which are counterfeit or unauthorized access devices."  18 U.S.C. § 1029(a)(3) (emphasis added).  According to defendant, possession is a "course of conduct" that cannot be punished as separate individual acts under the statute.  Thus, defendant argues, that even if he possessed "fifteen, fifty, or five million credit cards," he can only be charged with one count of possession during a single time period.  *See* (Mot.) Dkt. # 243, pp. 2-4 (arguing that the time periods set forth in counts 31, 33, and 35-37 are entirely subsumed within the time period alleged in count 30 and the time periods alleged in counts 32 and 34 differ from count 30 only slightly).

Where, as here, a defendant's conduct is alleged to have resulted in multiple violations of the same statutory provision, the Supreme Court has stated that the proper

inquiry involves the determination of "[w]hat Congress has made the allowable unit of prosecution." (*United States v. Keen*, 104 F.3d 1111, 1118 (9th Cir. 1996) (quoting *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221 (1952)). To determine the "allowable unit of prosecution," the court looks to Congressional intent, including any "guiding light afforded by the statute in its entirety or by any controlling gloss." *Bell v. U.S.*, 349 U.S. 81, 83 (1955). If, however, Congress fails to make its will known, then "the ambiguity should be resolved in favor of lenity." *Id.*

In the instant case, Congress has made clear that its purpose in enacting 18 U.S.C. § 1029 was to plug loopholes in federal criminal law in the area of debit and credit cards and to curb the rapid increase in counterfeiting and related fraud with regard to those devices. *See* S.Rep. No. 98-368, 98th Cong., 2d Sess., *reprinted in 1984 U.S. Code Cong. & Admin. News* 3182, 3647-58. Prior to its enactment, the government prosecuted these crimes under the Truth in Lending Act ("TILA"); Congress enacted 18 U.S.C. § 1029 to supplement TILA and to broaden the scope of the federal prohibition on credit card fraud. H. Rep. No. 98-894, 98th Cong., 2d Sess. 5, *reprinted in 1984 U.S. Code Cong., & Admin. News* 3691.

Although the Ninth Circuit has not previously interpreted the "unit of prosecution" for 18 U.S.C. § 1029, subsection (a)(3), other courts have relied on the legislative history of the statute to interpret the "unit of prosecution" with respect to subsection (a)(2). A defendant is guilty of violating subsection (a)(2) if he or she:

> "knowingly and with intent to defraud traffics in or uses *one or more* unauthorized access devices during any one-year period, and by such conduct obtains anything of value aggregating $1,000 or more during that period."

18 U.S.C. § 1029(a)(2) (emphasis added).

In *U.S. v. Iredia*, 866 F.2d 114 (5th Cir. 1989), the defendant was convicted of violating 13 counts of this subsection. On appeal, he argued that the "one or more"

1 language in the statute meant that his unauthorized use of 13 credit cards during a one

2 year period should have been charged as a single offense. *Id.* at 120. The Fifth Circuit

3 disagreed and found that he was properly charged with *each* unauthorized use because

4 the "primary focus" of § 1029 was to "fill the cracks in the criminal law targeted at credit

5 card abuse." *Id.* (quoting *United States v. Brewer*, 835 F.2d 550, 553 (5th Cir. 1987)).

6  Similarly in *United States v. Newman*, the defendant was charged with two counts

7 of violating subsection (a)(2) for her unauthorized use of two credit cards. 701 F. Supp.

8 184, 185 (D. Nev. 1988). Not surprisingly, the defendant argued that the statute

9 prohibited the use of "*one or more* unauthorized access devices…during any one-year

10 period" and, therefore, her use of two credit cards during a one-year period could only be

11 charged as a single count. *Id.* at 186. The court disagreed and found that the defendant

12 was properly charged with two separate counts. Just as the Fifth Circuit did in *Iredia*, the

13 court looked to the congressional intent underlying 18 U.S.C. § 1029 and noted that,

14
15   Congress enacted the unauthorized access device statute to
  help combat our society's dramatic increase in credit card
16   fraud. This statute was intended to *broaden* federal
  jurisdiction by filling some of the gaps in already existing
17   laws such as the Truth in Lending Act.

18 H. Rep. No. 98-894, 98th Cong., 2d Sess. 5, *reprinted in 1984 U.S. Code Cong., &*

19 *Admin. News* 3691 (emphasis added).

20  Here, defendant makes arguments that are similar to those made in *Iredia* and

21 *Newman*, *i.e.*, that subsection (a)(3)'s language regarding the possession of "fifteen or

22 more" unauthorized access devices means that he can only be charged with one count,

23 even if he possessed fifty or five million credit cards. The court disagrees and finds

24 defendant's interpretation to be contrary to common sense and contrary to the stated

25 Congressional purpose underlying 18 U.S.C. § 1029. *See U.S. v. Sheker*, 618 F.2d 607,

26 609 (9th Cir. 1980) (finding that statute at issue was not sufficiently ambiguous to call

27

1  into play the rule of lenity and acknowledging that criminal statutes should be read with

2  the "saving grace of common sense").

3       Defendant encourages the court to read the statute in a manner that supports a

4  "loophole" or "crack" in the criminal law targeting credit card abuse.  The court declines

5  to do so and notes that Congress included numerical thresholds in 18 U.S.C. § 1029 to

6  focus federal efforts on major traffickers, not to provide defendants with a shield against

7  prosecution.  *See U.S. v. Rushdan*, 870 F.2d 1509, 1513 (9th Cir. 1989) (quoting House

8  Report stating that the "purpose of the numerical limitation is to concentrate Federal

9  Government involvement on major traffickers.").  Defendant's interpretation would, in

10  essence, reward traffickers who possessed "five million" unauthorized credit cards by

11  subjecting them to only a single charge under subsection (a)(3).  The court finds this

12  interpretation to be simply contrary to logic.  *Cf. United States v. Olmeda*, 461 F.3d 271,

13  280 (2d Cir. 2006) (finding with respect to 18 U.S.C. § 922(g) that a defendant can be

14  liable for possessing two distinct caches of ammunition and observing that "any other

15  determination would allow convicted felons and terrorists to establish armories where all

16  of their weapons would be kept…[and]  [t]he person in custody of the armory would then

17  be subject to only a single charge of possession, although thousands of illegal and

18  dangerous weapons were received and stockpiled at different times") (collecting cases);

19  *United States v. Wiga*, 662 F.2d 1325, 1337 (9th Cir. 1981) (same).

20       The language of Ninth Circuit Pattern Instruction 8.86 does not change the court's

21  conclusion.  The model instruction requires the government to show that "defendant

22  knowingly possessed at least fifteen [counterfeit][unauthorized] access devices *at the*

23  *same time*") (emphasis added).  *See* Ninth Cir. Model Crim. Jury Instruction 8.86.  This

24  language is in accord with Congress' stated purpose to focus on major traffickers and

25  restricts this court's jurisdiction to individuals who possessed at least fifteen unauthorized

26  credit cards at any one time.  It does not, however, restrict the Government from charging

27  multiple counts based upon conduct that, individually, meets this jurisdictional hook.

1    Indeed, the Ninth Circuit has previously upheld a multiple count indictment that

2    defined separate crimes based upon federal jurisdictional requirements.  In *United States*

3    *v. Carter*, 804 F.2d 508 (9th Cir. 1986), the defendants had been convicted of five counts

4    of knowingly transporting stolen goods valued at more than $5,000.  These convictions

5    arose from 124 separate shipments of stolen record albums that the defendants sent from

6    Seattle–Tacoma to Chicago and Boston.  The defendants argued that they engaged in a

7    single course of conduct, and therefore, could be convicted on only one substantive count

8    of illegal transportation.  The Ninth Circuit reasoned, however, that each of the 124

9    shipments constituted a separate chargeable offense but for the jurisdictional amount.

10   The court ruled, therefore, that once the jurisdictional amount was satisfied by

11   aggregating several shipments, the government had alleged a valid count.  *Id.* at 510-11.

12   The court observed:

13           The indictment did not divide a single transportation into
14           multiple offenses, but rather treated each series of
             transportations occurring within a specified time period as a
15           separate offense.  Since appellants concede the logic of
             charging the transportations to different cities as different
16           offenses, and since *Bell* allows subdivision of an overall
17           scheme into its constituent parts, we have no difficulty
             endorsing the subdivision of the overall scheme in this case
18           on a chronological basis.

19   *Id.* at 511.

20           Here, the Government has similarly divided defendant's overall scheme into its

21   constituent parts.  Each count is based upon his alleged possession of fifteen or more

22   credit card account numbers obtained from nine different businesses.  Dkt. # 90, p. 14.

23   Each of these counts separately satisfies the jurisdictional minimum stated in 18 U.S.C.

24   1029(a)(3) and, therefore, can be separately charged.

25   ///

26   ///

27

Accordingly, the court DENIES defendant's motion to dismiss.

DATED this 7th day of April, 2016.

The Honorable Richard A. Jones
United States District Judge

ORDER - 7