HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROMAN V. SELEZNEV,<br><br>Defendant. | CASE NO. CR 11-70 RAJ<br><br>ORDER |

### I.  INTRODUCTION

This matter comes before the court on defendant's motion to limit the prosecution's use of his ▇▇▇ statement at trial. Dkt. # 250. For the reasons stated below, the motion IS GRANTED IN PART.

### II.  BACKGROUND

In December of 2014, defendant agreed to meet with and be interviewed by federal law enforcement agents in an effort to negotiate a pretrial resolution of this case.

ORDER- 1

Prior to that meeting, defendant signed a ▇▇ agreement that provided, in relevant part:

> **5. Impeachment**: If your client should testify materially contrary to the substance of the ▇▇, or otherwise present in a legal proceeding either directly or through counsel, a position materially inconsistent with the ▇▇, the ▇▇ may be used against your client as impeachment or rebuttal evidence, or as the basis for a prosecution for perjury or false statements. Nothing in this letter is intended to preclude your client from challenging the sufficiency of the United States' evidence; calling into question the credibility of the United States' witnesses; questioning United states witnesses about their knowledge and qualifications' challenging inconsistencies in the United States' evidence; or challenging the United States' witnesses about their motives for testifying against your client.
>
> **6. Derivative Use**: The United States may make derivative use of, and may pursue investigative leads suggested by, any statements or information provided by your client's ▇▇. This provision is necessary to eliminate the necessity of a *Kastigar* hearing in which the United States would have to prove that the evidence it seeks to introduce at trial or in a related legal proceeding is derived from a "legitimate source wholly independent" of statements or information from the ▇▇.

The ▇▇ agreement also included the following declaration.

> I have read the above ▇▇ agreement carefully and reviewed every part of it with my attorney. I understand and voluntarily agree to the ▇▇ agreement.

(Agreement) Dkt. # 270-1, p. 2-3.

After signing the agreement, the defendant then proceeded to provide the government with information regarding his own involvement in the crimes charged in the Second Superseding Indictment. Defendant refused, however, to provide any

1  information regarding the involvement of any other individuals. As a result, the
2  negotiations fell apart and the parties failed to reach a plea agreement.
3        Defendant now contends that he did not fully understand the ▓▓▓▓ agreement
4  because the agreement was drafted in English and his attorneys failed to adequately
5  explain it to him. Although Defendant has some proficiency in English, it is not his
6  native language. His native language is Russian and throughout these proceedings he has
7  relied on the assistance of certified Russian translators.
8        On March 29, 2016, the attorneys who represented defendant during the ▓▓▓▓
9  session testified before this court at an evidentiary hearing. Ms. Anna Goykhman, an
10 attorney and Russian speaker who immigrated to the United States at age 11, testified that
11 she translated the ▓▓▓▓ agreement for the defendant paragraph-by-paragraph and
12 responded to his questions. Tr. at 88:11-25; 90:13-15. Ms. Goykhman conceded,
13 however, that she is not a certified translator and that she has limited Russian language
14 abilities. Tr. at 103: 6-16. Mr. Steven Fogg, an experienced criminal defense attorney,
15 also explained the agreement to the defendant, but required Ms. Goykhman's assistance
16 in doing so because he does not "speak any Russian whatsoever." Tr. at 120:1-18;
17 126:16-19.
18       The defendant also testified at this hearing and confirmed that Ms. Goykhman
19 went over the ▓▓▓▓ agreement with him paragraph-by-paragraph. Tr. at 62:22-63:4.
20 Defendant further stated that he "even asked her questions." *Id.*; *see also* Tr. at 74:10-
21 75:1.
22       There is some dispute, however, as to whether the defendant actually received a
23 certified translation of the ▓▓▓▓ agreement prior to signing it. Defendant insists that he
24 did not receive the translated version; Ms. Goykhman stated that "from her visual
25 memory, she thought [she] remembered him looking at the document" but cannot
26 remember how it was given to him; and Mr. Fogg testified that he is certain the defendant
27 had a copy of the translation. *Compare* Tr. at 75:8-18 *with* 109:3-12 and 130:4-5.

ORDER- 3

1    Additionally, there is some dispute regarding the legal advice given to the
2 defendant with respect to paragraphs five and six quoted above.  With respect to
3 paragraph six, the defendant claims that his attorneys advised him that the government
4 could pursue investigative leads derived from his statements, but that any such derivative
5 evidence could only be used against others and not against him.  Tr. at 92:21-93:4.
6 However, both Ms. Goykhman and Mr. Fogg testified to the contrary.  Tr. at 93:5-14;
7 129:10-15.
8    With respect to paragraph five, the defendant testified that he understood that his
9 statements would limit *his* ability to testify, but that he was unaware that his
10 statements would limit his *attorneys* in any way.  Tr. at 63:10-19.  Ms. Goykhman later
11 confirmed that she failed to advise the defendant regarding these limitations.  *See* Tr. at
12 99:23-100:1 ("Q.  Did you tell him that his attorneys would no longer be able to infer
13 information that contradicted his statements in the meeting? A. I did not.").  Indeed, Ms.
14 Goykhman stated that she, herself, did not fully understand paragraph five and, therefore,
15 had "certainly" failed to adequately explain it to the defendant.  Tr. at 102:2-12.  Mr.
16 Fogg also testified that he failed to specifically explain these limitations.  Tr. at 128:2-4;
17 133:14-24; 134:19-24.
18    Finally, Mr. Fogg testified that he advised the defendant that after he signed the
19 agreement, he would not be able to "do a straight up innocence defense."  Tr. at
20 132:16-18.  Later, however, Mr. Fogg drew a distinction between an "innocence" defense
21 and a "not guilty" defense, not knowing that no such distinction existed in the Russian
22 language.  Tr. at 133:10-13.
23  **III.   ANALYSIS**
24    Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(f)
25 exclude from admission into evidence statements made by a criminal defendant during
26 plea negotiations.  Although a defendant can waive the right to preclude the use of these
27 statements, that waiver must be knowing and voluntary.  *See U.S. v. Mezzanatto*, 513

ORDER- 4

U.S. 196, 210 (1995). A waiver is made knowingly only if the defendant has a "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

In applying the "knowing and voluntary" standard to determine whether a defendant has waived his rights under exclusionary rules for plea agreements, the Supreme Court adopted the heightened standard reserved for waiver of rights essential to a fair trial and the reliability of the adjudicative process. *See Brady v. United States*, 397 U.S. 742, 748 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."). The Second Circuit has held that a waiver of such essential rights should be enforced only "if the record clearly demonstrates that the waiver was both knowing (in the sense that the defendant fully understood the potential consequences of his waiver) and voluntary." *United States v. Ready*, 82 F.3d 551, 557 (2d Cir. 1996), *superseded on other grounds as stated in United States v. Cook*, 722 F.3d 477, 481 (2d Cir. 2013). Further, agreements containing waivers of such essential rights are to be construed narrowly because they "are unique contracts in which special due process concerns for fairness and the adequacy for procedural safeguards obtain." *Id.* at 556, 558-59 (internal citations and quotations omitted).

Here, the facts suggest that the defendant knowingly and voluntarily agreed to paragraph six of the ▮▮▮▮ agreement. Although he contends that he was unaware that derivative evidence could be used against him, his attorneys testified to the contrary. Tr. at 129:10-15 ("Q. And did you explain to him that those leads or what the government found could be used against him? A. Yes.; Q. Did you ever tell him that these things could only be used against other people? A. No."). Having observed this testimony and considered the additional circumstances surrounding the entry of this agreement, the court credits counsel's version of the facts.

1    The court cannot, however, make the same finding with respect to paragraph five.
2    The totality of the testimony suggests that this paragraph was not adequately explained to
3    the defendant and that he signed the ▮▮▮ agreement without fully understanding its
4    consequences and the scope of his waiver.  It appears that the defendant understood that
5    he, personally, could not testify inconsistently with his ▮▮▮ statements, but he was
6    unaware that the same limitation applied to his attorneys.  Although this may seem
7    illogical to a person knowledgeable about the American legal system, the court notes that
8    the defendant is a not a lawyer, not a native English speaker, that he signed an English
9    version of the ▮▮▮ agreement and that there is a credible dispute regarding whether he
10   received a certified translation prior to signing away his rights.

11   Most importantly, the court notes that his attorneys admitted that they failed to
12   specifically explain how paragraph five would limit their abilities to present his case.
13   Although Ms. Goykhman translated the exact wording of paragraph five to the defendant,
14   she admitted that she, herself, did not understand its legal implications and that she did
15   not convey those implications to the defendant.  Further, Ms. Goykhman testified that she
16   is not a certified translator, that her Russian language skills are limited and that she was
17   not educated in the translation of legal terms.  Mr. Fogg also failed to fully explain this
18   paragraph to the defendant.  Although he explained generally that the ▮▮▮ agreement
19   would preclude a "straight up innocence defense," he failed to specify that paragraph five
20   would limit counsel's ability to present his case and would prevent counsel from making
21   certain representations during opening, cross-examination and summation.  *See, e.g.,*
22   *United States v. Burnett*, 2009 WL 2180373, at *3 (E.D. Pa. July 17, 2009) (invalidating
23   portion of ▮▮▮ agreement where facts suggested that defendant "did not understand
24   that the waiver would affect how his attorney could present his case, essentially muzzling
25   counsel and rendering counsel ineffective during trial."); *see also United States v.*
26   *Lauersen*, 2000 WL 1693538 (S.D.N.Y. Nov. 13, 2000) (precluding government from

using the defendant's ▮ statements for anything other than impeachment of defendant's testimony).

Accordingly, it appears that the defendant may not have fully appreciated the consequences of paragraph five. For these reasons, the court finds that the defendant's ▮ statement may be used for impeachment purposes only.

That said, counsel is not without constraints at trial. The court is duty bound to protect the integrity of the proceeding and to ensure that matters presented to the jury are grounded in good faith. Consequently, counsel will not be permitted to elicit substantive, non-impeachment testimony, either on cross-examination of witnesses called by the government or from witnesses called to testify on behalf of the defendant or to present arguments to the jury at any stage of the proceedings that directly contradict specific factual statements made by the defendant at the ▮ session.

## IV. CONCLUSION

Based upon the foregoing, the court GRANTS IN PART defendant's motion and holds that the defendant's ▮ statements may be used for impeachment purposes only. However, absent a good-faith basis, defendant's counsel may not present evidence or arguments on defendant's behalf that directly contradict specific factual assertions made by the defendant at his ▮ session. The motion is otherwise DENIED.

Dated this 29th day of April, 2016.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge