THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                         Plaintiff,<br><br>v.<br><br>ROMAN SELEZNEV,<br><br>                         Defendant. | No.  CR 11-70RAJ<br><br>DEFENSE MOTIONS IN LIMINE<br><br>NOTING ON MOTION CALENDAR:<br>August 3, 2016 |

## I.      INTRODUCTION

The defendant, Roman Seleznev, by and through his counsel, John Henry Browne and Emma C. Scanlan, respectfully requests that the Court issue an order granting the following motions *in limine*.

## II.      MOTIONS

**A.      Scope of Cross-Examination and Effective Assistance of Counsel**

On December 19, 2014, Mr. Seleznev and his former counsel met with the government's representatives for an interview.  An agreement governing the potential use of Mr. Seleznev's statements made during the interview was signed by Mr. Seleznev and his counsel. The provision of the agreement restricting Mr. Seleznev's counsel from presenting a position at trial "materially inconsistent" from Mr. Seleznev's statements at the interview was later challenged by Mr. Seleznev's subsequent counsel. Dkt. # 250. Specifically, the defense challenged whether Mr. Seleznev knowingly agreed that if his counsel took a "position materially inconsistent with" his admissions that his admissions may be used against" him at trial. Dkt. # 270-1, p. 2-3.

LAW OFFICES OF JOHN HENRY BROWNE, P.S.
200 DELMAR BUILDING
108 SOUTH WASHINGTON STREET
SEATTLE, WASHINGTON  98104
(206) 388-0777 • FAX: (206) 388-0780

1    In an Order entered on April 29, 2016, the Court ruled that "the defendant

2   understood he, personally, could not testify inconsistently with his" admissions, "but he

3   was unaware the same limitation applied to his attorneys." Dkt. # 327, p. 6.  For this

    reason, "the defendant's" admissions "may be used for impeachment purposes only" at

4   trial. Dkt. # 327, p. 7.

5    The Court, however, also held that: defense "counsel will not be permitted to

    elicit substantive, non-impeachment testimony, either on cross-examination of witnesses

6   called by the government or from witnesses called to testify on behalf of the defendant or

7   to present arguments to the jury at any stage of the proceedings that directly contradict

8   specific factual statements made by the defendant" during the interview.  Dkt. #327 at 7.

    This limitation has the same effect on counsel's ability to effectively represent Mr.

9   Seleznev as Mr. Seleznev's waiver that the Court found was unknowing.

10    By limiting counsel's ability to elicit substantive testimony that contradicts factual

11   statements made by Mr. Seleznev during the interview, it appears that the Court is

12   "essentially muzzling counsel and rendering counsel ineffective during trial." Dkt. # 327,

    p. 6, quoting United States v. Burnett, 2009 WL 2180373, at 3 (E.D. Pa. July 17, 2009).

13   "Whether rooted directly in the Due Process Clause of the Fourteen Amendment, or in

14   Compulsory Process of Confrontation clauses of the Sixth Amendment, the Constitution

    guarantees criminal defendants 'a meaningful opportunity to present a complete defense."

15   Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (citations omitted).  This includes

16   the rights to present testimony in one's defense and confront and cross-examine adverse

17   witnesses.  See, e.g., Chambers v. Mississippi, 410 U.S. 284; (1973); Davis v. Alaska,

18   415 U.S. 308; (1973); Washington v. Texas, 388 U.S. 14 (1967). An individual must be

    afforded a meaningful right to be heard, which includes the right to present a defense.

19   See, e.g., Hamdi v. Rumsfield, 542 U.S. 507, 533 (2004).

20    The defense seeks guidance from the Court as to whether counsel will be able to

21   call into question the government's ability to prove facts previously admitted by Mr.

22   Seleznev.  In order to effectively represent Mr. Seleznev defense counsel needs to be able

    to confront the government's witnesses and elicit substantive testimony that calls into

23   doubt the government's ability to prove a number of the facts admitted by Mr. Seleznev

24   during the interview.

DEFENSE MOTIONS IN LIMINE
(CR11-70RAJ) - 2

Specifically, the defense requests permission to elicit substantive testimony and make arguments regarding the following issues:

| Fact | Proposed Testimony and/or Argument |
|---|---|
| Admitted during interview: Mr. Seleznev used all of the "nics" listed in the indictment with the exception of "bandysli64." | Questions and argument contradicting the government's ability to prove that Mr. Seleznev used any or all of the nics attributed to him. For example, questions on cross-examination regarding whether agents can physically tie Mr. Seleznev to the keyboard at the time someone using the HopOne server logged on to carder.biz using the nic "bulba." |
| Connection between Mr. Seleznev and dump shop servers and websites bearing the names of nics Mr. Seleznev admitted using: Track2, bulba, 2pac, etc. | Cross-examination, testimony and argument contradicting Mr. Seleznev's connection to the relevant dump servers and websites.  For example, eliciting testimony that 2pac.cc had continuing activity after Mr. Seleznev's arrest thereby contradicting Mr. Seleznev's admission that he was the one using the nic 2pac. |
| "Smaus" and "shmak" are nics listed in the Second Superseding Indictment that Mr. Seleznev made factual admissions about during the interview.  "smaus.fvds.ru" and "shmak.fvds.ru" are the website addresses of malware servers. | Cross-examination and argument questioning the link between Mr. Seleznev and the malware servers. |
| Use of name "Roman Ivanov."  Does not appear to be part of factual admissions made during the interview. | Questions and argument contradicting the government's ability to prove that Mr. Seleznev used the alias "Roman Ivanov." |
| Use of name "Ruben Samvelich."  Does not appear to be part of factual admission made during the interview. | Questions and argument contradicting the government's ability to prove that Mr. Seleznev used the alias "Ruben Samvelich." |
| Use of boookscafe@yahoo.com email address. | Questions and argument contradicting the government's ability to prove that Mr. Seleznev used the email address "boookscafe@yahoo.com." |
| Use of sendspace.  Mr. Seleznev admitted during the interview that he used sendspace to send "dumps" to clients. | Questions and argument calling into question Mr. Seleznev's connection to the use of sendspace to transmit credit card numbers from the Broadway Grill point-of-sale ("POS") system to an outside server. |
| During the interview Mr. Seleznev admitted creating "pack.exe." | Questions and argument challenging the attribution of pack.exe to Mr. Seleznev. |

| Fact | Proposed Testimony and/or Argument |
|------|-------------------------------------|
| During the interview Mr. Seleznev admitted targeting POS systems supported by the company Firefly because Firefly used the same password for all the systems it supported. | Questions and argument challenging whether Mr. Seleznev was the one targeting all of the named victim Firefly supported businesses as opposed to others with the same knowledge regarding the weaknesses in Firefly supported POS systems. |

        In addition to the topics listed above there will certainly be other issues that come up at trial.  With the Court's permission, counsel will make an offer of proof regarding other topic areas prior to eliciting substantive testimony if counsel believes there may be a question as to whether there was a relevant factual admission made by Mr. Seleznev during the interview.

**B.      Government's Proposed Summary Exhibits**

        The admissibility of summary exhibits is guided by Federal Rule of Evidence 1006, which provides: "The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation."  See United States v. Rizk, 660 F.3d 1125, 1130 (9th Cir. 2011) (citations omitted).  The purpose of the rule is "to allow the use of summaries when the documents are unmanageable or when the summaries would be useful to the judge and jury."  Id.  The proponent of summary evidence must establish that the underlying materials upon which the summary is based (1) are admissible and (2) were made available to the opposing party for inspection.  Id.  While the materials must be admissible, they do not need to be admitted into evidence.  Id.  "Receiving summary exhibits of material already in evidence," however, is disfavored.  United States v. Anekwu, 695 F.3d 967, 982 (9th Cir. 2012).

        1.      Proposed Summary Exhibit 1.15

        Government proposed summary exhibit 1.15 titled "Malware Installation and Mitigation Summary" is a recapitulation of information contained in nine other proposed exhibits labeled 1.1 through 1.9.  Each of the underlying exhibits is two pages.  Thus, the summary covers only 18 pages of records.  To be clear, these are not 18 pages of dense data; rather the pages are charts of easily readable and accessible information.  As this is

not the kind of information contemplated by Rule 1006, the government should not be allowed to offer proposed summary exhibit 1.15 as substantive evidence.

2.    Proposed Summary Exhibit 4.12

Proposed Summary Exhibit 4.12 lists five: domain names, the domains' registrars and creation dates, name associated with the domain name, registered email address, and phone number.  This is information easily explained to the jury from the source documents for each domain.  Each domain has an associated "Domain Tools" report which sets forth the relevant information in an easy to understand and relatively brief format.  The compilation is not necessary and the underlying documents can "conveniently be examined" by the jury.  Fed. R. Evid. 1006.  The summary chart should not be admitted as substantive evidence.

3.    Proposed Summary Exhibit 4.14

Proposed summary exhibit 4.14 is a three-line chart summarizing information available in government exhibits 4.1 – 4.3.  Exhibits 4.1, 4.2 and 4.3 are themselves summary reports by "Domain Tools."  The reports are short and easy to understand. While the proffered summary exhibit shows that the three domains at issue were registered at the same time and in the same name, something the government would no doubt benefit from demonstrating, this exhibit is a far cry from what is contemplated by Federal Rule of Evidence 1006.  This exhibit does not condense information from voluminous records; all it does it highlight a similarity that is beneficial to the government's case.  Exhibit 4.14 should not be allowed as substantive evidence.

4.    Proposed Summary Exhibits 9.11

The government has provided two different summary exhibits 9.11.  The first is a seven-page document summarizing information available in government exhibits 9.1 – 9.5, 9.7 – 9.9, and 9.12 – 9.26.  The second is a single page summary of the seven-page summary.  Exhibits 9.1 – 9.5, 9.7 – 9.9, and 9.12 – 9.26, in turn, relate to eight different Liberty Reserve Accounts, their registration records, transaction histories, and user IP addresses.  These source documents are easy to comprehend, are not overly voluminous, and should pose no difficulty for the jury.  The summary—and the summary of the summary— should not be admitted under Federal Rule of Evidence 1006.

LAW OFFICES OF JOHN HENRY BROWNE, P.S.
200 DELMAR BUILDING
108 SOUTH WASHINGTON STREET
SEATTLE, WASHINGTON  98104
(206) 388-0777 • FAX: (206) 388-0780

5.     Proposed Summary Exhibit 13.30

Proposed Summary Exhibit 13.30 is merely a list of search terms from Mr. Seleznev's laptop that the government seeks to highlight.  This is clear even in the name of the exhibit: Summary of Parsed Search Terms from Laptop.  This is a comment on the evidence rather than a proper summary seems, at best, to constitute demonstrative evidence which can "conveniently be examined in court."

6.     Proposed Summary Exhibit 13.31

Proposed Summary Exhibit 13.31 is another cherry-picked list of terms from Mr. Seleznev's use of Firefox on his laptop that the government seeks to highlight.  This is not the type of evidence contemplated by FRE 1006; rather, it is another comment on the evidence as well as material that can conveniently be examined in court.

7.     Proposed Summary Exhibit 13.40

Proposed Summary Exhibit 13.40 merely identifies and provides creation, last access, and last written dates for all of the government's proposed exhibits in the 13-range. This list is, again, very selective and not actually a proper summary.  As this exhibit amounts to a comment on the evidence and simply what the government wants to highlight, it is inadmissible.

8.     Proposed Summary Exhibit 16.14

Proposed Summary Exhibit 16.14 is a two-page summary of travel dates ranging from February 4, 2010 through July 5, 2014 as shown on Mr. Seleznev's passport.  Mr. Seleznev's international passport, though, is government exhibit 12.7; photos from his passport are government exhibit 12.7(a), and a translation of his passport is government exhibit 12.7(b).  The jury, more importantly, is perfectly capable of viewing and assessing a passport. As the materials the government seeks to summarize will already be in evidence, are not voluminous, and are readily understandable to the jury, the proposed summary is inadmissible.

C.     **Potential Testimony of Svetlana Zharova**

Ms. Zhavora was interviewed by government agents on several occasions and has testified before the Grand Jury in this case.  Based on a review of the statements made, portions of Ms. Zharova's potential testimony should be excluded under the martial communications privilege, because they are hearsay without exception or because the

LAW OFFICES OF JOHN HENRY BROWNE, P.S.
200 DELMAR BUILDING
108 SOUTH WASHINGTON STREET
SEATTLE, WASHINGTON  98104
(206) 388-0777 • FAX: (206) 388-0780

prejudice to Mr. Seleznev of introducing the statement outweighs the probative value. Fed.R.Evid. 403.

### 1.    Marital Communications

Private communications between spouses "are generally assumed to have been intended to be confidential" and are thus privileged.  United States v. Montgomery, 384 F.3d 1050, 1056 (9th Cir. 2004) (quoting Wolfle v. United States, 291 U.S. 7, 14, 54 S.Ct. 279 (1934)); United States v. Marashi, 913 F.2d 724, 729–30 (9th Cir.1990). (Communications made outside the presence of others during a valid marriage are privileged.) The marital communications privilege may be invoked by the non-testifying spouse.  United States v. Banks, 556 F.3d 967, 974 (9th Cir. 2009).

Based on information garnered from Ms. Zharova's interviews and prior testimony, the following communication allegedly made by Mr. Seleznev to Ms. Zharova are privileged: (1) he told her he was an independent contractor; (2) he told her he worked on anti-virus programs; (3) he told her Vladimir Horohorin's arrest had something to do with their contract and was a secret; (4) he told her he and Vlad became competitors; (5) he told her he paid someone to block Vlad's advertising; (6) he told her about Vlad and Anton; (7) he told her he shared too much information about his business with his former girlfriend and would not make the same mistake with her; (8) he told her that Anton knew too much about the business; (9) after their apartment in Vladivostok was robbed, he told her not to return to their apartment because the burglars might also head there; (10) he told her to rent a car to pick him up at the airport and told her they were moving to Bali because it was dangerous to stay in Russia, he knew secrets, and he had a high paying job; (11) he told her he had to pay for protection in Russia; (12) he told her that when he changed nicknames he lost prestige and respect online; (13) he told her about dumps, Vlad, Valery, websites, and how numbers were very important; (14) he told her he could not travel to the United States or to any of its allies; (15) he told her that Shmak was one of his nicknames; and (16) he told her about a bulletproof computer.

The defense suggests that the Court require the government to make an offer of proof regarding the situation and context for each alleged statement by Mr. Seleznev to Ms. Zharova or statement by Ms. Zharova to Mr. Seleznev that it intends to elicit at trial.

DEFENSE MOTIONS IN LIMINE
(CR11-70RAJ) - 7

LAW OFFICES OF JOHN HENRY BROWNE, P.S.
200 DELMAR BUILDING
108 SOUTH WASHINGTON STREET
SEATTLE, WASHINGTON  98104
(206) 388-0777 • FAX: (206) 388-0780

2.      Hearsay

The following statements are hearsay without exception and should be excluded: (1) allegations involving alleged threats or other communications with or by Mr. Seleznev's father, Valery Seleznev; (2) the police told Ms. Zharova that they arrested Mr. Seleznev and Andrei for robbing Ms. Zharova's apartment; (3) Anton allegedly told Ms. Zharova about some aspects of Mr. Seleznev's business; (4) Anton said that "NCUX" fit Mr. Seleznev's personality because it meant an unstable personality;  (5) she heard Mr. Seleznev's friends call him "seek"; and (6) Ms. Zharova heard "track2" and bulba.

3.      Prejudice Outweighs Probative Value

The probative value of the following area of testimony is outweighed by the prejudice to Mr. Seleznev should the Court allow Ms. Zharova to testify regarding these matters: (1) Mr. Seleznev's alleged arrested in Russia for drunk driving; (2) Ms. Zharova's opinion that Mr. Seleznev broke into her apartment; (3) Ms. Zharova's opinion that Mr. Seleznev was angry with her after the bombing; (4) details of the marital relationship; (5) alleged threats by Valery Seleznev or his associates; (6) opinions about the relationship between Mr. Seleznev and his father; and (7) Ms. Zharova's opinion that Mr. Seleznev's father was trying to help him become a member of the Duma; and Ms. Zharova's allegation that she left Russia due to concerns for her safety.

**D.      Expert Testimony**

1.      Profile Evidence

The government has endorsed United States Secret Service ("USSS") Agent Matthew O'Neill to discuss "carding," "payment systems," "internet tools," and unauthorized access."  Apparently Agent O'Neill would testify generally that cybercriminals: use credit card data and personal identification information to further their schemes; use forums, which have their own hierarchies to discuss their common interests; use numerous methods to conceal, store, transfer, and launder their monies; often conceal their activities by using proxy servers, virtual private networks, virtual machines, foreign websites and email addresses, and false identities.  O'Neill also intends to discuss techniques commonly used by hackers and how cybercriminals use malware.

This type of generalized profile testimony carries with it the implied opinion that the defendant is the type of person who would engage in the alleged illegal acts and

LAW OFFICES OF JOHN HENRY BROWNE, P.S.
200 DELMAR BUILDING
108 SOUTH WASHINGTON STREET
SEATTLE, WASHINGTON  98104
(206) 388-0777 • FAX: (206) 388-0780

therefore must have committed such acts.  See, e.g., United States v. Gillespie, 852 F.2d 475, 480 (9th Cir.1988) ("testimony of criminal profiles is highly undesirable as substantive evidence because it is of low probativity and inherently prejudicial").

In this particular case, any such testimony is likely to include descriptions of the conduct of individuals who were found guilty of related offenses involving computer hacking, which will nicely dovetail with the allegations against Mr. Seleznev, and thus invite the jury to—unfairly—infer that he must be guilty.

General testimony about computer hacking, moreover, may include an implied opinion on the defendant's mental state (i.e, his intent to defraud).  Rule 704 provides that no witness may state an expert opinion or inference regarding whether a defendant possesses a particular mental state that is an element of the crime charged.  Fed.R.Evid. 704(b); see United States v. Campos, 217 F.3d 707, 717-19 (9th Cir. 2000) (citing United States v. Wang, 49 F.3d 502, 504 (9th Cir. 1995) ("we now make explicit, the better practice would be for the prosecutor not to ask ... questions arguably bearing on intent and for a district court not to find such answers admissible").

The proposed testimony, finally, is neither relevant to the charges nor helpful to the trier of fact.  Fed.R.Evid. 401; 702; Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786 (1993). It is also subjective and conclusory and thus cannot be challenged in an objective manner.  See Daubert, supra; Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147, 119 S.Ct. 1167 (1999).

    2.    <u>Hybrid Fact and Expert Witnesses</u>

The government has indicated that it will offer expert opinion testimony from members of law enforcement who will also present factual testimony.  These hybrid witnesses include: Seattle Police Department ("SPD") Officer David Dunn; USSS Agent David Mills; USSS Agent Michael Fischlin; SPD Officer Christopher Hansen; and USSS Agent John Szydlik.  If the government calls any of these witnesses—or any other member of law enforcement—as both a fact witness and an expert witness, the defense requests that this Court institute the special procedures delineated by United States v. Freeman, 598 F.3d 893 (9th Cir. 2007) and its progeny.

As the Court in <u>United States v. Vera</u> summarized: "[A]n agent's status as an expert could lend him unmerited credibility when testifying as a percipient witness,

cross-examination might be inhibited, jurors could be confused and the agent might be more likely to stray from reliable methodology and rely on hearsay."  770 F.3d 1232, 1242 (9th Cir. 2014).

In <u>Freeman</u>, despite its concerns, the Court sanctioned the use of case agents as both expert and lay witnesses, but warned that it is necessary to make clear to the jury the circumstances permitting the agent to testify as an expert and clearly delineate the witness's dual roles.  598 F.3d at 904.  Otherwise "expert testimony by a fact witness testimony as a whole—and not just the expert segment—may have the "imprimatur of scientific or technical validity." <u>Id</u>. at 903-04 (citations omitted).

Both <u>Vera</u> and the more recently decided <u>United States v. Torralba-Mendia</u>, 784 F.3d 652 (9th Cir. 2015), involved instructional errors in failing to advise the respective juries as to how to properly assess an officer's lay and expert testimony.  As the <u>Vera</u> Court, again, aptly noted: expert opinions from otherwise lay witnesses "must rest on reliable methodology … may not be supported by speculation or hearsay, or interpret unambiguous, clear statements; and that the jury must be instructed on how to appropriately evaluate each form of testimony offered by the officer."  770 F.3d at 1235.  Members of law enforcement may thus "offer lay and expert opinions … but the foundation laid for those opinions must satisfy Rules 701 and 702.  Further, if a single officer offers both lay and expert testimony, the jury must be informed of the fact and significance of his dual roles." <u>Id</u>. at 1243.

> a.    Detective Dunn

Detective Dunn exemplifies the dangers of permitting a case agent to testify as an expert witness.  The government has disclosed that it intends to have Detective Dunn testify generally about the same topics as Agent O'Neill—computers, carding, payment systems, internet tools, unauthorized access.  This is clearly cumulative.

In addition to generalized testimony about what computer hackers do, the government has disclosed that it intends to have Detective Dunn testify about malware and how it was allegedly used in this case. He will offer the opinion that "RAM scraper" malware stole credit card information in the few moments it existed on RAM in an unencrypted state, prior to its storage in an encrypted state after usage.  He will talk about

LAW OFFICES OF JOHN HENRY BROWNE, P.S.
200 DELMAR BUILDING
108 SOUTH WASHINGTON STREET
SEATTLE, WASHINGTON  98104
(206) 388-0777 • FAX: (206) 388-0780

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

the various computers he examined, the Hop One server, and how the data stored on the server can be connected to Mr. Seleznev.

The government has also endorsed Dunn to discuss email, generally, as an expert, but also emails discovered by the government and business records from online vendors as a lay witness. Finally, he will testify about Whois domain registration and opine that cybercriminals often falsify registration data to obscure their identities and techniques.

Under Rule 704(b), though, an "expert witness may not state an opinion as to whether the defendant did or did not have the mental state or condition constituting an element of the crime or a defense thereto. An expert witness is not permitted to offer a direct opinion on the defendant's guilt or innocence." United States v. Anchrum, 590 F.3d 795, 804 (9th Cir. 2009) (citations omitted). There seems an overwhelming danger that if Detective Dunn is allowed to testify as a hybrid witness without restraint he will be able to describe what hackers do and then go on to say exactly what he thinks Mr. Seleznev did that fits the profile of hacker activities he previously outlined.

      b.     Agent Mills

The government endorses Agent Mills to testify generally about carding and forensic analysis and specifically about his forensic review of the Sony Vaio laptop. Agent Mills will then, apparently, switch to testifying as a lay witnesses and offer testimony regarding the evidence of carding he found on the computer.

The government intends Mills to, based on his training and experience, provide his understanding of slang words allegedly used by Mr. Seleznev and others. It is unclear whether Agent Mills possesses enough experience to testify on this topic as an expert. He has been doing electronic forensic work since 2012 but it is unclear how much experience he has with the slang words he is purportedly going to testify about.

      c.     Agent Szydlik

The government offers Agent Szydlik to testify, based upon his training and experience, about various payment systems cybercriminals allegedly used to transfer and launder money. He will more thoroughly discuss the Liberty Reserve investigation and connect that investigation to Mr. Seleznev.

Agent Szydlik will also offer lay testimony about his investigation of Mr. Seleznev, but at the same time reference previously provided expert testimony.

1   Here, then, Mr. Seleznev requests that should the Court qualify any fact witnesses
2   as experts, in order to minimize the inherent prejudice, that the Court: (1) "clearly
3   separate" the testimony into two phases—the first consisting of lay observations and the
4   second consisting of expert opinion; (2) "require an adequately specific foundation, so
5   that the jury has the information needed" to evaluate the testimony; (3) instruct the jury
6   as to "what the attendant circumstances are in allowing a government case agent to testify
7   as an expert"; and (4) prohibit an officer to "testify based on speculation, rely on hearsay,
8   or interpret unambiguous, clear statements. Torralba-Mendia, 784 F.3d at 658 (citations
9   omitted).

**E.      Law Enforcement Opinion Testimony**

A number of the investigative reports attribute specific actions to Mr. Seleznev
based on the agent's opinion that Mr. Seleznev is the person who, for example, received a
particular email at boookscafe@yahoo.com.  While this type of attribution poses no
problem during the investigatory stage, it is a problem when the attribution of specific
acts to Mr. Seleznev bleeds into the testimony at trial.

It is axiomatic that "[a] witness is not permitted to give a direct opinion about the
defendant's guilt or innocence."  Moses v. Payne, 555 F.3d 742, 761 (1998) (quoting
United States v. Lockett, 919 F.2d 585, 590 (9th Cir.1990); citing also Fed.R.Evid.
704(a)); see, e.g., Gibson v. United States, 363 F.2d 146, 147 (5th Cir. 1966) (no witness
may testify as to his or her own opinion as to the guilt of a defendant)).  More
specifically, it is "error to allow law enforcement witnesses to express opinions as to
defendants' culpability based on the totality of information gathered in the course of their
investigations."  United States v. Garcia, 413 F.3d 201, 211 (2d Cir. 2005) (citing United
States v. Grinage, 390 F.3d 746, 749–51 (2d Cir. 2004) (rejecting receipt of such
evidence as lay opinion under Rule 701); United States v. Dukagjini, 326 F.3d 45, 54 (2d
Cir. 2003) (rejecting receipt of such evidence as expert opinion under Rule 702). The
Garcia Court explicitly rejected the government's argument that "a case agent may offer,
at the beginning of a trial, a lay opinion providing a summary overview of anticipated
evidence."  Id.   The defense requests that the Court prohibit the government's witnesses
from attributing things like the installation of a particular piece of malware onto a
specific POS system to Mr. Seleznev as such testimony invades the province of the jury.

LAW OFFICES OF JOHN HENRY BROWNE, P.S.
200 DELMAR BUILDING
108 SOUTH WASHINGTON STREET
SEATTLE, WASHINGTON  98104
(206) 388-0777 • FAX: (206) 388-0780

This case comes down to whether the jury believes the government has proved beyond a reasonable doubt that Mr. Seleznev was the person who infiltrated the POS systems described in the Indictment as opposed to someone else. The agents should not be allowed to offer an opinion on this ultimate issue.

**F.     FDC Calls**

The government has not listed any of Mr. Seleznev's phone calls while he has been at the Federal Detention Center on its exhibit list. Should the government intend to introduce any of the calls the defense requests notice of those calls prior to the pretrial conference.

**G.     Pending Charges in Nevada and Georgia**

The government assured the Court and the defense that it will not offer any evidence stemming from Mr. Seleznev's pending cases in the District of Nevada and the Southern Distict of Georgia. With this assure, all evidence regarding those charges and stemming from those cases should be excluded.

**H.     Exclusion of Witnesses**

Pursuant to Federal Rule of Evidence 615, the defense moves to exclude witnesses from the trial prior to their testimony so that they cannot hear the testimony of other witnesses. See, e.g., Geders v. United States, 425 U.S. 80, 88, 96 S.Ct. 1330 (1976) (finding that sequestration of non-party witnesses "exercises a restraint on witnesses 'tailoring' their testimony to that of earlier witnesses" and "aids in detecting testimony that is less than candid") (citing 6 J. Wigmore, Evidence § 1838 (3d ed. 1940); F. Wharton, Criminal Evidence § 405 (C. Torcia ed. 1972)).

**I.     Witnesses Discussing the Case**

The defense requests that the Court prohibit the witnesses involved in this case from discussing testimony, evidence, or other courtroom matters with other witnesses in this case, and instruct the government to not disclose any testimony to witnesses who have yet to testify. See, e.g., United States v. Buchanan, 787 F.2d 477, 484-85 (10th Cir. 1986) (determining that prohibiting witnesses from discussing their testimony amongst themselves is "necessary to prevent a circumvention" of Rule 615); United States v. Johnston, 578 F.2d 1352, 1355 (10th Cir. 1978).

LAW OFFICES OF JOHN HENRY BROWNE, P.S.
200 DELMAR BUILDING
108 SOUTH WASHINGTON STREET
SEATTLE, WASHINGTON 98104
(206) 388-0777 • FAX: (206) 388-0780

**J.      Advance Notice of Witness Order**

In order to ensure that the trial proceeds smoothly and that all parties are prepared, the defense requests that the Court order the government to provide 48 hours advance notice of the order of witnesses.

### III.      CONCLUSION

The defense submits these motions *in limine* to apprise the Court of anticipated substantive areas of law likely to be at issue in this case, and respectfully requests that the Court grant the relief requested.


DATED this 18th day of July, 2016.

Respectfully submitted,

s/ *John Henry Browne*
JOHN HENRY BROWNE, WSBA #4677

s/ *Emma C. Scanlan*
EMMA C. SCANLAN, WSBA #37835
LAW OFFICES OF JOHN HENRY BROWNE, PS
Attorneys for Roman Seleznev
200 Delmar Building
108 South Washington Street
Seattle, WA  98104
206.388.0777 fax: 206.388.0780
Email: johnhenry@jhblawyer.com
          emma@jhblawyer.com

DEFENSE MOTIONS IN LIMINE
(CR11-70RAJ) - 14

LAW OFFICES OF JOHN HENRY BROWNE, P.S.
200 DELMAR BUILDING
108 SOUTH WASHINGTON STREET
SEATTLE, WASHINGTON  98104
(206) 388-0777 • FAX: (206) 388-0780

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 18, 2016, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of filing to all

registered parties.

<u>s/Emma C. Scanlan</u>
Emma C. Scanlan, WSBA #37835

DEFENSE MOTIONS IN LIMINE
(CR11-70RAJ) - 15

LAW OFFICES OF JOHN HENRY BROWNE, P.S.
200 DELMAR BUILDING
108 SOUTH WASHINGTON STREET
SEATTLE, WASHINGTON  98104
(206) 388-0777 • FAX: (206) 388-0780