# EXHIBIT A



**U.S. Department of Justice**

*United States Attorney*
*Western District of Washington*

---

*Please reply to:*
*Norman M. Barbosa*
*Assistant United States Attorney*
*Direct Line: (206) 553-7970*

*700 Stewart Street, Suite 5220    Tel:  (206) 553-7970*
*Seattle WA, 98101-1271          Fax: (206) 553-2502*
*www.usdoj.gov/usao/waw*

January 12, 2016

Calfo, Harrigan, Leyh & Eakes, LLP
Angelo Calfo and Andrea Ostrovsky
999 3rd Avenue, Suite 4400
Seattle, WA 98104

      Re:    *United States v. Roman Seleznev,*
              *CR11-0070RAJ*

Dear Angelo and Andrea:

      Pursuant to Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure and Rules 702, 703 and 705 of the Federal Rules of Evidence, the government hereby notices the intent to use expert testimony.  The United States intends to call the following expert witnesses:

| | |
|---|---|
| Matthew O'Neill | U.S. Secret Service |
| John Szydlik | U.S. Secret Service |
| Michael Fischlin | U.S. Secret Service |
| David Mills | U.S. Secret Service |
| David Dunn | Seattle Police Department |
| Christopher Hansen | Seattle Police Department |
| Grayson Lenik | Nuix |
| Tim Chen | Domain Tools |

The statement of the expert qualifications of each witness is attached.  Those qualifications, along with review of relevant reports, facts and evidence, set forth the basis for their opinions. By providing the notice set forth below, the government does not concede that any of the specific referenced testimony constitutes expert testimony.  Rather, this notice is intended to be over-

inclusive, and includes some material that does not constitute expert testimony, in the interest in providing the most complete notice possible.

The United States intends to call the above witnesses, who at various times may offer expert testimony based on their training and experience.  While the government will be careful to not be unnecessarily redundant, due to the nature of the crime and the evidence, different witnesses may testify about similar topics.

1. <u>Matthew O'Neill</u>

The United States intends to call U.S. Secret Service Special Agent Matthew O'Neill to testify about "carding" generally, that is, the criminal theft, sale, use and trafficking of credit card and personal identification information ("PII") connected to credit cards.

   *a.  Carding*

Agent O'Neill will testify that PII consists of items such as name, social security number, date of birth, mother's maiden name, addresses, email addresses, usernames and passwords.  He will explain the attributes of a credit card and its numbers, including BIN numbers, track data and CVV/CVV2 numbers.  Moreover, he will explain how a credit card's attributes are used differently for when a card is or is not present at the time of charging.  He will further testify how credit card data and PII can be utilized by criminals in numerous ways, such as profiting from the sale of the data, utilizing the data to open new accounts, purchasing goods and committing further fraud, such as tax/wire/bank fraud.  He will also testify about access and digital devices related to credit cards, such as skimmers and encoders which read and write track data onto magnetic stripes, that cybercriminals utilize to further their schemes.  For example, he will testify that a MSR206 is an example of a skimming/encoding device, and that "Jerm" is a type of software used to load data onto a magnetic strip.

Agent O'Neill will explain that criminals involved in carding often utilize online websites, forums and portals to discuss techniques to further their criminal activity, market their skills, sell their goods (credit card numbers, PII, etc.) and generally congregate like many members of the public do on non-criminal forums to discuss their common interests.  He will state that criminal forums often use controls to protect their membership, such as requiring members to be vouched on by existing members and/or testing their criminal abilities, e.g., their hacking abilities.  Agent O'Neill will explain that criminal forums often have a hierarchy, and that the administrators for the forum are at the top of the hierarchy, as they are able to manage content, user accounts and

2

permissions, and generally have full control over the forum site.  He will also state that forums typically do not utilize real names, but "nics" or nicknames.  He will discuss specific carding forums, including but not limited to Carder.su, Carderplanet and InFraud.

During his testimony, Agent O'Neill will also discuss terms used by criminals involved in hacking computers, stealing and selling credit card information and PII.  He'll explain terms such as "carding (general term for the topic)", "dumps (files containing lists of credit card and PII)", "drops (individuals or locations used to receive or cash criminal proceeds)" and "drop managers (criminals in charge of recruiting/tricking individuals to act as drops)."  Moreover he will describe how actual terminology like "Track" and "BIN" are regularly used even in slang on criminal forums to describe specific data.

   *b. Payment Systems*

Agent O'Neill will testify that cybercriminals use numerous methods to conceal, store, launder and transfer their monies, including but not limited to Western Union, Liberty Reserve and Bitcoin.  He will explain various methods that cybercriminals utilize to launder and cash their money from online wallets to cash, such as Western Union, online criminal money exchangers, prepaid cards and hiring individuals to withdraw cash from ATMs and checking accounts.  He will testify about the impact of "know your customer" rules, and the fact that certain payment system operators (such as Pay Pal) are more likely to verify customer identifying information than other operators (such as Liberty Reserve and many Bitcoin Wallets).

   *c. Internet Tools*

Agent O'Neill will testify about general internet operations, such as what an IP address is, how they operate and how they are assigned.  He will further explain the relationships between ICANN, registrars, domains, and internet service providers/hosting companies.  Moreover, he will testify about how an individual can purchase or lease a domain to operate a website, such as POSdumps.com, Track2.name, ncux.name, etc.

Agent O'Neill will explain that cybercriminals often conceal their criminal activities and communications utilizing proxy services and/or virtual private networks ("VPNs").  Cyber criminals often also utilize virtual machines, that is, operating a computer within a computer, to further obfuscate any identifiers.  Moreover, criminals may utilize foreign websites and email addresses (e.g., ".ru" extensions), false identifications to register domains and usernames, and

3

utilize nicknames on forums rather than true names, all to obfuscate their true identities from law enforcement and/or make it more difficult for law enforcement to collect evidence from service providers.

Agent O'Neill will explain that domain registrant names and physical addresses can (and are often) falsified, but that the emails used are often accurate. He will explain that while a name and physical address are not required to operate a website, a hosting company, registrar, and service provider do need an email address to contact the owner about changes to their service, and therefore if the email address was false, they would be unable to receive such information. O'Neill will further state that cybercriminals often use false registration information to mask their identities, but that they utilize email addresses they regularly access, so that they are aware of any changes to their services.

       *d.  Unauthorized Access*

Agent O'Neill will testify about techniques commonly used by hackers. In doing so, he will testify that hackers often utilize malware, or viruses, that is, software designed to conduct unauthorized activity, often covertly, on a computer it has infected. Additionally, he will testify about how such malware is often loaded onto a computer, such as through phishing and email. He will explain how malware is generally used by cybercriminals who seek to steal PII and credit card data.

    2.  <u>David Dunn</u>

In his testimony, Seattle Police Officer David Dunn will discuss the topics of *Carding*, *Payment Systems*, *Internet Tools* and *Unauthorized Access*. As such, we provide notice that based on his training and experience, Officer Dunn is qualified to testify about, and may testify about all items listed above under these sections.

       *a.  Forensic Analysis*

Additionally, Officer Dunn will testify about his role as a forensic expert examining various pieces of evidence. To begin, he will state that prior to any examination, he imaged digital media to create an exact copy so that his examination would not alter the state of the original copy. Next he will testify that he utilized various forensic software (e.g. FTK and Encase) to review the information contained on the digital media, and that his reviews may have occurred using virtual machines. Then, based on his training and experience, he will identify various files and file types found on the media, including but not limited to executable files (.exe), documents

(.doc(x)), link files (.lnk), zip files (.zip/.rar), images (.jpg/png/gif), web pages (.html), texts (.txt), logs (.log), data files for email, calendars and contacts (.csv/pst/msg/vcf), scripts (.xml), audio and video (.mp3/mpeg/avi/wav), thumbnails (.thm), images (.bin/iso) and numerous other file types found on computers and digital media. Furthermore, he will testify about details a computer logs about files (such as when they were created, opened, modified and which user opened it) and how and where those details are recorded.  He will also explain that computer operating systems utilize registry and other system files to record many activities on a computer, such as recent files that were opened, networks saved and connected to, details about devices that were previously connected to the computer and counter forensic programs that were previously run (e.g. Ccleaner).  He will further explain how a computer can preserve a user's internet browsing history, downloaded files, search sequences and other artifacts related to internet usage.  Each of these above descriptions are not exhaustive, but examples of items and details recorded by a computer that can be discovered through forensic tools.

Additionally, Officer Dunn will also testify about general usage of a computer, such as what an administrator or guest account is, how they differ, what accesses are given to each, and that individuals with administrator accounts have the highest privileges, and that such privileges are given to individuals who own the computer/server/website/forum, are responsible for the computer/server/website/forum, and are in control of the computer/server/website/forum.

While the government provides notice herein regarding forensic examinations conducted by Officer Dunn and others, the government does not believe the observation of substantive files recovered by a forensic examination, including but not limited to emails, images and documents, constitutes expert testimony, as the opening and viewing of files is a commonplace activity of everyday computer users..

   b. *Hacking*

In addition to information above in *Unauthorized Access*, Officer Dunn will provide more expansive testimony about techniques commonly used by hackers.  In doing so, he will testify that hackers often utilize malware, or viruses, that is, software designed to conduct unauthorized activity, often covertly, on a computer it has infected.  He will testify about how malware is often loaded onto a computer, such as through phishing and email.  He will also explain how malware is generally used, and how it was used in this case.

He will also state that hackers conduct port scanning, that is, searching the internet for specific ports used by specific programs from which the hacker believes s/he can utilize gain access. Officer Dunn will explain what a port is, how port scanning is conducted, how ports are assigned, and how ports are accessed in the context of both internal and external IP addresses. He will testify that hackers utilize various tools to compromise other computers, such as brute force attacks (password cracking) and DDOS attacks (flooding a website or computer with requests to force it to fail).

Specifically, Officer Dunn will state that the Defendant conducted port scanning activity to identify victim computers, and then either utilized a default password or brute force techniques to gain access. Defendant then uploaded a script, a small program, causing the computer to download malware from a server he operated. Moreover, once infected, the malware would cause the infected computer to upload PII to a second server he operated. He will also testify about specific techniques used, such as RAM scraping, that is, the use of malware to steal credit card information from within a point-of-sale terminal while it exists on RAM (random access memory). RAM is used by computers for active processes, in contrast to hard drives which store data long term. He will opine that RAM scraper malware stole credit card information in the few moments it existed on RAM in an unencrypted state, prior to its storage in an encrypted state after its usage. He will also testify about keyloggers, a specific malware which logs all typed activity, such as usernames and passwords, on a computer.

c. *Items Examined by Officer Dunn*

Officer Dunn will testify about numerous victim computers he examined, including but not limited to computers from Schlotsky's, Broadway Grill and several Mad Pizza locations. Within the discovery, you will find numerous reports for the victim locations he conducted forensic reviews of, and for each, his report outlines his findings. Generally, his testimony about his review of victim computers will include the manner he conducted his review, his findings of malware and what the malware did, and what was extracted from the victim computers.

Officer Dunn will also testify about his review of Defendant's Hop One Server. His testimony about his review of the Hop One Server will include his finding of numerous files containing IP addresses of victims, credit card and PII data taken from those locations. Officer Dunn will also testify about his findings on the Hop One Server and its connection to the malware used, such as how data was wired from Starfire Village Pizza to the server, and lines of

code belonging to the malware.  He will testify about internet history data found on the Hop One server, such as how a user of the server browsed numerous sites, e.g., shmak.fvds.ru, secure.bulba.cc and secure.track2.name.  He will explain how internet history is preserved in numerous places on a computer, and how web pages can be held in cache to allow for the computer to load the pages quicker, and how he found examples of those pages, including carder.biz.  He will further testify that cached carder.biz webpages included messages between Defendant and others.  He will testify that numerous system files hold onto data of past actions, and his testimony will include a review of page files that show evidence connecting Hop One to the defendant, such as flight itineraries, email addresses and personal identifiers like his date of birth.

> d.   *Emails*

Officer Dunn will also testify about the operation of e-mail and e-mails found either from a search of an e-mail address, or from seized computers.  He will explain the connection between address books and emails, and how email programs can auto-populate information from an address book to an email to display sender and recipient names.  While the government believes that the forensic recovery of e-mail from a computer would be expert testimony (as discussed above in *Forensic Analysis*), the government does not believe the review of e-mail content and their attachments (e.g., image or text), plain-view header information (e-mail address, IP address, date and time, etc.), or how e-mail addresses are subscribed to from internet service providers would be expert testimony, as the registration and use of an e-mail address are regular activities conducted by most Americans.  Similarly, the government does not believe testimony about business records from online vendors, including but not limited to RusTelekom, HostTracker, Liberty Reserve, Adult Community and LivePimpin would be expert testimony.  Additionally, the government does not believe information from e-mail providers, such as account info, login dates/times and IP addresses would constitute expert testimony.  Although not expert testimony, the government provides notice that Officer Dunn will discuss numerous emails found in the Hop One Server and seized from e-mail accounts, including but not limited to rubensamvelich@yahoo.com and boookscafe@yahoo.com.  He will testify about subscriber records and information regarding account access about these and other accounts.

*e. Domain Registration*

In addition to discussing *Internet Tools* described above, Officer Dunn will explain what Whois data is, how regions of the world utilize different Whois formats, and what information various Whois record types contain.  While Dunn will provide testimony about Whois data, it is the government's position that the use of Whois data and the information provided by a Whois search would not be expert testimony, and therefore other witnesses may testify about running a Whois search and the results they received from their search.  As Officer Dunn testifies about queries involving Whois data, as discussed herein, he will opine that cybercriminals often falsify registration data to obscure their identities and techniques.

In connection with this testimony, he will discuss e-mails he viewed discussing the purchasing, registration and use of numerous websites, including but not limited to track2.name and bulba.cc.

3.  David Mills

Agent Mills will testify about the information discussed above in *Forensic Analysis*, as he will discuss his forensic review of Seleznev's personal laptop.   He will also reference topics discussed above in *Carding* to explain files he reviewed.  A copy of Agent Mills' report has been discovered.  Agent Mills will testify about files found on the laptop, including but not limited to images of Defendant and others connected to Defendant, a 2Pac advertisement, a "dump" file containing credit card numbers, images of websites and a credential file containing his login and passwords for numerous sites and services.  Mills will also testify about emails found on Defendant's laptop, which again we do not believe is expert testimony.  He will further testify that in his training and experience, he is familiar with Pacer, the national legal records system. He will explain what Pacer is, how an individual can register for it, query the system, and how images of Pacer queries were found on Defendant's laptop.

Agent Mills will testify that in his forensic review of Defendant's personal laptop, he found no evidence of malware or a remote connection that would have allowed for someone to insert evidence onto the laptop.  He will further state that computers cannot create substantive exhibits (in contrast to metadata, operating system logs and configuration files) which were found on the laptop.  For example, the computer would not have created the file containing the 2 million credit card numbers on its own, although it may have created files surrounding the file to help the operating system index it, find it, and create shortcuts to it.  He will state that system files created

8

following the seizure of the machine while it was in sleep mode and immediately before the forensic examination would not affect the reliability of the evidence he found.  Moreover, he will identify and opine about system files created following the seizure of the laptop that the computer would have created since it was not fully shutdown.  Moreover, he  will state that the use of an internet evidence finder to recreate internet evidence and browsing history, only utilizes data found within the computer, and does not supplement data from the internet.

Agent Mills will testify about various internet chat programs used to communicate online, including but not limited to Jabber, Miranda and PSI.  Each of these chat programs are open-source computer programs which utilize various internet protocols to allow for users to chat with others.  Agent Mills will explain how these programs work, and how users utilize these programs.  For example, Mills will testify that a user can select their own username and password.  He will also testify that the programs often create logs, which may preserve information such as the content of the communications, attachments shared and time stamps of the activities.

Moreover, Mills will speak about how the above information is captured and how he was able to verify the date and time of the logs.  Furthermore, based on his training and experience, he will provide his understanding of slang words used by the Defendant and others.  In providing this testimony, Mills will explain chats he found on Defendant's computer and the content discussed.

4. Michael Fischlin

Agent Fischlin participated in the forensic review of defendant's laptop and may testify about any of the items and topics described above for Agent Mills, as well as all matters listed in his supplemental reports discussing the evidence found on defendant's electronic items.  Agent Fischlin will also testify about his review of victim computers, including but not limited to Red Pepper Pizza.  In doing so, he will testify about the information discussed above in *Forensic Analysis*.  Due to the common malware found on devices, he will also reference information above in *Unauthorized Access* and *Hacking*.  Agent Fischlin will explain the process he used, his findings including malware found, how the malware worked and what information was extracted by the malware.  Within the discovery, you will find numerous reports for the victim locations he conducted forensic reviews of, and for each, his report outlines his findings.  Moreover, Agent

Fischlin's testimony will include a video demonstration of his review of a computer from Red Pepper Pizza and how the malware operated.

Agent Fischlin will also testify about his review of Defendant's iPhone.  Using forensic methods, as discussed above in *Forensic Analysis* and below for Officer Hansen's examination of cellular telephones, he will testify that his examination revealed pertinent programs, files, images, videos, logs and messages, including third party application text messages, such as WhatsApp, a popular internet-based encrypted chat program used throughout the world.

5.  Christopher Hansen

Officer Hansen will testify about information discussed above in *Forensic Analysis* in regards to his forensic review of data from Seleznev's cellular telephones and their accompanying items: Samsung Cellular Telephone with SIM card and a microSD card, and an iPhone.  Officer Hansen will explain how Seleznev's smartphone operates much like a computer, and how its operating system creates system files, preserves data, creates logs, executes programs, etc.  Officer Hansen will also discuss the processby which he reviewed the cellular telephone and the information his review revealed.  He will also describe the files he found, including but not limited to contact lists, preserved messages, images and logs of phone activities.  In discussing messages found, Officer Hansen will describe commonly used messaging applications, e.g., SMS text messages and iMessage, and how those applications can preserve messages and log their activity, including but not limited to information such as participants, phone numbers and date/time stamps.

Officer Hansen will explain that to conduct his review of the Samsung cellular telephone and its accompany items, he utilized numerous forensic tools, including but not limited to a Universal Forensic Extraction Device ("UFED") Touch and UFED Physical Analyzer, both products distributed by Cellbrite.  Generally speaking, UFED Touch is a device which extracts data from a cellular telephone, and UFED Physical Analyzer is computer software which assists in the review of the extracted data.  Officer Hansen will explain how he used forensic tools to extract the data from the telephone and its parts, and documented their contents.  Officer Hansen will also testify about his examination of data from the iPhone, which was extracted by Apple.  He will testify how he used forensic tools to review and catalogue the data, including messages, pictures and videos.  Similarly, Officer Hansen will discuss his forensic review of Defendant's

iPad and the files found on the iPad.  Reports of these forensic reviews have all been previously
provided.

6.  John Szydlik

Based on his training and experience, Agent Szydlik will testify about various payment
systems used by cybercriminals to transfer and launder their criminal proceeds.  In doing so, he
will reference information discussed above in *Payment Systems*.  Moreover, Agent Szydlik will
testify about Liberty Reserve, and that it was a Costa Rica-based digital currency service.  He
will further explain how it was shutdown by U.S. law enforcement following a criminal
investigation.  He will also explain why it was once used frequently by cyber criminals,
including the fact that due to its processes, it allowed cybercriminals to transfer and launder
money with little fear of being identified or detected.  He will further state that as part of the
criminal investigation of Liberty Reserve, that records were seized from Liberty Reserve.  He
will further discuss his experience with the seized records, and how he has queried them for
specific accounts on many occasions.  He will explain how the database is structured, and how
the records list account identifiers, registration information and transaction details.  His
testimony will also explain that he queried the database for Liberty Reserve accounts identified
from the Defendant, and how those records show transactions conducted by Defendant and/or
accounts under his control.

7.  Grayson Lenik

Grayson Lenik, a private digital forensic investigator, will testify about information
discussed above in *Forensic Analysis*, *Unauthorized Access* and *Hacking*.  Specifically, Lenik
will explain that his company was hired by numerous victim retailers, many of them pizza
restaurants, after they reported being hacked.  He will testify to the process they were hired, their
estimated fees, and what steps he took to assist the victim retailers.  He will also explain that he
and his team analyzed numerous computers from victim restaurants and found that the
restaurants' computers had similarities that led him to conclude that the intrusions were related.
He will testify about the forensics processes that were used and their findings.  Moreover, he will
explain that the similarities included, but were not limited to, point-of-sale software infected,
ports accessed, malware name and activity, IP addresses involved and data taken.

8. <u>Tim Chen</u>

Tim Chen, a corporate officer of Domain Tools, will testify about the operations of his company and the information they keep.  In doing so, he will reference information discussed above in *Internet Tools* and *Domain Registration*.  He will explain how his company collects domain name registration data, hosting history, screenshots of sites and other domain name system ("DNS") data.  He will further explain how his company provides Whois information, how they collect, maintain and update that information.  He will also explain to the jury how domains are registered.  He'll further explain why domain registration data provided by the registrant is not always truthful, and how registrants can use false identifiers or third-party companies to register on their behalf.  He'll further testify that he was asked by the government to conduct searches of relevant websites, including but not limited to, ncux.name, ncux.asia, ncux.tv, bulba.cc, track2.name, 2pac.cc and posdumps.com.  Chen will testify about the records his company possesses regarding those and other sites.

9. Conclusion

As indicated on numerous occasions above, while the process of extracting data from digital media and computers may require expertise, the government does not believe the observation of substantive files found, including but not limited to emails, images and text documents, constitutes expert testimony.  Likewise, the government does not believe the observations of witnesses based on browsing the internet or conducting activities on the internet, constitutes expert testimony.  Therefore, the government has not provided specific notice above about witnesses who will testify about screenshot captures or purchase made online.

//

//

//

//

//

//

//

//

//

The above, the attached documents and the previously discovered reports provides notice of the matters which the government intends expert witnesses to testify about.  We believe the above provides more than adequate notice pursuant to Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure and Rules 702, 703 and 705 of the Federal Rules of Evidence of expert testimony the government intends to elicit at trial.  If you have any questions, please do not hesitate to contact us.

Yours truly,

ANNETTE HAYES
United States Attorney

s/Norman Barbosa
NORMAN M. BARBOSA
Assistant United States Attorney

s/Seth Wilkinson
SETH WILKINSON
Assistant United States Attorney

s/Harold W. Chun
HAROLD W. CHUN
Trial Attorney, Criminal Division

**U.S. Department of Justice**

*United States Attorney*
*Western District of Washington*

| | |
|---|---|
| *Please reply to:*<br>*Norman M. Barbosa*<br>*Assistant United States Attorney*<br>*Direct Line: (206) 553-7970* | *700 Stewart Street, Suite 5220   Tel:  (206) 553-7970*<br>*Seattle WA, 98101-1271      Fax: (206) 553-2502*<br>*www.usdoj.gov/usao/waw* |

March 2, 2016

John Henry Browne and Emma Scanlan
108 South Washington Street
Suite 200
Seattle, WA 98104

     Re:    *United States v. Roman Seleznev,*
            *CR11-0070RAJ*

Dear John and Emma:

     Pursuant to Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure and Rules 702, 703 and 705 of the Federal Rules of Evidence, we are providing this supplemental notice of expert testimony.  Specifically, the United States provides notice for Matthew Geiger from Dell SecureWorks and U.S. Secret Service Special Agent John Szydlik.  The government has previously given notice for Agent Syzdlik on January 12, 2016 ("Prior Notice"), and provides this supplemental notice about other topics Agent Szydlik will testify about.  By providing the notice set forth below, the government does not concede that any of the specific referenced testimony constitutes expert testimony.  Rather, this notice is intended to be over-inclusive, and includes some material that does not constitute expert testimony, in the interest in providing the most complete notice possible.

     Matthew Geiger, whose qualifications are attached, will testify about malware used by Defendant to conduct his criminal scheme.  Geiger will testify that he tested several pieces of malware which were provided to him by the U.S. Secret Service.  As indicated in his previously discovered report at Bates CERT_REPORT_0000002-19, he will testify about the functions of defendant's malware, including but not limited to remote access, key logging, network sniffing and exfiltrating data..  He will explain how the malware was packaged and/or compressed, how they would have been installed, how they would have operated and interacted with computer and network activity, and how it would have sent information from the infected computer to another

1

internet-connected computer which was identified by the malware.  He will also explain the steps
he took to test the malware to recreate what its operations would have been on an infected
machine. He will further testify that some of the malware was designed to seek credit card
related information, such as the card number and expiration date.  In sum, Geiger will testify that
his analysis of the various malwares indicated they were designed to steal credit card and related
information from an infected machine, and provide it to another internet-based computer
controlled by Defendant.

Additionally, the government provides notice that Agent Syzdlik will testify about his
investigation of Defendant, his criminal activities, in particular connected to Defendant's site
2pac.cc.  As part of his testimony, he will explain that he made undercover purchases from
Defendant's 2pac.cc vending site.  While the investigation and purchase of cards from 2pac.cc
are not expert testimony, in giving his testimony, Agent Syzdlik will use and reference the
following topics previously discussed in the Prior Notice:  *Carding, Payment Systems, Internet
Tools* and *Domain Registration*.

The above, the attached documents and the previously discovered reports provide notice of
the matters which the government intends expert witnesses to testify about.  We believe the
above provides more than adequate notice pursuant to Rule 16(a)(1)(G) of the Federal Rules of
Criminal Procedure and Rules 702, 703 and 705 of the Federal Rules of Evidence of expert
testimony the government intends to elicit at trial.  If you have any questions, please do not
hesitate to contact us.

Yours truly,

ANNETTE HAYES
United States Attorney

s/Norman Barbosa
NORMAN M. BARBOSA
Assistant United States Attorney

s/Seth Wilkinson
SETH WILKINSON
Assistant United States Attorney

s/Harold W. Chun
HAROLD W. CHUN
Trial Attorney, Criminal Division

2

**U.S. Department of Justice**

*United States Attorney*
*Western District of Washington*

| | |
|---|---|
| *Please reply to:* | *700 Stewart Street, Suite 5220*   *Tel: (206) 553-7970* |
| *Norman M. Barbosa* | *Seattle WA, 98101-1271*   *Fax: (206) 553-2502* |
| *Assistant United States Attorney* | *www.usdoj.gov/usao/waw* |
| *Direct Line: (206) 553-7970* | |

April 27, 2016

Emma Scanlan
John Henry Browne

      Re:    *United States v. Roman Seleznev,*
                 *CR11-0070RAJ*

Dear Emma and John:

On January 12, 2016, the government provided notice of certain expert testimony it intends to offer at trial, including expert testimony by Special Agent Mike Fischlin. This will provide notice that, in addition to the topics described in the January 12 notice, Special Agent Fischlin's testimony will include discussion about the internet, its operations and how cyber criminals, including the defendant, utilize it to conduct their crimes, and therefore will involve issues and opinions previously discussed in Carding, Internet Operations, Internet Tools and Domain Registration.

In addition to the opinions described in those sections of the January 12 notice, Special Agent Fischlin will testify about the purposes of files knows as hosts files, and, in particular, that they are intended to map domain names to IP addresses. This may allow a user to more quickly connect to an internet site that the user frequently accesses. Special Agent Fischlin will testify that, to add an IP address mapping to a hosts file, the user must know the IP address of the site for to which the entry relates, and that such IP addresses are not always publicly available. Special Agent Fischlin will further testify that the IP address for the 2Pac.cc website was not publicly available, but would have been available to the administrator or registrant of the site.

                        Yours truly,

                        ANNETTE HAYES
                        United States Attorney

                        s/Norman Barbosa
                        NORMAN M. BARBOSA
                        Assistant United States Attorney

                        s/Seth Wilkinson

SETH WILKINSON
Assistant United States Attorney

s/Harold W. Chun
HAROLD W. CHUN
Trial Attorney, Criminal Division