1              UNITED STATES DISTRICT COURT

2            WESTERN DISTRICT OF WASHINGTON

3   ─────────────────────────────────────────────────

    UNITED STATES OF AMERICA,      )
4                                   )
               Plaintiff,          )   No. 2:11-cr-00070-RAJ
5                                   )
                                    )
6         vs.                       )   Seattle, WA
                                    )
7   ROMAN SELEZNEV,                 )
                                    )   Pretrial Conference
8              Defendant.          )   August 5, 2016

9   ─────────────────────────────────────────────────

10              VERBATIM REPORT OF PROCEEDINGS
         BEFORE THE HONORABLE JUDGE RICHARD A. JONES
11                UNITED STATES DISTRICT COURT
    ─────────────────────────────────────────────────
12

13  APPEARANCES:

14  FOR THE PLAINTIFF:    NORMAN McINTOSH BARBOSA
                          U.S. Attorney's Office
15                        700 Stewart Street, Suite 5220
                          Seattle, WA 98101-1271
16                        norman.barbosa@usdoj.gov

17                        C. SETH WILKINSON
                          U.S. Attorney's Office
18                        700 Stewart Street, Suite 5220
                          Seattle, WA 98101-1271
19                        seth.wilkinson@usdoj.gov

20                        HAROLD W. CHUN
                          U.S. Department of Justice
21                        1301 New York Avenue NW, Suite 600
                          Washington, DC 20005
22                        harold.chun@usdoj.gov

23

24

25

```
 1  FOR THE DEFENDANT:    EMMA SCANLAN
                          Law Office of John Henry Browne
 2                        108 South Washington Street, Suite 200
                          Seattle, WA 98104
 3                        emma@jhblawyer.com

 4                        JOHN HENRY BROWNE
                          Law Office of John Henry Browne
 5                        108 South Washington Street, Suite 200
                          Seattle, WA
 6                        johnhenry@jhblawyer.com

 7

 8

 9

10  Andrea Ramirez, CRR, RPR
    Official Court Reporter
11  United States District Court
    Western District of Washington
12  700 Stewart Street, Suite 17205
    Seattle, WA 98101
13  andrea_ramirez@wawd.uscourts.gov

14  Reported by stenotype, transcribed by computer

15

16

17

18

19

20

21

22

23

24

25
```

USA v. Seleznev, 8/5/16

1          THE CLERK:  We are here for our pretrial conference

2     in the matter of the United States vs. Roman Seleznev, Cause

3     Number CR11-70, assigned to this Court.

4        If counsel and the interpreters could please rise and make

5     your appearances for the record.

6          MR. WILKINSON:  Good morning, Your Honor.  Seth

7     Wilkinson, Norman Barbosa, and Harold Chun, for the United

8     States.

9          THE COURT:  Good morning, all of you.  Please be

10    seated.

11          MR. CHUN:  Good morning, Your Honor.

12          MR. BROWNE:  Good morning, Your Honor.  John Henry

13    Browne and Emma Scanlan, on behalf of Mr. Seleznev, together

14    with certified interpreters.

15          THE COURT:  Good morning, all of you.  Please be

16    seated.

17        And again, the same instruction to the interpreters.  If

18    either I or any of the lawyers are going too fast, please ask

19    us to slow down.  To get our attention, just raise your hand

20    and just wave it, since you'll get my attention, and I'll make

21    sure that either I do slow down, or I'll require the parties to

22    do the same.

23        Also, at the appropriate time, if you wish to exchange

24    interpreters, merely raise your hand again to get the Court's

25    attention so we can make sure that that transition takes place

USA v. Seleznev, 8/5/16

1   without any difficulty.

2        Is that acceptable and understood?

3             INTERPRETER:  Yes, Your Honor.

4             THE COURT:  All right.  Counsel, you should have in

5   your possession the Court's pretrial conference checklist.  The

6   Court has essentially ruled on all the motions and motions in

7   limine.

8        The one thing I do want to go through, which we will go

9   through, is the defendant's issues regarding the matters raised

10   in the government's trial brief.  So we'll get to those in just

11   a minute.  But before we get to that, I want to confirm that

12   each of the parties has in their possession a copy of the

13   pretrial conference checklist.

14        Counsel for the government?

15             MR. WILKINSON:  We do, Your Honor.

16             THE COURT:  Counsel for the defense?

17             MR. BROWNE:  Yes, Your Honor.

18             THE COURT:  All right.  Counsel, I want to verify,

19   first, the trial dates.  The trial will be going Monday through

20   Friday.  We're going to start on August 15th.  I'll modify the

21   19th.  That's going to be a full day of trial.  The conflict

22   that I previously had, there's no longer a conflict, so we'll

23   go Monday through Friday that first week of trial, on the 15th.

24   On the 26th, we'll go from 9:00 until noon.  And you can see

25   the other Friday, on September 2, is all day.  Otherwise, the

```
 1   trial will be 9:00 to 4:30, with the traditional breaks that we
 2   take.
 3       And the Court's expectation is that this case will be
 4   completed well in advance of September 14.  Because if it's not
 5   completed by then, the Court would have to take a break until
 6   the 20th of September.  I don't think the parties want to have
 7   that type of a gap in the trial.  Based upon your projections
 8   of what the trial estimated length is, based upon what I've
 9   seen of the number of witnesses that are expected to testify --
10   and I think that's somewhere around 29 or 30 witnesses -- that
11   there's more than enough time for this case to be completed
12   within that time period.
13           MR. WILKINSON:  Your Honor, I did want to advise the
14   Court, we'd initially projected about three weeks for our
15   case-in-chief.  And in putting things together, we've actually
16   found that we should be able to conclude substantially more
17   quickly than that.  And so it's our current expectation, and I
18   think it's a reasonable one, that we'll be resting sometime
19   towards the end of the second week of trial, which would allow
20   it to go to the jury during the third week.
21           THE COURT:  All right.  Thank you, Counsel.
22       All right.  Counsel, the Court's identified the trial
23   length and the witnesses.  And we'll come back to that, because
24   I want to get a realistic perspective from the government of
25   who you really plan on calling, because you've listed witnesses
```

USA v. Seleznev, 8/5/16

1    including some that aren't even available to testify.  So I

2    want to go through that so we have a proper assessment of who's

3    going to be here and who's not going to be here.

4         So, Counsel, if you'd now move to the trial briefs, I want

5    to clarify a few matters and get some additional information

6    that's not clear in the briefs, because obviously the

7    government filed their brief, and the defense filed its

8    challenges, and I want to address some of those concerns.

9         So with that, if you have your copies of the trial brief,

10    the first deals with the hearsay issues.  And I see that

11    beginning with the defendant contending that the government

12    needs to first identify each alleged statement that the

13    defendant or co-conspirator intends to offer at trial.  And

14    they suggest that the procedure should be that the Court should

15    determine preliminary admissibility by a preponderance of the

16    evidence, and that admissibility would require proof that the

17    defendant possessed the statement and affirmatively acted upon

18    it.

19         Now, anticipating what I think the government's response

20    might be -- and I'll hear from the defense first -- is, the

21    government presented the detail of the defendant's use of three

22    separate e-mail accounts and suggested, under ER 104, that

23    that's sufficient for the Court to be able to make its

24    preliminary admissibility determination by a preponderance of

25    the evidence.  I would note that there appears to be a fair

USA v. Seleznev, 8/5/16

```
1    amount of detail in the preliminary portion of the government's
2    brief.  As a matter of fact, the government brief goes from
3    Page 1 to 21 detailing the extensive nature of that
4    communication.
5        So my question first to the defense is, why is that not
6    sufficient, and why does the Court need to undertake the
7    additional steps that you've requested or asked of the Court?
8    Let me hear from the government.
9            MR. BROWNE:  Did you say the defense, Your Honor, or
10   the government?
11           THE COURT:  Defense, I'm sorry.
12           MS. SCANLAN:  Your Honor, I think the e-mail accounts
13   are a good example, in that they contain communications by more
14   people, of course, than just the e-mails that are attributed to
15   Mr. Seleznev, by the government, as the alleged owner of those
16   e-mail accounts.  They include correspondence from other
17   people, other companies.
18       And so the defense motion is really for the government to
19   identify, in those streams of communications, what
20   communications are they alleging are adoptive admissions, which
21   communications are they alleging are statements of the
22   co-conspirator.  It's not so much the actual communications
23   sent by the account holder.  It's all of the back-and-forth in
24   those e-mails.  Which part of the -- what is the hearsay
25   exception for the person who sent the e-mail to the account
```

USA v. Seleznev, 8/5/16

1   holder, et cetera?

2       In addition, I would note that the government has said, in

3   terms of adoptive admissions or admissions by a party opponent

4   directly, that it's e-mail accounts, online chats, and other

5   sources.  And so what we're looking for is the scope of what

6   those statements are.  So it is true that the online chats are

7   identified in some of the exhibits, but there's also voluminous

8   amounts of online chats that don't happen to be in the exhibit.

9   And there's really no answering now to the question of which

10  part of that they're trying to attribute to Mr. Seleznev and

11  which part of that they think is admissible as an admission of

12  a party opponent.

13      THE COURT:  Well, let me ask you a question, Counsel.

14      The way the government's alleged the claim, then does it

15  make a real difference if it's either made by the defendant or

16  by a co- -- not charged in the conspiracy -- by a co-schemer,

17  as the government's characterized it?

18      MS. SCANLAN:  I think it makes a difference.  Because

19  it's one thing to allege almost as a black-and-white issue

20  that -- the government has alleged that he's the account

21  holder, and thus the person writing these e-mails.  It's

22  another thing to say that of these hundred people corresponding

23  with that account, which one is a co-conspirator?  I mean, one

24  person may be.  The other company, there may not be a basis

25  under the hearsay exception for the admission of that e-mail.

USA v. Seleznev, 8/5/16

1   So I think there is a difference, because the speaker is

2   different.  So we don't know who the speakers are, at this

3   point, that they're alleging should be admitted as an exception

4   to the hearsay rule.

5           THE COURT:  All right.  Thank you, Counsel.

6       Let me hear from the government.

7           MR. WILKINSON:  Your Honor, there are really three

8   categories of party admissions here, e-mails, chats, and one

9   oral statement by the defendant.

10          THE COURT:  Is that the "boss" reference?

11          MR. WILKINSON:  No, it's not, Your Honor.  It was a

12  statement made by the defendant at the time he was arrested.

13  And the statement was, when he was presented with the

14  indictment, he responded to the arresting officer by making a

15  statement that the United States does not have an extradition

16  treaty with the Maldives.  And that's the one oral statement

17  that we intend to offer.  And it's the only statement we intend

18  to offer by the defendant that is not contained in the

19  exhibits.  So that's one category.

20      The second category is the e-mails.  Within the e-mails,

21  there are two issues.  There are e-mails sent by the account

22  and e-mails received by the account.  It sounds like we don't

23  have a dispute that the Court can make a finding by a

24  preponderance of the evidence that the defendant was the owner

25  of the account, and that therefore everything sent by the

USA v. Seleznev, 8/5/16

1    account should be treated as a party admission.

2         As far as e-mails received by the account, I would have to

3    go through them again.  I think there are very few e-mails, if

4    any, that we would be offering as party admissions that are

5    received.  I think most of them are offered for things like

6    providing notice of certain events to the defendant, facts that

7    receipts for servers, for example, were sent to those accounts.

8    And so those are not generally going to be offered as party

9    admissions.  There may be some in there, but generally not.

10   And I think that's something that the Court could deal with on

11   an exhibit-by-exhibit basis as -- at trial, because there will

12   not be very many of them.

13        The last issue, then, is the chats.  Counsel expressed

14   some concern that there might be chats that we seek to offer

15   that aren't in our exhibits.  And that won't be the case.

16   We'll only be offering chats that are actually listed as

17   exhibits.  I think all or close to all of those chats came off

18   of the defendant's laptop.  And so I think the Court can make,

19   with respect to those chats as well, a 104 finding that by a

20   preponderance of the evidence those are party admissions that

21   can be attributed to the defendant.

22              THE COURT:  Okay.

23              MR. WILKINSON:  Thank you, Your Honor.

24              THE COURT:  All right.  If there's nothing further,

25   then, the Court makes the following determination.

USA v. Seleznev, 8/5/16

1     The government has now indicated they only plan on

2  offering one statement by the defendant.  So I think, one, it

3  provides that notice that the defense is requesting.  And that

4  deals with the extradition treaty.  So I think that satisfies

5  the concern that no other offerings will be made by the

6  government.

7     As to e-mails sent by the defendant, the Court is

8  satisfied that the government has established a sufficient

9  foundation, particularly as it relates to what's included in

10  the trial brief, to demonstrate that the defendant is the owner

11  of accounts, and that those can be treated as party admissions.

12     Next, as to those e-mails that were received, the

13  government has offered to identify specifically which specific

14  e-mails received that the government is going to utilize and

15  offer.  The Court is satisfied that that's a sufficient

16  presentment to the defense of the precise nature of what's

17  going to be provided.  The Court will treat that as a

18  sufficient -- the Court treats that as sufficiently made to the

19  defense so that no further action on the Court's part is

20  required.  If there's an additional finding that needs to be

21  made under 104, the Court believes that based upon what's been

22  provided in the government's trial brief, that that's adequate

23  at this point in time.

24     As to the chats, the government's narrowed their offering

25  to just those chats that are listed in the exhibit.  And if

USA v. Seleznev, 8/5/16

 1    that's the case, then the Court's going to have to make that

 2    determination as the exhibits are being offered during the

 3    course of trial.  But at this point in time, there's no basis

 4    to exclude the same.

 5        So now we'll go to the next topic, Counsel.

 6            MR. BROWNE:  Your Honor, may I just have a moment to

 7    confer with counsel, just for a second?

 8            THE COURT:  You may.

 9            MR. BROWNE:  Your Honor, may I address the Court

10    briefly on something?

11            THE COURT:  On this same category, Counsel?

12            MR. BROWNE:  Yes.  It was just brought up by

13    something you said.

14            THE COURT:  Okay.

15            MR. BROWNE:  Thank you.

16        Your Honor, frankly, I'm a little surprised the government

17    wants to elicit testimony supposedly that Mr. Seleznev said at

18    the time of his -- I guess for lack of a better term we'll use

19    "detention" in the Maldives -- that they want to elicit that he

20    says, "There's no extradition treaty with the Maldives," which

21    seems to raise the whole issue of his being kidnapped from the

22    Maldives, basically, which you have ruled is not admissible.

23    We were not aware that the government was going to elicit this

24    alleged oral statement, and I'm concerned that it -- maybe we

25    could just deal with it as the trial progresses, but it seems

1    to me that it could open the door to that ruling.

2        The other -- and it's also tied in with the second point

3    is, I don't believe there's been a hearing of any kind to

4    determine that the statement, alleged statement, Mr. Seleznev

5    made was voluntary, knowing, and admissible.

6            THE COURT:  I'm going to answer that question later,

7    Counsel.  That comes up in another portion --

8            MR. BROWNE:  Thank you.

9            THE COURT:  -- of the brief that you raised.  So

10   we'll get to that one.

11       Counsel for the government, do you want to respond to

12   that?

13           MR. WILKINSON:  Two points, Your Honor.  As far as

14   notice to the defense, we did disclose in our trial brief that

15   we intended to be offering this statement, so I don't know why

16   it comes as a surprise.  There also was testimony in the

17   earlier evidentiary hearing about this statement.  So it's been

18   disclosed; the circumstances surrounding the statement have

19   been disclosed.

20       The reason we intend to offer it is to show the

21   defendant's knowledge and consciousness of guilt.  I think it's

22   extremely unusual for a Russian citizen to have -- who's

23   vacationing in the Maldives to have knowledge of whether

24   another country, the United States, and the Maldives would have

25   an extradition treaty.  And the fact that he disclosed that

USA v. Seleznev, 8/5/16

| | |
|---|---|
| 1 | that's something that he's researched and concerned about is |
| 2 | strong evidence of guilt.  It does not open the door to the |
| 3 | kidnapping issue.  It doesn't ask the jury to make any kind of |
| 4 | determination about the extradition laws.  It only goes to the |
| 5 | issue of the defendant's knowledge.  So I don't think it opens |
| 6 | the door to that at all, Your Honor. |
| 7 | THE COURT:  Anything further on that, Counsel? |
| 8 | MR. BROWNE:  No, Your Honor. |
| 9 | THE COURT:  All right.  Well, Counsel, the Court |
| 10 | doesn't believe at this point in time, based upon how the |
| 11 | evidence is going to come in, from what I know, that that's |
| 12 | sufficient demonstration that the door's opened wide enough to |
| 13 | go into this whole issue of kidnapping.  If you believe it has |
| 14 | been opened adequately, you can certainly raise it outside the |
| 15 | presence of the jury, and we can revisit that question at that |
| 16 | point in time.  But for pretrial purposes, that statement will |
| 17 | be admitted. |
| 18 | Now, the defendant has gone through several iterations of |
| 19 | counsel, so you may not have been present or may not have been |
| 20 | counsel when we had some of the motions and the hearing and |
| 21 | testimony as it related to the voluntariness of the statements, |
| 22 | or the statements that were made by the defendant, or what the |
| 23 | circumstances were surrounding his arrest. |
| 24 | So some of that's water under the bridge, Counsel.  And |
| 25 | again, you'd have to refresh my memory, because I've gone |

USA v. Seleznev, 8/5/16

1   through, I think, three or four sets of lawyers, so I can't

2   tell who was here at which point in time to recall the

3   specifics of what you may be privy to or not.

4            MR. BROWNE:  Thank you, Your Honor.  We'll do that.

5            THE COURT:  Next, Counsel, is the business records

6   and Rule 902 certification.  I don't think I need to go back

7   through and read to the parties what the requirements are under

8   803(6).  I think that's pretty standard and common knowledge

9   for business records activity.

10       But what I do want to know and hear from the government

11  is, there are a host of certifications which are attached to

12  the defense trial memorandum, some of which raise questions

13  regarding the compliance with the business records exception.

14  Now, one of the questions is that the only requirement is that

15  the business record is certified by one with knowledge of the

16  system that produced the records, and the certificate says the

17  evidence meets the three requirements under 803(6), then the

18  government meets its foundational requirements.  I think that's

19  a standard rule.

20       But what I want to hear is, as I go through them, for

21  example, under the Yahoo! account, the witness says he has

22  personal knowledge of the facts in the certification.  He knows

23  the user profile, he knows the data and the time recorded, and

24  the contents in the Yahoo! server recorded automatically.

25       So before I get to the government, under 803(6), what else

USA v. Seleznev, 8/5/16

1   is required, Counsel, for the Yahoo! account?  What's missing?

2   And I have it before me.  So if you'd just let me know what's

3   missing and what's not, I can perhaps require the government to

4   provide a further clarification.

5       And I think we're talking about Mr. LaChance; correct?  Is

6   that the one you're referring to, Counsel?

7           MS. SCANLAN:  Yes, Your Honor.

8           THE COURT:  And it's 5.1A.

9       And while you're looking at that, Counsel, look at the

10  *Vinhnee* case.  That's V-I-N-H-N-E-E.  And I don't think this is

11  a case that we have the facts the same as *Vinhnee*.  That's a

12  case where the custodian knew little about the computer

13  hardware and the software.  And I don't think that based upon

14  the certification before the Court that that's within the case.

15  So if you could focus on those two questions, that's helpful

16  for the Court.

17          MS. SCANLAN:  Your Honor, I think the issue is, we

18  don't know from the certification what Mr. LaChance does know

19  about the storage methodology of the Yahoo! records.  So in

20  that sense, it's a similar issue in that it's just simply not

21  identified what the basis of his knowledge is.  I mean, he can

22  say, and he is saying, they're stored by a particular system,

23  but not what his familiarity is with the system or how reliable

24  the system is.  That would be the defense issue regarding

25  Yahoo!.

```
 1              THE COURT:  Well -- okay.  That's it, Counsel?

 2              MS. SCANLAN:  Yes, Your Honor.

 3              THE COURT:  Counsel?

 4              MR. WILKINSON:  Your Honor, this is an issue that we

 5     submitted a brief on yesterday, and that was because the

 6     response to our trial brief came in the night before.

 7          As we described in the brief, this rule sets up really a

 8     two-step process where you need someone who certifies that

 9     they're a record custodian -- I'm talking about Rule 902 right

10     now.  It says that they have to certify that they're a record

11     custodian and that these conditions are met.  And under the

12     rule, once the proponent of the evidence creates that prima

13     facie showing by submitting a declaration, the burden shifts to

14     the defendant to show that there is reason to doubt that

15     declaration or the trustworthiness of the evidence.  And we

16     cite case authority for that in the brief that we sent

17     yesterday.

18          So here, in the case of all of the 902s that the defendant

19     has identified -- and I'd note that this is the 902 form that

20     is used in every criminal trial in this district, and the

21     records are routinely submitted based on these declarations --

22     we have someone swearing under penalty of perjury that they are

23     a records custodian, and they're swearing under penalty of

24     perjury that all of these conditions are met.  The defense

25     hasn't identified any reason to be -- to doubt the authenticity
```

USA v. Seleznev, 8/5/16

1    of these, but just to make this simple objection.

2        The defense cites this *Vinhnee* bankruptcy appeals court

3    opinion, which we also discuss in our brief.  Two things about

4    that opinion; the opinion -- it's cited for the proposition

5    that electronic evidence is somehow different, and that it

6    should be held to a higher standard.  It's directly

7    inconsistent with Ninth Circuit law.  We cite a case in our

8    response yesterday, called the *U-Haul* decision, which says that

9    electronic evidence is treated exactly like other evidence

10   under the business records rules.  And so a 902 certification

11   of electronic evidence applies here, just as it would anywhere

12   else.

13       The other thing about the *Vinhnee* decision is that even --

14   and it's not controlling.  It's the bankruptcy appellate panel.

15   But it notes that it's -- it affirmed the trial court -- or the

16   bankruptcy court, who had declined to let these records in, but

17   it said it was only doing so because of the broad discretion

18   that is given to a court and to these matters, and actually

19   noted -- I think it characterized the bankruptcy -- underlying

20   bankruptcy court as being finnicky in declining to admit these,

21   but said that given the very broad discretion that a trial

22   court has, it would affirm that.  So *Vinhnee* doesn't stand for

23   the proposition that there is any kind of elevated standard for

24   electronic evidence.

25       And the last thing about *Vinhnee* is that, as the Court

USA v. Seleznev, 8/5/16

```
1   noted, there were findings in that court that there was reason
2   to question that witness's knowledge, and that there was no
3   basis provided to show that he could testify to these facts.
4   As I said, in this case, we have witnesses swearing under
5   penalty of perjury that they're a records custodian, and that
6   these conditions are present.
7       Thank you.
8           THE COURT:  Anything further on that, Counsel?
9           MS. SCANLAN:  No, Your Honor.
10          THE COURT:  Objection is overruled, and it's
11  admitted.
12      Counsel for the government, before you sit down, I wanted
13  to talk to you about Granbury.  I know most of your response to
14  the objections is a repeat of what you just argued to the
15  Court.
16      But in Granbury, can you point where the record shows what
17  he claims and -- as far as it was maintained as represented,
18  for example, who was hacked?  Because this is all handwritten
19  in, not that that makes a difference, but he makes a statement,
20  for example --
21          MR. WILKINSON:  Yes, Your Honor.
22      So this certification was attached to a list of the
23  companies that were hacked, which is the exhibit we intend to
24  offer.  So the exhibit itself will identify -- I think is the
25  answer to the Court's question, which businesses were hacked by
```

USA v. Seleznev, 8/5/16

```
1    this malware.

2            THE COURT:  Okay.

3            MR. WILKINSON:  If I'm following the Court's

4    question.

5            THE COURT:  All right.  Let me ask you questions if I

6    do have -- the same thing on the PayPal?

7            MR. WILKINSON:  Yes.

8            THE COURT:  And eBay?

9            MR. WILKINSON:  So these records -- the subpoena

10   requested all of PayPal and eBay's records relating to a single

11   eBay account, one that was taken out in the defendant's name,

12   with the defendant's date of birth.  And in response, PayPal

13   produced records listing basically the account information

14   associated with that.  And so that's what the exhibit will be.

15   It will list the identifiers that the owner of the account had

16   provided when he opened the account, as well as, I believe,

17   some transactional history.

18           THE COURT:  And on I think it's Nusphere,

19   N-U-S-P-H-E-R-E, where does it indicate that was kept in the

20   regular course of business?

21           MR. WILKINSON:  The Nusphere records, Your Honor, I

22   believe we are -- actually, if I could confer with counsel for

23   a minute.

24       So, Your Honor, my understanding of the defense objection

25   to the Nusphere records was that it was not based on the 902,
```

USA v. Seleznev, 8/5/16

1    but was based on the content of the records.  My recollection

2    of that 902 is that it's the same 902 that we've offered with

3    Granbury, although it's possible I'm mistaken about that.

4        As far as the defendant's objections to the substance of

5    the records, we've gone back and looked at those records, and

6    we're actually going to reduce the exhibit to remove some of

7    the -- or remove what we think is the portion of the records

8    that the defendants are objecting to.  So it's our hope that

9    that will cure the objection.

10            THE COURT:  As to that particular objection, Counsel,

11   either counsel for defense, if that still continues to be a

12   problem as it relates to Nusphere, with the reduction, let the

13   Court know next Monday or before that witness is going to

14   testify.

15            MS. SCANLAN:  Yes, Your Honor.

16            THE COURT:  All right.  And one last is -- and under

17   Black Lotus, there is a challenge that it wasn't under a

18   business obligation to maintain the records.

19            MR. WILKINSON:  And that, Your Honor, is the same

20   situation as the Nusphere.  I think what the defense is arguing

21   is that there were some e-mails included within that exhibit.

22   And they're actually e-mails that are also included within --

23   that we actually got from the user's account itself.  So those

24   will be offered that way.  But we're going to remove the

25   ones -- the e-mails that I think the defense is objecting to.

USA v. Seleznev, 8/5/16

```
1            THE COURT:  All right.  Counsel, once that reduction

2    is made, if it presents a problem for the defense, bring it

3    back to the Court's attention, and we'll revisit it at that

4    point in time.

5            MS. SCANLAN:  Yes, Your Honor.

6            THE COURT:  Any other objections or argument by the

7    defense as to any other of the business records offerings?

8            MS. SCANLAN:  Your Honor, the defense has no further

9    argument on that issue.

10           THE COURT:  All right, then.  The Court overrules the

11   objections as it relates to the business records and Rule 902

12   certifications.  Based upon the government's representations of

13   the reductions in terms of what you're going to offer, as well

14   as the additional argument provided to the Court, the Court's

15   satisfied that the certifications, as presented, are properly

16   admissible.

17        Next, Counsel, we'll go to the issue about the defendant's

18   passport.

19        Now, one question I have for the defense is, you point out

20   that there's no case on adoptive admissions.  And one of the

21   questions I have is, my understanding of the facts and

22   circumstances, this was Mr. Seleznev's passport that he

23   presented as his identification.  And wouldn't that be

24   considered an out-of-court statement that's attributable to a

25   party by express or implied adoption?  And if the defendant
```

USA v. Seleznev, 8/5/16

1    passes off a passport and holds it out as his, doesn't that fit

2    within the specific parameters of being something that he

3    adopted as his?

4        That's not to say that there aren't other bases,

5    independent of that, Counsel.  But it seems to me the one

6    that's the most obvious, even absent any case authority, would

7    be an adoptive admission.

8            MS. SCANLAN:  Your Honor, I think that may be true as

9    far as the international passport is concerned.  And I believe

10   we could have been more clear on the issue.  The government is

11   offering two different passports.  One is international, one is

12   internal.  I don't think that argument applies correctly to the

13   internal passport.

14           THE COURT:  Okay.  Any other argument on the

15   passport, Counsel?

16           MS. SCANLAN:  I'm sorry?

17           THE COURT:  Any other argument on the passport?

18           MS. SCANLAN:  No, Your Honor.

19           THE COURT:  All right.  Let me hear from the

20   government.

21           MR. WILKINSON:  Your Honor, on the internal passport,

22   the first point I'd like to make is that both passports were

23   actually signed by the defendant.  So I think that his act of

24   signing them qualifies them as an adoptive admission,

25   independent of whether they were presented to the Maldivian

USA v. Seleznev, 8/5/16

 1   authorities.

 2         Second, as far as the internal passport, I believe it's

 3   true that that one was not presented to the Maldivian

 4   authorities, but the records -- but it was something that he

 5   was carrying.  And so the fact that he was possessing it I

 6   believe makes it an admission as well.  I believe there are

 7   also records in there showing that it had been stamped at

 8   various times, which would show that he had presented it,

 9   perhaps internally, at other points in time.  The fact that

10   he's carrying it as ID showed -- and the fact that he's signed

11   it makes that an admission.

12         And then the last point I'd make is that we do -- in

13   addition to the adoptive admission rule, which I think is right

14   on here, we also cite a Ninth Circuit opinion.  I believe it's

15   the *Brown* opinion, that says that a passport also comes within

16   the residual hearsay exception, which I know is one that we're

17   always a little wary to apply.  But as the *Brown* decision

18   explains, it fits quite neatly here.  And since we have a Ninth

19   Circuit case directly on point, I think the Court would be safe

20   in applying either of those two exceptions.

21              THE COURT:  All right.  Counsel?

22              MS. SCANLAN:  Can I say something?

23              THE COURT:  Yes.

24              MS. SCANLAN:  I'd just indicate, as to possession

25   being an adoptive admission, I think it's fairly clear in the

```
 1    circuit that we're running under what's called the
 2    "possession-plus test," so that possession of a statement alone
 3    is not an adoptive admission.  It has to be either offered as
 4    an adoption of the truth of the statement in some way -- so the
 5    international passport in this case, ironically, is an example
 6    of that.  But the very fact of possession is not enough to make
 7    the internal document an adoptive admission.
 8        I would also indicate that I'm not sure how the government
 9    would prove that Mr. Seleznev is the person who signed either
10    one of these documents.  The fact that they contained a
11    signature and a name doesn't necessarily make them
12    self-authenticating.
13            THE COURT:  Thank you, Counsel.
14        Anything further on that, Counsel?
15            MR. WILKINSON:  Only that in terms of proving
16    signature, the Court only has to make that finding by a
17    preponderance of the evidence.  And so the fact that he was
18    carrying a document with his own signature I think would allow
19    the Court to make that finding.
20            THE COURT:  All right.  Counsel, the reason the Court
21    prefaced its remarks regarding the adoptive admission component
22    for the admissibility of the statement is because that concept
23    looks to be expressed or applied adoption.  And I think both
24    passports clearly are within that confine.  The internal
25    passport was one where the defendant carried it.  He had
```

USA v. Seleznev, 8/5/16

1    another passport that was not limited to internal

2    circumstances.  That was one that had a variety of different

3    stamps on it.  And it also appears that the *Brown* case would

4    also further clarify the admissibility.  So for those two

5    reasons, the objection to the passports, that includes internal

6    and international, are both overruled, and they're admitted.

7         Next, Counsel, is the issue regarding the statements not

8    offered for their truth.

9         Now, I'll preface my remarks that, oftentimes, prosecutors

10   will use a general rubric, "It's not offered for truth," and

11   then the exact opposite happens.  That's exactly what's being

12   done; it's offered for the truth of the statement.  So I've got

13   grave concerns about that.

14        Now, counsel for the defense has identified several

15   objections regarding what's not offered for the truth.  This is

16   where the question comes up about the custodial statement.  I'm

17   looking now at Page 9 of the response to the government's trial

18   brief.  Again, I've got concerns, because I think that some of

19   that may have been answered with the testimony that was

20   provided to the Court as to what took place regarding *Miranda*

21   and what didn't take place.

22        But in that context, let me hear from the government.

23        MR. WILKINSON:  Does the Court -- is the Court asking

24   about the *Miranda* issue on the oral statement at the time of

25   his apprehension?

USA v. Seleznev, 8/5/16

1              THE COURT:  Yes.

2              MR. WILKINSON:  Okay.

3              THE COURT:  And also the statement about co-schemers

4    making the statement about that their -- his boss had been in a

5    car accident.

6              MR. WILKINSON:  Understood.

7              THE COURT:  That was included as well.

8              MR. WILKINSON:  Thank you, Your Honor.

9         The oral statement at the time of the arrest does not

10   raise a *Miranda* issue, because it was not a statement made in

11   response to interrogation.  And if you look at the cases cited

12   in the defendant's response to our trial brief, those cases all

13   talk about statements made in response to interrogation.  The

14   evidence at trial will establish, and I believe the evidence at

15   the evidentiary hearing also established, although not a

16   hundred percent sure how clear it came out then, but at trial

17   it will establish that this is something that the defendant

18   blurted out; that he was presented with the indictment and

19   arrest warrant, was not asked a single question, and said,

20   "Wait a minute.  There's no extradition treaty."  So it's not a

21   statement made in response to interrogation, and *Miranda* is not

22   implicated.

23        As far as the statement about the boss getting in a car

24   accident, so just to put a little context about this -- around

25   this, the defendant was arrested in early July, and a month

USA v. Seleznev, 8/5/16

1   later -- and there was questions on the website about where are

2   the updates and why have things sort of slowed down.  And then

3   this August there was a posting made that said, "We're sorry

4   about the lack of updates and the lack of support.  Our boss

5   got in a car accident, and so that's the reason for that."

6       Plainly -- and I understand the Court's concern about

7   saying you're not offering something for the truth when you

8   really are.  This is not one of those cases.  In fact, it's a

9   statement offered for its falsity.  We're not contending that

10  the boss was in a car accident.  We are contending that this

11  was an effort to explain falsely the owner's distance and the

12  fact that he wasn't participating in the operation anymore.  I

13  think this is a clear case where it's not offered for its

14  truth.

15          THE COURT:  All right.  Counsel, any further

16  argument?

17          MS. SCANLAN:  Your Honor, as to the statement that

18  was allegedly made at the time Mr. Seleznev was apprehended, I

19  would just ask the Court to reserve on that based on what

20  foundation is laid during the trial.  I will admit that I may

21  have read the transcript of the evidentiary hearing, but I

22  don't recall the specific circumstances, so we need to go back

23  and look at that in terms of what has already been testified to

24  regarding the circumstances of that statement.

25      As for the boss comment, that statement is offered to show

USA v. Seleznev, 8/5/16

1    that Mr. Seleznev is the boss.  Now, they can parse that and

2    say, "But we're only" -- "That's the only part that's offered

3    for the truth.  The other part is offered because it's not

4    true, because obviously he wasn't in a car accident."  The

5    whole purpose of the statement is to say Mr. Seleznev is the

6    boss referred to in this comment.  So it's offered for the

7    truth of the statement about the boss, and that that will be

8    connected to Mr. Seleznev.

9           THE COURT:  All right.  This is what the Court's

10   going to do on this.

11       One, the Court will reserve ruling.  I'll certainly give

12   counsel an additional opportunity between now and trial if you

13   need to go back and look at the circumstance of the statement.

14   It's my recollection that this was, in fact, a volunteered

15   statement by your client at the time that he was confronted by

16   Maldivian authorities.

17       Second and beyond that, I think the proper ruling is for

18   the Court to allow the government to present that type of

19   testimony.  But before that testimony is offered, I'm going to

20   give the jury a limiting instruction how they're to receive

21   that evidence.  I'll direct counsel for the defense to provide

22   to the Court a limiting instruction that I can communicate to

23   the jury.

24       And if at any point in time, Counsel, during the course of

25   the government's case-in-chief, the government's offering any

USA v. Seleznev, 8/5/16

1   statement that you believe requires or necessitates that type

2   of instruction to the jury, I think that would cure any concern

3   about the attribution of the defendant being the boss as being

4   offered for its truth and curtail its -- any prejudicial impact

5   that it may have.

6        So, Counsel, the burden is upon the defense to provide the

7   Court that instruction.  Without the instruction, then the

8   testimony comes in.  So I'm putting the burden upon you to give

9   it to me, and I'll certainly read it to the jury; okay?

10             MS. SCANLAN:  Yes, Your Honor.

11             THE COURT:  Next, Counsel, is the objection to the

12   government's expert testimony.  And I think much of the

13   objection it goes through is the cumulative nature and the

14   crossover nature of testimony.  The defense has put together a

15   very attractive chart that goes through and lists all the names

16   of the witnesses and all the repetitive testimony that they

17   believe is going to take place.

18        Let me ask counsel for the defense, wouldn't the better

19   approach be, as opposed to the Court ruling in a vacuum, to

20   hear a witness testify?  And if it appears that there is

21   repetitive testimony by other witnesses, or successive

22   witnesses, for the Court to rule at that time?  Because then I

23   have context around what the prior witness said to see if

24   there's actually duplication of the testimony.

25             MS. SCANLAN:  Yes, Your Honor.

1   The defense raises this issue actually precisely for that

2   purpose, to draw the Court's attention to what appears to be

3   very duplicitous categories of testimony.  And of course the

4   prejudice to the defense is that the more law enforcement

5   agents who get up and say the same thing about carding, the

6   more convincing that testimony becomes.  And so we would ask

7   the Court do exactly that, which is sort of reserve on this

8   issue of the repetitive nature of the expert testimony, and see

9   if they start repeating themselves.

10          THE COURT:  All right.  Well, that's what the Court's

11  going to do.  So unless the government wants to weigh in

12  additionally, the Court plans on listening to the testimony.  I

13  now have this convenient chart that I can check to see if there

14  is repetitive testimony of these witnesses.  And if it is, then

15  the Court will certainly entertain an objection as to any

16  repetitive nature.

17          And I hope that the government would take message from the

18  Court.  You have a number of witnesses who are going to

19  testify.  You have an abundance of expert witnesses.  And we

20  certainly don't need to hear from all of them testifying to the

21  exact same thing; okay?

22          MR. WILKINSON:  Understood, Your Honor.

23          THE COURT:  With that, Counsel, I think the Court has

24  addressed all of the objections which were raised in response

25  to the government's trial brief.

USA v. Seleznev, 8/5/16

1      Would the defense agree?

2              MS. SCANLAN:  Yes, Your Honor.

3              THE COURT:  And the defense didn't file any specific

4      objections -- sorry.  The defendant's trial brief was very

5      specific and straightforward.  There weren't any additional

6      issues to be raised.  And the Court will now proceed to the

7      balance of the pretrial conference, unless there's something

8      else to take up.

9              MR. WILKINSON:  No, Your Honor, not from our

10     perspective.

11             MS. SCANLAN:  Your Honor, if the balance of the

12     conference is going to talk about the Court's general voir dire

13     and the preliminary instructions --

14             THE COURT:  Procedure.

15             MS. SCANLAN:  Okay.  I have comments about that.

16             THE COURT:  Okay.  Then we'll get to that, Counsel.

17         All right.  I now want to make the affirmative statement,

18     it's my understanding the Court has addressed all of the

19     pending motions.  The Court has addressed each and every one of

20     the specific objections which have been raised by the parties,

21     and we're now prepared to proceed to the procedural component

22     of getting ready for trial starting on the 15th.

23         So first is the Court's general voir dire.  I take it that

24     both parties have received the Court's voir dire.

25             Counsel for the government?

USA v. Seleznev, 8/5/16

```
 1              MR. WILKINSON:  Yes, Your Honor.

 2              THE COURT:  Counsel for the defense?

 3              MS. SCANLAN:  Yes, Your Honor.

 4              THE COURT:  And, Counsel, you'll note that the Court

 5    was more than generous in terms of trying to allow a lot of the

 6    information that the parties have asked of the Court so it

 7    reduces any concern about what's not in front of the jury.

 8         Any issue regarding the general voir dire that's been

 9    confirmed by the Court?

10              MS. SCANLAN:  Yes, Your Honor.  If I may?

11              THE COURT:  All right.  Let me hear it.  Just one

12    second.

13         All right, Counsel.

14              MS. SCANLAN:  Your Honor, I only have one comment

15    about the general voir dire.

16         Questions 20 through 22 --

17              THE COURT:  Just one second.  Let me catch up with

18    you, Counsel.

19         Twenty-one through 22?

20              MS. SCANLAN:  I'm sorry, 20 through 22, Your Honor --

21              THE COURT:  Okay.

22              MS. SCANLAN:  -- have to do with typical questions

23    regarding whether people know criminal defense attorneys.

24              THE COURT:  Yes.

25              MS. SCANLAN:  I didn't see in here the corollary
```

USA v. Seleznev, 8/5/16

 1   instruction for knowing prosecutors.  So the defense would just

 2   request that the Court put in these same three questions in

 3   terms of how people know prosecuting attorneys.

 4          THE COURT:  Let me ask you a question, Counsel.

 5       The Court asks, in Question Number 5 -- and I know this

 6   isn't as expansive as 20 through 22.  Question Number 5 asks,

 7   "Does anyone know the Assistant United States Attorneys or

 8   anyone in the United States Attorney's Office?"

 9       Do you think we should be more expansive than that,

10   Counsel?

11          MS. SCANLAN:  Yes, Your Honor.  The defense requests

12   that it would be the same set of questions as to prosecutors,

13   because I don't think -- what that question is getting at is

14   not really limited just to federal prosecutors.  I think the

15   question is equally applicable if you're best friends with a

16   King County deputy prosecuting attorney, that's something we'd

17   want to know.

18          THE COURT:  All right.  So, Counsel, let me hear the

19   exact language that you'd like to have so that we can make that

20   modification, because I think that's fair.

21          MS. SCANLAN:  So it would be the same in

22   Questions 20, 21, and 22.

23          THE COURT:  All right.

24          MS. SCANLAN:  Wherever it says "criminal defense

25   lawyer," it would say "prosecuting attorney."

USA v. Seleznev, 8/5/16

1          THE COURT:  Any objection to that?

2          MR. WILKINSON:  Not at all, Your Honor.

3          THE COURT:  All right.  We'll make that change.

4          MS. SCANLAN:  Thank you.

5          THE COURT:  Anything from the government on the voir

6    dire?

7          MR. WILKINSON:  Just one minor issue, Your Honor.

8       The first paragraph states that the trial is expected to

9    last 20 days, concluding the week of September 5.  Our

10   preference would be that that be revised to state that it will

11   last for up to 15 days, concluding the week of August 29th.

12   The reason being that, frankly, from our perspective, we don't

13   want the jury to expect to hear three weeks of testimony, and

14   then when we rest the second week, we don't want them to think

15   that something went wrong with our case, or that there wasn't

16   as much evidence as what we expected.

17          THE COURT:  I've never heard a juror complain that a

18   case was too short, Counsel.  That would be a first in my book.

19   But I don't have a problem making that modification.

20      Does the defense have any objection to that?

21          MS. SCANLAN:  No, Your Honor.

22          THE COURT:  All right.  We'll make that change.

23   Otherwise, that's voir dire.

24      Now, the next challenge is, how much time do the parties

25   think that they need?  And I emphasize "think that you need,"

USA v. Seleznev, 8/5/16

1    or what you're going to receive.

2         Counsel for the government?

3         MR. WILKINSON:  Fifteen minutes for the government,

4    Your Honor.

5         THE COURT:  For voir dire?

6         MR. WILKINSON:  Yes, please, Your Honor.

7         THE COURT:  Counsel for the defense?

8         MR. BROWNE:  I'm a little surprised by that.

9    As you probably know from our past, I'm fairly quick at

10   voir dire, but 15 seems a little too quick, so I would ask for

11   30.

12        THE COURT:  All right.  Both sides have 30 minutes.

13   And I'll let you know in advance, Counsel, that I'll give

14   you a two-minute warning.  I'll apologize in advance if I have

15   to interrupt any specific question.  Two minutes, start to wrap

16   up, and that should be when you receive your last question.

17        For-cause challenges, I think all of you've tried cases

18   before this Court, but I want to remind you the process that I

19   use.  I try and do everything I can to minimize any attention

20   being brought to the lawyers about raising a cause challenge.

21   In that regard, I ask that you not in open court in front of

22   the juror indicate that you wish to raise a cause challenge.

23   Because if the Court denies that, I don't want you to suffer or

24   be the victim of that juror being upset with you, trying to

25   hold it against you that you tried to excuse them, and the

USA v. Seleznev, 8/5/16

1   Court protected them by denying that request.

2       So if you believe that you have the basis for a cause

3   challenge, the only thing that you have to say in open court on

4   the spot is, "There's a matter I'd like to bring up to the

5   Court's attention."  If it's a matter that we can take up at

6   the sidebar, we can take it up immediately.  And, now,

7   "immediately" means it's a circumstance where that juror is

8   volunteering information that has a tendency to taint other

9   jurors.  And I think we've all experienced that, where you have

10  a runaway juror that starts to talk about horrible experiences

11  that they've had in the past, and they want to share their

12  story.  Under those circumstances, we can take up that type of

13  cause challenge right away.

14      My normal response to that is, if you believe that you

15  have the basis for a cause challenge, in lieu of stopping the

16  proceedings, is to take it up at a natural break or recess, so

17  we don't have to excuse the jury.  So you can either raise it

18  on the spot, take it up at a break or recess.  Or at the

19  conclusion of both opportunities to ask questions, I'll again

20  ask is there a basis for a cause challenge where I decide.

21  You're not waiving it if you don't raise it on the spot.  But

22  I'm just letting you know the opportunities to raise a cause

23  challenge.

24      Any questions on the cause challenge process?  Government?

25          MR. WILKINSON:  No, Your Honor.

USA v. Seleznev, 8/5/16

```
 1              MR. BROWNE:  No, Your Honor.
 2              THE COURT:  Next, Counsel, peremptory challenges.
 3         Counsel, you'll see that you'll have, in accordance with
 4    the rules, eight for the government and 12 for the defense.
 5    And the process that we use for peremptory challenges is as
 6    follows.  You don't have to do them in open court.  We'll
 7    merely give you two separate sheets.  You'll fill out your
 8    challenges.  You present a peremptory challenge sheet to the
 9    Court with the juror number, the juror name.  You don't
10    exchange those sheets.  You present them to the Court.  And
11    those jurors with the lowest numbers will serve as the jury in
12    this case.
13         The Court has identified the number of jurors --
14    peremptory challenges, but I do that with the idea that we were
15    going to have three or four alternates.  If the case is not
16    going to go 20 days, I don't think that we need four
17    alternates, but I think that three certainly might be advisable
18    for the following reasons.  One, it's approaching a holiday,
19    Labor Day.  Two, school is about to start, or will be starting,
20    and I don't want to lose people because of that.  And it's the
21    end of summer.  And so because of all those different reasons,
22    I think three might be advisable.  And even under three, under
23    the rules of procedure, it would still be eight for the
24    government and 12 for the defense.
25         Let me hear from the parties regarding the peremptory
```

USA v. Seleznev, 8/5/16

1    challenges process, the number of peremptory challenges, and

2    any questions regarding the number of alternates in this case.

3        Counsel for the government, any issue to take up?

4              MR. WILKINSON:  Just two questions, Your Honor.

5        Will the alternates be the last four at the end of the

6    order, or will they be determined randomly at the end of the

7    trial?

8              THE COURT:  At the end of trial, Counsel.  I've done

9    it both ways, Counsel.  I used to do it where I had identified

10   alternates.  They knew the order that they were going.  Then I

11   heard criticism and concern that, well, then those jurors have

12   a tendency to pay less attention.

13       The reality is, everybody is going to pay close attention

14   to this case once you get started, as they've done in other

15   cases.  But I think the preferred method is not to let any

16   juror know, "I'm about to get off this jury because we're

17   getting close to the end of the trial," so that everyone is

18   going to pay close attention throughout the entirety of the

19   proceedings.

20             MR. WILKINSON:  Thank you, Your Honor.

21             THE COURT:  Any other questions?

22             MR. WILKINSON:  And then the other question is -- so

23   by my count, if we have three alternates, that would make for

24   15 jurors seated.

25             THE COURT:  Correct.

USA v. Seleznev, 8/5/16

```
 1              MR. WILKINSON:  I think there are 14 seats over
 2    there.
 3              THE COURT:  We have one extra chair.
 4              MR. WILKINSON:  Okay.  And will they have access to a
 5    monitor, then, as well?
 6              THE COURT:  They can stand up, Counsel, and just --
 7              THE CLERK:  We'll give them a monitor.
 8              THE COURT:  Okay.  We have a portable monitor we can
 9    make available, Counsel.
10              MR. WILKINSON:  Great.  Thank you, Your Honor.
11              THE COURT:  Mr. Browne?
12              MR. BROWNE:  Your Honor, just -- so my understanding
13    of your peremptory procedure is that it's possible that both
14    sides challenge the same person.
15              THE COURT:  Correct.
16              MR. BROWNE:  Just wanted to make that clear in my
17    head.  Thank you.
18              THE COURT:  All right.  That takes care of the
19    entirety of the jury selection process, Counsel.
20         Next, you have received the Court's preliminary
21    instructions to the jury.
22         Any question on that, Counsel?
23              MR. WILKINSON:  No, Your Honor.
24              MR. BROWNE:  No, Your Honor.
25         Oh, I'm sorry --
```

USA v. Seleznev, 8/5/16

1           THE COURT:  Ms. Scanlan?

2           MS. SCANLAN:  I'm sorry, Your Honor.

3      Are you taking comments on the preliminary instructions?

4           THE COURT:  Yes.

5           MS. SCANLAN:  These are issues that are raised in the

6  defense objections to the government's proposed instructions.

7  I just wanted to raise them again for the purpose of objecting

8  on the record.

9           THE COURT:  Okay.

10          MS. SCANLAN:  So Instruction Number 2 --

11          THE COURT:  Let me catch up, Counsel.

12          MS. SCANLAN:  All right.  The defense objection is to

13  the language "unless and until," on Line --

14          THE COURT:  On which line, Counsel?

15          MS. SCANLAN:  Line 12.

16          THE COURT:  Okay.

17          MS. SCANLAN:  And then the Instruction Number 7 --

18          THE COURT:  Just one second, Counsel.  Let me put

19  some Post-its on these.

20      And the next one, Counsel?

21          MS. SCANLAN:  Instruction Number 7, Your Honor.

22          THE COURT:  Okay.

23          MS. SCANLAN:  The defense renews its objection to the

24  instruction regarding direct and circumstantial evidence.

25      Instruction Number 11 --

USA v. Seleznev, 8/5/16

1                   THE COURT:  Where at, Counsel?

2                   MS. SCANLAN:  I'm sorry.  It's the entire

3       Instruction 7.

4                   THE COURT:  Isn't that a stock instruction, Counsel?

5                   MS. SCANLAN:  It is, Your Honor.

6                   THE COURT:  That one's overruled.  I can tell you

7       that right now, Counsel.

8            Next one?

9                   MS. SCANLAN:  The next and the last one is

10      Instruction Number 11.

11                  THE COURT:  Okay.

12                  MS. SCANLAN:  The defense is renewing its objection

13      to this instruction based on the idea that the -- if the jury

14      requests a piece of the transcript at the end of the trial,

15      that's the appropriate time to deal with the issue of whether

16      they would be provided that testimony.

17                  THE COURT:  Okay.  Counsel for the government, do you

18      wish to respond to any of those?  You don't have to respond to

19      the middle one, and you don't have to respond to the

20      instruction regarding Number 11.  Let's hear any response that

21      you have to Preliminary Instruction Number 2.

22                  MR. WILKINSON:  I believe the only objection to this

23      is that it uses the term "indictment."

24           Am I correct on that, on Instruction 2?

25                  THE COURT:  I think that dealt with Line 12, "unless

USA v. Seleznev, 8/5/16

1    and until."

2            MS. SCANLAN:  Actually, Your Honor, Mr. Wilkinson is

3    correct.  And that's my mistake.  We had two objections to that

4    instruction.  One is the reference to the indictment, which is

5    raised in the defense objections to the government's

6    instructions.  And the second was the "unless and until."

7            THE COURT:  Okay.

8            MR. WILKINSON:  This is -- I think this is taken from

9    the model instructions.  The model instructions provide for the

10   use of the term "indictment."  I don't think it would come as a

11   surprise to any of the jurors that the defendant has been

12   charged with a crime in an indictment.  And so I don't think

13   that there's anything prejudicial in the use of that.

14        As far as the word -- the use of the words "unless and

15   until," it makes it conditional, which I think is exactly the

16   point, is that the defendant may not be convicted here.  So I

17   don't think that there's anything prejudicial about that.

18           THE COURT:  The Court will overrule the objections.

19   The reference to the indictment, certainly, again, I agree with

20   the government.  It doesn't cause any surprise to the jury.

21   And second, the "unless and until" does not compromise the

22   defendant's right to be presumed innocent, nor does it shift

23   the burden from the government having the responsibility of

24   proving the defendant's guilt by proof beyond a reasonable

25   doubt.

USA v. Seleznev, 8/5/16

```
1          Next, Counsel, are opening statements.  Counsel, you're

2    not bound to this, but it's helpful for the Court to have an

3    idea of how long the opening remarks will be and who will be

4    giving them so I can make the proper introduction.

5          Counsel for the government, who will be giving the opening

6    remarks?

7          MR. WILKINSON:  Your Honor, I'll be giving the

8    opening remarks.  And I project 45 minutes for that.

9          THE COURT:  Again, you're not bound or tied to that

10   45 minutes.

11         Counsel for the defense, one additional question for you,

12   and that is, will you be giving your opening remarks at the

13   conclusion of the government's opening remarks, or reserving

14   until the conclusion of the government's case-in-chief?

15         MR. BROWNE:  We will give them at the conclusion of

16   the government's opening remarks.  And Ms. Scanlan will be

17   doing that, and 45 minutes will be ample.

18         THE COURT:  And just so you know, again, Counsel, you

19   are not tied to 45 minutes.  That's just a projection.  I try

20   and keep opening statements together.  I'm not sure with jury

21   selection that we'll be able to do that in light of the time

22   that the Court's going to permit, but we'll see where we go.

23         Procedure for opening statements, as you can see,

24   everything's done behind the lectern.  As you know, this Court

25   doesn't allow, and I don't think there's anyone else in this
```

USA v. Seleznev, 8/5/16

 1   courthouse that allows the lawyers to roam around in the well,

 2   as they do in King County Superior Court.  So keep your remarks

 3   confined to the lectern.  If you have charts or diagrams, the

 4   same thing.  And if you seek to do anything different from that

 5   for a particular reason, you need to request permission from

 6   the Court.

 7        Also, Counsel, I'd direct that you share or exchange any

 8   charts, diagrams, or timelines that you plan on using for

 9   opening remarks.  I'll direct that you provide that well in

10   advance of next Friday.  Main reason being is, I don't want to

11   have to go through the whole process of jury selection, and

12   then someone pops up with a timeline the other side hasn't seen

13   that's objectionable.  So if you do have those types of

14   diagrams or charts, they have to be exchanged.  And let's go

15   ahead and set Wednesday of next week, by the close of business.

16        Any reason why the government can't meet that?

17            MR. WILKINSON:  No.  And, Your Honor, in fact, we

18   have one chart that we plan to use.  We provided it to the

19   defense yesterday, and they indicated there's no objection.  If

20   there are any further ones, we will provide them by Wednesday.

21            THE COURT:  Counsel for the defense, same thing.

22            MS. SCANLAN:  Yes, Your Honor.  We don't -- at this

23   time, we don't have any exhibits for opening.  But if we do,

24   we'll provide them to the government prior to Wednesday.

25            THE COURT:  Thank you.

USA v. Seleznev, 8/5/16

1        Next question, Counsel, are the witnesses.  I have a
2   witness list, and I think all the parties may have the benefit
3   of that list.
4        Counsel for the government, just to help the Court, you
5   indicated you made some modifications.  Is that regarding the
6   amount of time that you're going to examine the witnesses or
7   the calling of particular witnesses?
8              MR. WILKINSON:  Both, Your Honor.
9              THE COURT:  Okay.  So could you point out the
10  witnesses that you don't plan on calling?
11             MR. WILKINSON:  Yes.
12             THE COURT:  I know that Svetlana Zharova,
13  Z-H-A-R-O-V-A, is believed to be in the country, and not
14  expected to be a witness.
15             MR. WILKINSON:  That's right, Your Honor.  That
16  continues to be the case.  We don't expect to call her.
17       Working down our witness list, we don't intend to call Tim
18  Chen, from DomainTools.  We just actually today received the
19  902 to enter those business records, and we're providing them
20  to the defense.  If there's a problem there, we would call him,
21  but we don't anticipate that.
22       We don't anticipate calling Number 7, James Evans.  We
23  don't anticipate calling Number 17, Joe Kirkpatrick.  We don't
24  anticipate calling Number 19, Grayson Lennich.  We do not
25  anticipate calling 23, Special Agent Matt O'Neill.  And as

USA v. Seleznev, 8/5/16

```
1    mentioned, we don't anticipate calling Number 28, Svetlana
2    Zharova.  There may be a few more cuts as we go on.
3              THE COURT:  Okay.  All right.  And certainly not
4    expanding the list beyond those individuals referenced on the
5    witness list; correct?
6              MR. WILKINSON:  Your Honor, there are two
7    possibilities that we're still working through, which would be
8    very brief witnesses.  One would be from the FDIC, and one
9    would be from the National Credit Union Association -- or
10   Administration, NCUA, to establish that the banks are federally
11   insured.  We submitted business records on that, but that may
12   be something we'd want to take up with the Court whether we
13   also need to offer live testimony from those two witnesses.
14             THE COURT:  Is that an issue we need to take up now,
15   Counsel --
16             MR. WILKINSON:  No, Your Honor.
17             THE COURT:  -- or are you still working your way
18   through it?
19             MR. WILKINSON:  We're still working our way through
20   it, Your Honor.
21             THE COURT:  All right.  Any issue on defense
22   witnesses that we need to address?
23             MS. SCANLAN:  No, Your Honor.
24             THE COURT:  All right.  Counsel, the defense had
25   requested a specific combination as far as 48-hours notice.  I
```

USA v. Seleznev, 8/5/16

1     think that's included in the Court's order.  That's typically

2     required, notice the evening before or the close of trial for

3     next-day witnesses to be identified.  For the first day, I'd

4     ask that, Counsel, on the Friday before, so next Friday, you

5     need identify who you plan to call the following Monday.

6          Next is -- and also, Counsel, it's aspirational for the 48

7     hours.  You can certainly know who you're going to call, so

8     please provide that notice, if you can, give 48 hours.

9               MR. WILKINSON:  Yes, Your Honor.

10              THE COURT:  Next, are there any witnesses that need

11    special accommodation, for example, out-of-state witnesses, any

12    witnesses with disabling conditions, interpreters, et cetera?

13              MR. WILKINSON:  There is one, Your Honor.  This is

14    something we mentioned in our trial brief, as well.

15         Detective Dunn, who will be a significant witness for the

16    government, is scheduled on a longstanding trip to leave the

17    country after the first week of trial.  I think he flies out

18    Friday night or Saturday morning.  And that was a trip -- a

19    family trip that was scheduled before this trial date was moved

20    back to its current date.

21         It is our plan and full expectation to get him onto the

22    stand on Tuesday, Wednesday morning at the latest, which would

23    allow for cross examination starting sometime on Thursday.

24    Especially now that we have the full day on Friday, I think

25    there will be plenty of time to complete his cross examination,

USA v. Seleznev, 8/5/16

1    but I wanted to identify that, just so that everybody knows

2    that we're working with that.

3         THE COURT:  All right.  Well, Counsel, if you know

4    that that's a challenge, you need to do whatever you can do,

5    even if it changes your trial strategy, to get him on earlier

6    in the week.  Because I appreciate vacations and the need to

7    take vacations, particularly family vacations, but if his trial

8    testimony is not complete, we're going to have to revisit that

9    topic.

10        MR. WILKINSON:  Would the Court -- is it possible

11   that the Court would be amenable to adjourning his cross

12   examination until he returns from the trip?  Is that something

13   the Court would entertain?

14        THE COURT:  How long is he going to be gone, Counsel?

15        MR. WILKINSON:  He's going to be gone the full

16   following week, so it would be early in the third week of

17   trial.

18        THE COURT:  Well, you told me that you were going to

19   finish in possibly two weeks, Counsel, so that eliminates that

20   option; isn't that correct?

21        MR. WILKINSON:  It does, Your Honor -- well, yes.  We

22   would need to ask for maybe a continuance on that last Friday,

23   or something like that.  It would be inconvenient, to say the

24   least.

25        THE COURT:  Counsel, I think the better alternative

1    is to put him on early in your case to ensure that he's

2    completed his testimony before the conclusion.  I'm not saying

3    I'm going to rule out postponement.  But the last thing I'm

4    going to consider, Counsel, is not finishing the trial and

5    having days go by just because we're trying to accommodate a

6    witness's vacation.  I doubt that that's going to happen,

7    Counsel, so make adjustments accordingly.

8              MR. WILKINSON:  Thank you, Your Honor.

9              THE COURT:  Next, the exhibits procedure.  A handout

10   should have been provided to the parties.

11        Sidebar conferences.  Counsel for the defense, your client

12   certainly has the opportunity to be present at all critical

13   stages of the proceedings.  And I believe if your client is not

14   of the mind-set that he wishes to waive his presence at sidebar

15   conferences, then we won't have sidebar conferences.  We will

16   always take breaks or recesses.  So if you haven't had that

17   conversation with your client, I'll give you the chance to

18   discuss it with him now if he wishes to waive his presence for

19   sidebar conferences.

20        Now, please make sure that Mr. Seleznev understands -- and

21   I'll explain to him what a sidebar conference is.

22        Mr. Seleznev, during the course of the trial, there may be

23   objections that are made by the lawyers, or there may be issues

24   that come up that in lieu of taking a formal break or recess,

25   where we excuse the jury and take up the matter in open court,

USA v. Seleznev, 8/5/16

1    I'd allow the parties to step to the side of the bench, where
2    the lawyers and myself would step to the side of the bench.
3    There would be a court reporter who would bring her equipment
4    and record everything that was said at the sidebar conference,
5    so there's always a record of what was said at the sidebar
6    conference.  We traditionally don't have defendants attending
7    sidebar conferences.  So I'm allowing your lawyers to discuss
8    it with you if you wish to waive your presence at the sidebar
9    conferences, which will be a matter of record.
10          If you wish to be present at sidebar conferences, then we
11   won't do that.  We'll just have all the discussions take place
12   in open court.  It's you and your lawyer's call as to what your
13   preferences are in that regard.
14          Counsel, do you wish to confer with your client?  We're
15   going to take a stretch break, not a formal break, but -- while
16   you confer with your client.
17                MR. BROWNE:  Whenever you're ready, Your Honor.
18                THE COURT:  Yes.  Please be seated.  We're ready,
19   Counsel.
20                MR. BROWNE:  Your Honor, we've explained again, as
21   you have, to Mr. Seleznev the procedures, and he would waive
22   his presence at the sidebars.
23                THE COURT:  All right.  So noted.  Thank you.
24          Next is note taking.  I have no particular preference.
25   The notebooks are either distributed before or after opening

USA v. Seleznev, 8/5/16

1    remarks.

2           Let me hear from counsel for the government.

3           MR. WILKINSON:  Your Honor, given the somewhat

4    complex nature of the case, you know, we are going to be going

5    into some detailed issues during opening, and I think it would

6    be useful for the jury to be able to memorialize things that,

7    you know, the jurors think are important during opening.  So we

8    would ask that they be given the notebooks before opening.

9           THE COURT:  Okay.  Counsel for the defense?

10          MR. BROWNE:  Perhaps you're not aware, there are a

11   lot of judges these days, federal and state, that use the fact

12   that jurors don't have notebooks during their -- during the

13   opening statements as an illustration of how what lawyers say

14   is not evidence.  I mean, it's a good illustration of that.  I

15   personally agree with that.  And when judges do allow jurors to

16   take notes during opening, then I get somewhat concerned that

17   jurors are going to think that what lawyers say is evidence.

18          So I would ask the Court to not allow the jurors to take

19   notes during opening, particularly in a case like this, when

20   we're not certain that all of the summaries and arguments that

21   the government's going to make in their opening statement will

22   be sustained.

23          THE COURT:  All right.  Counsel, the Court's always

24   taken the approach that if one party objects to notebooks being

25   provided to the jury before opening remarks, then the notebooks

1   are given after opening statements.  Counsel for the defense

2   has objected, so they will be provided after opening.

3       Stipulations of the parties.  If the parties reach

4   stipulations, they should be in written format.  I also let the

5   lawyers try their cases.  So if you have reached a stipulation,

6   I would expect you to present to the Court and direct the Court

7   when that stipulation should be read to the jury.  Stipulations

8   will not be read by the parties.  They will be read by the

9   Court only.  So it's up to you to present them; two, to give me

10  direction on when you'd like them communicated to the jury.

11      I've also given you instruction on meet-and-confer after

12  court hours.

13      And I think, Counsel, that covers all the matters that I

14  believe are necessary.  So the only thing -- next step to take

15  place will be starting trial on the 15th, next Monday.

16      Counsel for the government, anything else to take up?

17          MR. WILKINSON:  Your Honor, I just had one more

18  question about the use of visuals during opening.

19      We talked about charts and diagrams, which I understand.

20  What is the Court's policy or view on the use of exhibits

21  during opening?

22          THE COURT:  Any particular exhibit, Counsel, that you

23  know that you're going to use that's of a questionable nature

24  as far as admissibility?

25          MR. WILKINSON:  Your Honor, I don't think any of them

USA v. Seleznev, 8/5/16

1    are questionable.  In fact, they tend to be photographs of

2    things like the point-of-sale systems at issue, some of the

3    businesses at issue.  I don't think they're objectionable, or I

4    don't know of any basis to object.

5              THE COURT:  Do you have any objection to identifying

6    those specific exhibits that you plan on using in your opening

7    remarks?

8              MR. WILKINSON:  No, not at all, Your Honor.

9              THE COURT:  All right.  Then let's provide those to

10   the defense.  So if there is an issue, I don't want to have to

11   do it after we've already selected a jury.

12      Counsel for the defense?

13              MR. BROWNE:  That works.

14              THE COURT:  Okay.  That will be the process that

15   we'll use.

16      So that exhausts anything else you need to raise with the

17   Court, counsel for the government?

18              MR. WILKINSON:  Yes, Your Honor.

19              THE COURT:  Counsel for the defense, anything to take

20   up?

21              MS. SCANLAN:  Your Honor, the defense would just

22   request that the Court issue an order allowing defense counsel

23   to bring water and things of that nature into the courthouse.

24              THE COURT:  Okay.  Now, when you say water, are you

25   talking about a five-gallon jug, Counsel?

USA v. Seleznev, 8/5/16

```
1            MS. SCANLAN:  No.  But I just happened to be looking,
2   actually, at the docket of a different case, and there was an
3   order that allowed the admission of food and beverages for the
4   defense.  And it just makes things a lot easier, so I thought I
5   would ask.
6            THE COURT:  That's fine.  We'll have the order
7   prepared.
8         Just the water, or are you talking about food, as well?
9            MS. SCANLAN:  Food, as well.
10           THE COURT:  All right.  That's fine with the Court.
11        Nothing else to take up for the defense?  Then I'll see
12   you all next Monday.
13                          (Adjourned)
14                   (End of requested transcript)
15                           *   *   *
16        I certify that the foregoing is a correct transcript from
17   the record of proceedings in the above matter.
18
19   Date:  8/5/16                        /s/ Andrea Ramirez
20                          _____
21                          Signature of Court Reporter
22
23
24
25
```