UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

------------------------------------------------------x
  UNITED STATES OF AMERICA,      :
                                                                :
                                                                :
                  v.                                    :  Docket No.  2:11CR00070RAJ-001
                                                                :
  ROMAN SELEZNEV,                        :
------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR COMPASSIONATE RELEASE

ROMAN SELEZNEV (hereinafter "Mr. Seleznev" or "Defendant"), by and through his undersigned counsel, respectfully moves this Court for an Order granting his motion for compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A)(i), as follows:

### FACTUAL AND PROCEDURAL BACKGROUND

Mr. Seleznev was charged with his criminal activities involving hacking and credit card fraud scheme, which was part of the international online "carding" community. On April 21, 2017, Mr. Seleznev was sentenced by this Court to 324-months of imprisonment. See Exhibit 1

Subsequently, in the Northern District of Georgia Atlanta Division (No. 1:17-cr-00306-SCJ), on November 30, 2017, on essentially the same charges penalizing his hacking activity, Mr. Seleznev was sentenced to 168 months imprisonment and 3 years supervised release with terms to be served concurrently to the sentence imposed in the Western District of Washington. See Exhibit 2.

Mr. Seleznev has been serving his sentence at the FCI Butner Medium II located in North Carolina. As of the date of this motion, Mr. Seleznev has served more than **7 years of imprisonment** if counted from his arrest on July 5, 2014. His projected release date is July 6th, 2037.  See Exhibit 3.

1

Mr. Seleznev is a first-time offender, has no history of violence or any threats to public safety.  See Exhibit 4. In addition, BOP has classified Mr. Seleznev as a "low" risk for recidivism. See Exhibit 5 at 3. What's more, while in the BOP's custody, Mr. Seleznev took a number of various courses/classes and actively participated in a number of its programs, including working as a suicide watch observer, which involved Mr. Selezenev observing other inmates to make sure they did not commit suicide.  See Exhibits 6, 7, 8.

Mr. Seleznev's health conditions make him particularly vulnerable to contracting the novel coronavirus, and especially its Delta variant, and of developing acute symptoms from the virus, making him a perfect candidate for the fatal consequences.  Therefore, his medical conditions, history, and characteristics of the Defendant, and other applicable 3553 factors constitute "extraordinary and compelling reasons" to reduce his sentence pursuant to 18 U.S.C. §3582(c)(1)(A)(i).

On March 11, 2020, the World Health Organization declared that the rapidly spreading outbreak of COVID-19, a respiratory illness caused by a novel coronavirus, is a pandemic, announcing that the virus is both highly contagious and deadly. (https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020). To date, the virus is known to spread from person to person through respiratory droplets, close personal contact, and from contact with contaminated surfaces and objects. (https://www.cdc.gov/coronavirus/2019-ncov/prepare/transmission.html). As of today, more than 40,000 federal inmates have confirmed positive test results for COVID-19 nationwide and 244 federal inmates died as a result of the virus.

(https://www.bop.gov/coronavirus/).   Other data shows that a lot more than 2,700 inmates are reported to have died of Covid-19.  See Exhibit 9.

On April 3, 2020, Attorney General Barr ordered the prisons to release more inmates, particularly those hardest hit by the virus.  Mr. Barr states that "there are some at-risk inmates who are non-violent and pose a minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities."  See Exhibit 10.  The letter directs the BOP to "prioritize the use of your various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic . . .  for some eligible inmates, home confinement might be more effective in protecting their health."

Since the release of the Attorney General's original memo to the Bureau of Prisons, the BOP has placed 30,181 inmates in home confinement. (https://www.bop.gov/coronavirus/).

Additionally, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281. In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement to any inmate...." Id. United States v. Martin, No. DKC 04-0235-5, 2020 U.S. Dist. LEXIS 110220, at 5-6 (D. Md. June 24, 2020)("The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and BOP employees from COVID-19. The DOJ recently adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction. See also U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).").  Also, the CARES Act gave the Attorney

3

General the authority to expand the class of inmates that can be released on home confinement under 18 U.S.C. § 3624(c)(2). See Furando v. Ortiz, No. CV 20-3739(RMB), 2020 U.S. Dist. LEXIS 70171, 2020 WL 1922357, at 2 (D.N.J. Apr. 21, 2020) ("Upon direction of the Attorney General, Section 12003(b)(2) of the CARES Act temporarily suspends the limitation of home confinement to the shorter of 10 percent of the inmate's sentence or 6 months.").

A sobering scientific analysis published in July of 2021 found that in Massachusetts three-quarters of the people infected during an explosive coronavirus outbreak fueled by the delta variant were fully vaccinated. See Exhibit 11. The report on the Massachusetts cases, from the Centers for Disease Control and Prevention, offers key evidence bolstering the hypothesis that vaccinated people can spread the more transmissible variant and may be a factor in the summer surge of infections. Moreover, even people struck once with Covid - 19 may be reinfected with its more powerful variants. See Exhibit 12.

In our case, Mr. Seleznev suffers from several serious diseases. Mr. Seleznev was almost killed in a terrorist attack in Marrakesh, Morocco. See Exhibit 13. His medical diagnosis after the attack is as follows: "severe concomitant trauma. Severe craniofacial injury. Open etched fracture of the left temporal bone. Lamellar subdural hematoma on the left. Severe brain injury. Fracture of the outer wall of the left frontal sinus and the orbital edge. Hematosinus. Bruised chest. Bruised abdominal cavity without damage to internal organs. Open fracture of the distal phalanx of the 3rd finger on the right hand. Contused wounds of the scalp, face, Extremities." See Exhibit 14 at 1. It would be not an exaggeration to say that Mr. Seleznev was extremely close to dying.

He continues to have after-effects from the bombing. He is diagnosed with chronic seizure disorder (epilepsy). In fact, Mr. Seleznev's BOP Medical records indicate that he has suffered chronic headaches and seizures while being detained. See Exhibit 15 at 71. Specifically, Mr. Seleznev had experienced seizure disorder as a result of his trauma. Mr. Seleznev has a titanium plate covering approximately 30% of his skull. Exhibit 16 at 47. Mr. Seleznev has chronic deafness in his left ear, and he does not hear well at all if the sound is coming at him from that side. See Exhibit 16 at 44. According to medical experts who evaluated his post-traumatic conditions, there is a high risk of progressive impairment of his cognitive functions, and he continuously needs to be monitored by specialized medical staff. See Exhibit 17.

Most relevant to the issue before the Court is Mr. Seleznev's diagnosis for Hepatitis B, which he got from a blood transfusion and latent TB (tuberculosis); See Exhibit 15 at 2, 3, 4, 7; See Exhibit 16 at 22; See Exhibit 18.

According to Dr. Gafanovich's Declaration previously filed in connection with his Habeas Corpus Petition in the United States District Court for the Eastern District of North Carolina, attached to this motion, "[w]ith a reasonable degree of medical certainty, I certify that Mr. Seleznev's health conditions make him particularly vulnerable to contracting the novel coronavirus and of developing acute symptoms from the virus, making him a perfect candidate for the fatal consequences. His medical conditions mandate that he should be released from the Facility and be placed in home confinement for the period of the COVID-19 outbreak." See Exhibit 19.

Making things worse, on January 27, 2021, Mr. Seleznev was diagnosed with Covid-19. See Exhibit 20 at 193-94. Months later, when Covid vaccines became available, he refused to take the vaccine due to the many illnesses he is suffering from as

5

he was concerned that the vaccine would have negative side effects on him. Even assuming Mr. Seleznev decides to take a chance and become inoculated, the risks associated with new Covid-19 variants would not be diminished as they are powerful enough to overcome any vaccine protection. See Exhibits 11, 12.

As such, Mr. Seleznev's health conditions and vulnerable immune system make him particularly vulnerable to contracting the novel coronavirus and developing acute symptoms from the virus, making him a perfect candidate for the fatal consequences. His medical conditions mandate that his motion be granted.

## ARGUMENT

### 1. Standards for Compassionate Release

Although a district court generally has limited authority to modify a federally-imposed sentence once it commences, see United States v. Epstein, No. 14-287, 2020 U.S. Dist. LEXIS 62833, 2020 WL 1808616, at 2 (D.N.J. Apr. 9, 2020); Dillon v. United States, 560 U.S. 817, 825, 130 S. Ct. 2683, 177 L. Ed. 2d 271 (2010), the recently-enacted First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A)(i), permits district courts to grant compassionate release where "extraordinary and compelling reasons" exist to reduce a sentence. The statute provides, in relevant part, that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it

6

> finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c). As such, under the FSA, "a defendant seeking a reduction in his term of imprisonment bears the burden of establishing both that he has satisfied 1) the procedural prerequisites for judicial review, and 2) that compelling and extraordinary reasons exist to justify compassionate release." Epstein, 2020 U.S. Dist. LEXIS 62833, 2020 WL 1808616, at 2 (citing 18 U.S.C. § 3582(c)(1)(A)); United States v. McDonald, No. 09-656 (SDW), 2020 U.S. Dist. LEXIS 117709, at 5-7 (D.N.J. July 2, 2020)

Congress tasked the Sentencing Commission to define "extraordinary and compelling reasons" that would warrant a reduction in sentence. See 28 U.S.C. § 994(t). The Sentencing Commission's Policy Statement identifies four categories of "extraordinary and compelling reasons" that a court may consider "[u]pon motion of the Director of the [BOP] under 18 U.S.C. § 3582(c)(1)(A)," including: (A) the defendant's medical condition; (B) the defendant's age of at least 65-years combined with "serious deterioration in physical or mental health because of the aging process" when he or she "has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less;" (C) the defendant's unique family circumstances pertaining to caregivers of the defendant's minor children or spouse; or (D) other extraordinary and compelling reasons "[a]s determined by the [BOP] . . . other than, or in combination with, the reasons described" in the prior provisions. U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13, cmt. n.1 (A)-(D).

The applicable policy statement is set forth at U.S.S.G. § 1B1.13, which

7

provides, in relevant part that:

> the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1) (A) extraordinary and compelling reasons warrant the reduction; or
>
> (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) the defendant is not a danger to [*12] the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

As such, the application note in the commentary to the policy statement elaborates on the meaning of the phrase "extraordinary and compelling reasons." See U.S.S.G. § 1B1.13 cmt. n.1. The application note describes three categories of circumstances in which extraordinary and compelling reasons would exist based on the medical condition, age, or family circumstances of the defendant. Id. It also includes a catch-all provision that allows the Director of the BOP to determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in [the other three categories]." Id. With regard to a defendant's medical condition, the application note provides that extraordinary and compelling reasons exist if [t]he defendant is—(I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process,

8

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." Id. cmt. n.1(A)(ii).

Numerous federal courts have granted compassionate release to BOP inmates based on the risk that chronic illnesses makes them vulnerable to suffering from severe illness or death were they to contract COVID-19 during the ongoing pandemic. See, e.g., United States v. Simpson, No. 11-832, 2020 WL 2323055 (N.D. Cal. May 11, 2020); United States v. Amarrah, No. 17-20464, 2020 WL 2220008 (E.D. Mich. May 7, 2020) (FCI Loretto); United States v. Echevarria, No. 17-44, 2020 WL 2113604 (D. Conn. May 4, 2020); United States v. Ardila, No. 03-264, 2020 WL 2097736 (D. Conn. May 1, 2020); United States v. Brown, No. 05-227, 2020 WL 2091802 (S.D. Iowa Apr. 29, 2020); United States v. Bertrand, No. 00-12, 2020 WL 2179387 (N.D. Fla. Apr. 29, 2020); United States v. Handy, No. 04-0559, 2020 WL 2041666 (D. Md. Apr. 28, 2020); United States v. Harper, No. 18-25, 2020 WL 2046381 (W.D. Va. Apr. 28, 2020); United States v. Williams, No. 17-121, 2020 WL 1974372 (D. Conn. Apr. 24, 2020); United States v. Gorai,  No. 18-220, 2020 WL 1975372 (D. Nev. Apr. 24, 2020); United States v. Park, No. 16-473, 2020 WL 1970603 (S.D. N.Y. Apr. 24, 2020); United States v. Gileno, No. 19-161, 2020 WL 1904666 (D. Conn. Apr. 17, 2020); United States v. Samy, No. 16-20610, 2020 WL 1888842 (E.D. Mich. Apr. 16, 2020); United States v. Wen, Crim .No. 17-6173, 2020 WL 1845104 (W.D. N.Y. Apr. 13, 2020); United States v. Smith, No. 12-133, 2020 WL 1849748 (S.D.N.Y. Apr. 13, 2020); United States v. Ben-Yhwh, No. 15-830, 2020 WL 1874125 (D. Haw. Apr. 13, 2020); United States v. Tran, No. 08-197, 2020 WL 1820520 (C.D. Cal. Apr. 10, 2020); United States v. Burrill, No.

17-491 (N.D. Cal. Apr. 10, 2020); United States v. McCarthy, No. 17-230, 2020 WL 1698732 (D. Conn. Apr. 8, 2020); United States v. Ghorbani, No. 18-255 (D.D.C. Apr. 3, 2020); United States v. Hernandez, No. 18-834, 2020 WL 1684062 (S.D. N.Y. Apr. 2, 2020); United States v. Powell, No. 94-316, 2020 WL 1698194 (D.D.C. Mar. 28, 2020); United States v Rodriguez, No. 2:03-cr-00271-2020 U.S. Dist .LEXIS 58718 (E.D. Pa. Apr. 1, 2020).

Courts have consistently found that compassionate release is justified where COVID-19 poses a great risk to a person with underlying health conditions. See, e.g., Poulios v. United States, No. 2:09-cr-109, 2020 U.S. Dist. LEXIS 70458, at 7-8 (E.D. Va. Apr. 20, 2020)(" Court is persuaded that the circumstances set forth by Petitioner constitute sufficient grounds for a sentence modification" because "Petitioner suffers from serious health conditions that would render him virtually defenseless if he were to become infected with COVID-19.") ; United States v. Zukerman, 2020 U.S. Dist. LEXIS 59588, 2020 WL 1659880, at 4 (S.D.N.Y. April 3, 2020); United States v. Colvin, 2020 U.S. Dist. LEXIS 57962, 2020 WL 1613943, 4 (D. Conn. Apr. 2, 2020); United States v. Jepsen, 2020 U.S. Dist. LEXIS 57007, 2020 WL 1640232, at 5 (D. Conn. Apr. 1, 2020); United States v. Muniz, 2020 U.S. Dist. LEXIS 35188, 2020 WL 1540325, at 2 (S.D. Tex. Mar. 30, 2020); United States v. Alvarado, No. 18-CR-283, 2020 U.S. Dist. LEXIS 100834, at 5 (D. Minn. May 27, 2020) (granting motion for compassionate release where defendant has asthma, which puts him at increased risk for complications due to COVID-19, and prior to his offense of conviction, defendant had no criminal history, he does not present a danger to the community, he has a plan for when he is released; and he has a supportive family with whom he will live once he is released);

United States v. Wen, No. 6:17:CR-96173 EAW, 2020 U.S. Dist. LEXIS 64395, 2020 WL 1845104, at 8 (S.D.N.Y Apr. 13, 2020) (granting compassionate release as not inconsistent with § 3553(a) factors where defendant had no prior criminal history, was not a danger to the community, would live with supportive family after release); United States v. Gileno, No. 3:19-cr-161, 2020 U.S. Dist .LEXIS 67729, at 8-9 (D. Conn. Apr. 17, 2020)(granting motion); United States v. Rivernider, No. 3:10-cr-222, 2020 U.S. Dist. LEXIS 83295, at 1 (D. Conn. May 12, 2020)(motion granted where defendant, a non-violent, first-time offender with strong family ties, was sentenced to 144 months imprisonment following his plea of guilty to numerous counts of wire fraud and conspiracy to commit wire fraud).

      Specifically, as here, a weak immune system and Hepatitis B may result in liver damage, which may make it more likely that someone suffering from Hepatitis would suffer serious illness should he or she contract COVID-19. See CDC, "People With Certain Medical Conditions," available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited August 19, 2021) (not specifically discussing Hepatitis-B but including liver disease as a condition that "can make [one] more likely to get severely ill from COVID-19"); see also United States v. Stephenson, 461 F. Supp.3d 864, 872 (S.D. Iowa May 21, 2020) (finding extraordinary and compelling reason for release where defendant had Hepatitis-C as well as "a weakened immune system and a damaged liver" during COVID pandemic). As such, several courts have cited a weakened immune system as a basis for granting compassionate release. See, e.g., United States v. Campagna, 2020 U.S. Dist. LEXIS 54401 (S.D.N.Y. Mar. 27, 2020)(noting the fifty-five-year-old defendant "suffers from a

compromised immune system . . . put[ting] him at significant risk if he were to become infected with the current Coronavirus"); United States v. Jepsen, 451 F. Supp. 3d 242 (D. Conn. 2020). Courts also have granted release to defendants suffering from hepatitis, among other conditions. See, e.g., Miller v. United States, No. CR 16-20222-1, 2020 U.S. Dist. LEXIS 62421, 2020 WL 1814084, at 1 (E.D. Mich. Apr. 9, 2020).

Perhaps just as concerning is Mr. Seleznev's diagnosis for latent TB, which is a form of tuberculosis in its asymptomatic state, which is cause by bacterium—Mycobacterium tuberculosis. The main danger is that for "someone with latent TB, contracting COVID-19 could activate the bacterium, potentially leading to an accelerated and more severe form of the disease which could lead to hospitalization and rapid death. Both diseases are airborne and spread when people cough or sneeze."

https://redetb.org.br/covid-19-could-activate-latent-tuberculosis/

Further, in another cybercrime case United States v. Ferizi, Docket No. 16cr42 (LMB) (U.S. District Court for the Eastern District of Virginia), U.S. District Judge Leonie Brinkema granted a motion for compassionate release, truncating the 20-year sentence of a hacker due to his particular susceptibility to Covid-19. Exhibits 21, 22. It is critical to note that Defendant there served only several years of his 20-year sentence.

It is respectfully requested that this Court reach the same conclusion and grant this application for compassionate release.

### 2. Standards for Exhaustion of Administrative Remedies

Section 3582(c) makes clear that only "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the

Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," may this Court entertain a motion for compassionate release by Defendant. See United States v. Raia, No. 20-1033, 2020 U.S. App. LEXIS 10582, at 5 (3d Cir. Apr. 2, 2020). Based on that language, Congress, in enacting the FSA, has statutorily imposed exhaustion requirements before a defendant can petition in court.

Here, Mr. Seleznev has exhausted all administrative remedies. On or around July 9, 2021, has submitted a formal request to the Warden of the Facility for compassionate release due to the Covid-19 outbreak. See Exhibit 23. On July 22, 2021, the request was denied. See Exhibit 24. While recognizing the Mr. Seleznev has a medical condition, the request for sentencing reduction was denied because the condition was not "debilitating." Id. Subsequently, on July 23, 2021, Mr. Seleznev appealed that denial to the BOP. See Exhibit 25. As of the day of this motion, Mr. Seleznev has not received any confirmation from the regional BOP office. Separately, the undersigned duplicated Mr. Seleznev's efforts to exhaust the administrative remedies by sending a request to the Warden. See Exhibit 26.

These efforts should be construed sufficient for the purposes of exhaustion of administrative remedies requirement.

### 3. Mr. Seleznev's Motion for Compassionate Release Should be Granted

Therefore, granting Mr. Seleznev's compassionate release motion would require the Court to reduce his term of imprisonment from the remaining months to time served. To grant this application motion, the Court must find that (1) extraordinary and compelling reasons warrant the reduction, (2) Mr. Seleznev is not a danger to the safety

of any other person or to the community as provided in 18 U.S.C. § 3142(g), and (3) the applicable sentencing factors under 18 U.S.C. § 3553(a) warrant the reduction.

Here, Defendant clearly does meet all the requirements. The circumstances presented here are extraordinary and compelling to justify the immediate release and deportation of Mr. Seleznev. As one Court noted, "[t]he COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration. COVID-19 presents a heightened risk for incarcerated defendants like Mr. Hernandez with respiratory ailments such as asthma." United States v. Hernandez, 2020 U.S. Dist. LEXIS 58739, at 6-10 (S.D.N.Y. Apr. 1, 2020).

First, Mr. Seleznev suffers from several serious diseases that make him particularly vulnerable to concomitant COVID-19 infection and to developing acute symptoms from the virus. In any event, Mr. Seleznev respectfully requests that an independent court-appointed physician evaluate hundreds of pages of BOP medical records regarding his health condition in order to determine if he is particularly vulnerable to the Covid-19 and its variants.

Second, Mr. Seleznev is a first-time, white-collar crime offender, who has taken responsibility for his crimes and, if released, he would be able to acclimate seamlessly into society because he has sufficient family support and marketable work skills. While in prison, he has participated in numerous programs and did not pose any safety threat to his inmates or the prison personnel, BOP itself classified him as low risk for Recidivism. Additionally, he has taken care of his fellow handicapped inmate as part of his job responsibilities at Butner. The fact that he is an alien should not affect granting

14

of the petition as several courts have granted similar motions to alien inmates.  See, e.g., United States v. Jeremy Millul, No. 1:18-cr-00579-JSR-3 (S.D.N.Y.).

Third, the applicable sentencing factors under 18 U.S.C. § 3553(a) warrant the reduction since more than 7 years' incarceration has already served the need for deterrence.  More the requested reduction would serve the ultimate sentencing goal - to impose a reasonable sentence the one that is sufficient, but not greater than necessary to achieve the goals and dictates of 18 U.S.C. § 3553.

Last but not least, Mr. Seleznev is not a United States citizen or permanent resident, therefore, he is not eligible for several BOP sentencing reduction programs, which could have substantially decreased his sentence.  Thus, solely due to his immigration status he cannot benefit from those programs offering incarceration time reduction.  This provides yet another reason to grant this motion so the Court can remedy this unfair result.

WHEREFORE, Defendant respectfully requests that the Court enter an Order, granting his motion for compassionate release and reducing his sentence to time served and ordering such other and further relief as this Court deems just, proper and equitable.

Dated: September 8th, 2021                     Respectfully submitted,

/s/ Igor Litvak
Igor Litvak, Esq.
Attorney for Defendant
NY Bar No. 5109749
The Litvak Law Firm, PLLC
1733 Sheepshead Bay Road, Suite 22
Brooklyn, New York 11235
Office: (718) 989-2908
E-Mail: Igor@LitvakLawNY.com

## CERTIFICATE OF SERVICE

I hereby certify that I served a copy of this motion upon the Government via ECF on September 8th 2021.

s/ Igor Litvak

_____

Igor Litvak